**No. 18-4573**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**UNITED STATES OF AMERICA**,
*Appellee*

v.

**RICHARD ALLEN WELLBELOVED-STONE,**
*Appellant*

On Appeal from the United States District Court
for the Western District of Virginia
Charlottesville Division (Hon. Norman K. Moon)

# JOINT APPENDIX
**Pages 1 - 196**
**VOLUME I of II**

**FREDERICK T. HEBLICH, JR.**
Interim Federal Public Defender
for the Western District of Virginia

**LISA MARIE LORISH**
Assistant Federal Public Defender
401 E. Market Street, Suite 106
Charlottesville, VA 22902
(434) 220-3380

*Counsel for Appellants*

**THOMAS T. CULLEN**
United States Attorney
for the Western District of Virginia

**DANIEL LERMAN**
U.S. Department of Justice
Criminal Division, Appellate Section
Ste. 1264
950 Pennsylvania Avenue, NW
Washington, DC 20530
(202) 253-7696

**NANCY S. HEALEY**
Assistant United States Attorney
Room 130
255 West Main Street
Charlottesville, VA 22902
(434) 293-4283

*Counsel for Appellees*

# TABLE OF CONTENTS

## VOLUME I of II

Joint Appendix Page

Docket Entries ... 1

Complaint and Affidavit
(September 27, 2017) ... 8

Indictment
(October 25, 2017) ... 14

Motion to Dismiss Commerce Clause
(December 18, 2017) ... 18

United States' Response to Motion to Dismiss Commerce Clause
(January 10, 2018) ... 35

United States' Response to Motion to Suppress Summonses
(January 12, 2018) ... 45

Reply in Support of Motion to Suppress
(January 23, 2018) ... 59

Supplemental Motion in Support of Motion to Suppress
(February 7, 2018) ... 68

United States' Notice of New Fourth Circuit Case Relevant to
Defendant's Motion to Dismiss
(February 8, 2018) ... 82

Redacted Motion to Suppress Summonses with Exhibits
(February 13, 2018) ... 86

Order Denying Motions
(April 24, 2018) ... 148

Plea Agreement
(April 26, 2018)........................................................................................ 149

Statement of Facts
(April 26, 2018)........................................................................................ 164

Memorandum Opinion
(April 26, 2018)........................................................................................ 168

Judgment
(August 8, 2018) ...................................................................................... 188

Notice of Appeal
(August 10, 2018) .................................................................................... 195

CLOSED,APPEAL,EXH,FORFEITURE

# U.S. District Court
# Western District of Virginia (Charlottesville)
# CRIMINAL DOCKET FOR CASE #: 3:17−cr−00014−NKM All Defendants

Case title: USA v. Wellbeloved−Stone
Magistrate judge case number: 3:17−mj−00060−JCH

Date Filed: 10/25/2017
Date Terminated: 08/08/2018

---

Assigned to: Judge Norman K. Moon

Appeals court case number: 18−4573
USCA

**Defendant (1)**

**Richard A. Wellbeloved−Stone**
*TERMINATED: 08/08/2018*

represented by **Andrea S. Lantz Harris**
Federal Public Defenders Office
Western District of Virginia − Charlottesville
401 E Market Street, Suite 106
Charlottesville, VA 22902
434−220−3380
Fax: 434−220−3390
Email: andrea_harris@fd.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender or Community Defender Appointment*

**Lisa M. Lorish**
Federal Public Defenders Office
Western District of Virginia − Charlottesville
401 E Market Street, Suite 106
Charlottesville, VA 22902
434−220−3388
Fax: 434−220−3390
Email: lisa_lorish@fd.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Pending Counts | Disposition |
|---|---|
| 18:2251.F − SEXUAL EXPLOITATION OF CHILDREN − 18:2251(a) and 2251(e) − (5/20/17) (3) | CBOP:276 Months; SR Life; SA $100 JVTA Assessment $5,000; Fine $2,500. |

**Highest Offense Level (Opening)**

Felony

| Terminated Counts | Disposition |
|---|---|
| 18:2251.F SEXUAL EXPLOITATION OF CHILDREN − 18:2251(a) and 2251(e) − (2014) (1) | Dismissed |
| 18:2251.F SEXUAL EXPLOITATION OF CHILDREN − 18:2251(a) and 2251(e) − (5/18/17) | Dismissed |

(2)

18:2252A.F − ACTIVITIES RE MATERIAL CONSTITUTING/CONTAINING CHILD PORNO − 18:2252(a)(4)(B) and 2252(b)(2) − (07/25/17)
(4)

Dismissed

**Highest Offense Level (Terminated)**

Felony

| **Complaints** | **Disposition** |
|---|---|
| 18:2251A.F − 18:2251(a), 18:2252(a)(4)(B) Did use a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, which visual depiction was produced using materials that had been mailed, shipped and transported in and affecting interstate and foreign commerce by any means, including by computer; and did knowingly possessing at least one matter containing child pornography under 18 USC Section 2256 (8)(A), which was produced using material which had been mailed and shipped and transported using any means and facility of interstate and foreign commerce, including by computer | |

---

**Plaintiff**

**USA** represented by

**Nancy Spodick Healey**
United States Attorneys Office − Charlottesville
255 West Main Street, Room 130
Charlottesville, VA 22902
434−293−4283
Fax: 293−4910
Email: nancy.healey@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: US Attorney*

**Leslie Williams Fisher**
United States Department of Justice, Criminal Division
1400 New York Ave., NW
Washington, DC 20530
202−616−2557
Fax: 202−514−1793
Email: leslie.fisher2@usdoj.gov
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/27/2017 | 1 | COMPLAINT as to Richard A. Wellbeloved−Stone (1). (Attachments: # 1 Affidavit) (hnw) [3:17−mj−00060−JCH] |

| | | |
|---|---|---|
| 09/27/2017 | 5 | REDACTED AFFIDAVIT by USA as to Richard A. Wellbeloved−Stone to 1 Complaint (hnw) [3:17−mj−00060−JCH] (Entered: 09/28/2017) |
| 09/28/2017 | 3 | NOTICE OF HEARING as to Richard A. Wellbeloved−Stone (CUSTODY) **(FTR)** (No Interpreter requested) Initial Appearance set for 9/29/2017 08:45 AM in Charlottesville before Magistrate Judge Joel C. Hoppe.(kld) [3:17−mj−00060−JCH] |
| 09/28/2017 | 4 | First Petition for Writ of Habeas Corpus ad prosequendum by USA as to Richard A. Wellbeloved−Stone. (Healey, Nancy) [3:17−mj−00060−JCH] |
| 09/28/2017 | 6 | ORDER granting 4 Motion for Writ of Habeas Corpus ad prosequendum as to Richard A. Wellbeloved−Stone (1). Signed by Magistrate Judge Joel C. Hoppe on 9/28/17. (hnw) [3:17−mj−00060−JCH] |
| 09/28/2017 | 7 | NOTICE OF ATTORNEY APPEARANCE Leslie Williams Fisher appearing for USA. (Fisher, Leslie) [3:17−mj−00060−JCH] |
| 09/29/2017 | 8 | ORAL ORDER APPOINTING FEDERAL PUBLIC DEFENDER Andrea Harris as to Richard A. Wellbeloved−Stone. Entered by Magistrate Judge Joel C. Hoppe on 9/29/17. (hnw) [3:17−mj−00060−JCH] |
| 09/29/2017 | 9 | CJA 23 Financial Affidavit as to Richard A. Wellbeloved−Stone (hnw) [3:17−mj−00060−JCH] |
| 09/29/2017 | 10 | Minute Entry for proceedings held before Magistrate Judge Joel C. Hoppe:Initial Appearance as to Richard A. Wellbeloved−Stone held on 9/29/2017, Detention Hearing as to Richard A. Wellbeloved−Stone held on 9/29/2017. Defendant remanded to custody (Court Reporter H. Wheeler) (hnw) [3:17−mj−00060−JCH] |
| 09/29/2017 | 11 | ORAL Order Finding Probable Cause as to Richard A. Wellbeloved−Stone. Entered by Magistrate Judge Joel C. Hoppe on 9/29/17. (hnw) [3:17−mj−00060−JCH] |
| 09/29/2017 | 12 | FTR Log Notes as to Richard A. Wellbeloved−Stone for Initial Appearance/Dtn Hrg in the Charlottesville Division in CR3 held before Judge Joel C. Hoppe on 9/29/17. In accordance with 28 USC 753(b), I certify that I monitored the digital recording of this proceeding and that it is a true and correct record, that it is sufficiently intelligible when played on the FTR (For the Record) Player, and that it can be transcribed without undue difficulty. FTR Operator: H. Wheeler (hnw) [3:17−mj−00060−JCH] |
| 09/29/2017 | 13 | ORDER OF DETENTION as to Richard A. Wellbeloved−Stone. Signed by Magistrate Judge Joel C. Hoppe on 9/29/17. (hnw) [3:17−mj−00060−JCH] |
| 10/03/2017 | | Notice of Appearance − Probation Officer: Kristy Burton as to Richard A. Wellbeloved−Stone (ch) [3:17−mj−00060−JCH] |
| 10/05/2017 | 14 | Arrest Warrant Returned Executed on 9/27/17 in case as to Richard A. Wellbeloved−Stone. (hnw)[3:17−mj−00060−JCH] Modified on 10/27/2017 (hnw). (Entered: 10/06/2017) |
| 10/25/2017 | 15 | INDICTMENT as to Richard A. Wellbeloved−Stone (1) count(s) 1, 2, 3, 4. (jcj) |
| 10/25/2017 | 16 | Sealed Document − Unredacted Indictment (jcj) |
| 10/27/2017 | 19 | NOTICE OF HEARING as to Richard A. Wellbeloved−Stone (CUSTODY) **(FTR)** (No Interpreter requested) Arraignment set for 10/30/2017 10:00 AM in Charlottesville before Magistrate Judge Joel C. Hoppe.(kld) |
| 10/27/2017 | 20 | NOTICE OF ATTORNEY APPEARANCE: Lisa M. Lorish appearing for Richard A. Wellbeloved−Stone (Lorish, Lisa) |
| 10/30/2017 | 21 | Minute Entry for proceedings held before Magistrate Judge Joel C. Hoppe:Arraignment as to Richard A. Wellbeloved−Stone (1) Count 1,2,3,4 held on 10/30/2017, Detention Hearing as to Richard A. Wellbeloved−Stone held on 10/30/2017. Defendant remanded to custody. (Court Reporter Joyce Jones, FTR Recording) (jcj) |
| 10/30/2017 | 22 | FTR Log Notes as to Richard A. Wellbeloved−Stone for Arraignment and Detention hearing in the Charlottesville Division in CR3 held before Judge Joel C. Hoppe on October 30, 2017. In accordance with 28 USC 753(b), I certify that I monitored the digital recording of this proceeding and that it is a true and correct record, that it is |

| | | |
|---|---|---|
| | | sufficiently intelligible when played on the FTR (For the Record) Player, and that it can be transcribed without undue difficulty. FTR Operator: Joyce C. Jones (jcj) |
| 10/30/2017 | 23 | ORDER OF DETENTION PENDING TRIAL as to Richard A. Wellbeloved−Stone. Signed by Magistrate Judge Joel C. Hoppe on 10/30/17. (jcj) |
| 11/01/2017 | 24 | MOTION for Voluntary Disclosure of Grand Jury and other materials and for limitations on further disclosure by USA as to Richard A. Wellbeloved−Stone. (jcj) |
| 11/01/2017 | 25 | ORDER granting 24 Motion for Voluntary Disclosure of Grand Jury and other materials and for limitations on further disclosure as to Richard A. Wellbeloved−Stone (1). Signed by Magistrate Judge Joel C. Hoppe on 11/1/17. (jcj) |
| 11/06/2017 | 26 | First MOTION to Continue−Ends of Justice for Jury Trial by USA as to Richard A. Wellbeloved−Stone. (Attachments: # 1 Text of Proposed Order)(Healey, Nancy) |
| 11/08/2017 | 27 | NOTICE OF ATTORNEY APPEARANCE Leslie Williams Fisher appearing for USA. (Fisher, Leslie) |
| 11/09/2017 | 28 | ORDER granting 26 Motion to Continue−Ends of Justice for Jury Trial or Guilty Plea as to Richard A. Wellbeloved−Stone (1). Signed by Judge Norman K. Moon on 11/9/27. (jcj) |
| 11/20/2017 | 29 | NOTICE OF HEARING as to Richard A. Wellbeloved−Stone (CUSTODY) **(CR)** Jury Trial set for February 26−28, 2018 09:30 AM in Charlottesville before Judge Norman K. Moon. **Counsel must contact the Clerk's Office no later than five (5) business days before the scheduled trial date for your technology needs.**(hnw) |
| 12/18/2017 | 30 | MOTION to Seal Document by Richard A. Wellbeloved−Stone. (Attachments: # 1 Text of Proposed Order)(Lorish, Lisa) |
| 12/18/2017 | 32 | MOTION to Dismiss *Counts One, Two, Three and Four* by Richard A. Wellbeloved−Stone. (Lorish, Lisa) |
| 12/20/2017 | 33 | Order to Respond by the Government as to Richard A. Wellbeloved−Stone re 32 MOTION to Dismiss *Counts One, Two, Three and Four*, 31 MOTION to Suppress *1509 Summonses* Responses due by 1/12/2018. Signed by Judge Norman K. Moon on 12/20/17. (jcj) |
| 12/20/2017 | 34 | ORDER granting 30 Motion to Seal Document as to Richard A. Wellbeloved−Stone (1). Signed by Judge Norman K. Moon on 12/20/17. (jcj) |
| 12/20/2017 | 35 | Sealed Document−Motion to Suppress Search Warrant (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(hnw) Modified on 12/20/2017 (hnw). |
| 12/20/2017 | 36 | Sealed Document−Unredacted Motion to Suppress 1509 Summons (Attachments: # 1 Exhibit B)(hnw) Modified on 12/20/2017 (hnw). |
| 01/10/2018 | 37 | Response re 32 MOTION to Dismiss *Counts One, Two, Three and Four* (Healey, Nancy) |
| 01/11/2018 | 38 | First MOTION to Seal *United States' Repsonse In Opposition To Defendnat's Motion to Suppress The Search Warrant* by USA as to Richard A. Wellbeloved−Stone. (Attachments: # 1 Text of Proposed Order)(Healey, Nancy) |
| 01/12/2018 | 39 | Response *to Motion to Supress* (Healey, Nancy) |
| 01/12/2018 | 40 | ORDER granting the Government's 38 Motion to Seal, and its Response in Opposition shall be Sealed and Filed until further order from the Court, as to Richard A. Wellbeloved−Stone (1). Signed by Senior Judge Norman K. Moon on 1/12/18. (hnw) |
| 01/12/2018 | 41 | Sealed Document−United States' Response in Opposition to Defendant's Motion to Suppress the Search Warrant (hnw) |
| 01/16/2018 | 42 | MOTION for Extension of Time to File Response/Reply as to 41 Sealed Document, 37 Response, 39 Response by Richard A. Wellbeloved−Stone. (Lorish, Lisa) |
| 01/20/2018 | 43 | MOTION to Seal Document *Reply in Support of Motion to Suppress* by Richard A. Wellbeloved−Stone. (Attachments: # 1 Text of Proposed Order)(Lorish, Lisa) |

| | | |
|---|---|---|
| 01/23/2018 | 44 | ORDER granting Defendant's 42 Motion for Extension of Time to File Reply as to Richard A. Wellbeloved−Stone (1). Defendant shall have until the end of the day on January 23, 2018 to file any replies not yet filed to the Government's briefs in response to his previous motions ; granting Defendant's 43 Motion to Seal his Reply in Support of his Motion to Suppress as to Richard A. Wellbeloved−Stone (1). Signed by Senior Judge Norman K. Moon on 1/23/18. (hnw) |
| 01/23/2018 | 45 | Sealed Document−Defendant's Reply in Support of Motion to Suppress ( Sealed pursuant to Order 44 ) (hnw) |
| 01/23/2018 | 46 | REPLY TO RESPONSE to Motion by Richard A. Wellbeloved−Stone re 36 SEALED MOTION (Lorish, Lisa) |
| 02/07/2018 | 47 | RESPONSE in Support by Richard A. Wellbeloved−Stone re 36 SEALED MOTION (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit)(Lorish, Lisa) |
| 02/08/2018 | 48 | NOTICE *of NEW FOURTH CIRCUIT CASE RELEVANT TO DEFENDANT'S MOTION TO DISMISS* by USA as to Richard A. Wellbeloved−Stone (Healey, Nancy) |
| 02/13/2018 | 49 | MOTION to Suppress *Redacted Version of ECF #36* by Richard A. Wellbeloved−Stone. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit)(Lorish, Lisa) |
| 02/13/2018 | 50 | ORDER TO CONTINUE − as to Richard A. Wellbeloved−Stone Time excluded from 2/26/18 until the motions have been ruled upon is to be excluded. A consolidated hearing on the motions shall be scheduled. Signed by Senior Judge Norman K. Moon on 2/13/18. (hnw) |
| 02/22/2018 | 51 | NOTICE OF HEARING ON MOTION 32 MOTION to Dismiss *Counts One, Two, Three and Four*, 31 MOTION to Suppress *1509 Summonses*, 35 SEALED MOTION, 49 MOTION to Suppress *Redacted Version of ECF #36*, 36 SEALED MOTION : in case as to Richard A. Wellbeloved−Stone (CUSTODY) **(CR)** Motion Hearing set for 4/30/2018 11:30 AM for two hours in Charlottesville before Senior Judge Norman K. Moon.(hnw) |
| 04/16/2018 | 52 | NOTICE Rescheduling HEARING ON MOTION 31 MOTION to Suppress *1509 Summonses*, 35 SEALED MOTION, 36 SEALED MOTION, 32 MOTION to Dismiss *Counts One, Two, Three and Four*, 49 MOTION to Suppress *Redacted Version of ECF #36* **(CR)** **(No Interpreter requested)** **previously set for April 30, 2018 at 11:30 a.m. before Judge Norman K. Moon in Charlottesville as to Richard A. Wellbeloved−Stone (CUSTODY): Motion Hearing RESET for 4/26/2018 11:00 AM in Charlottesville before Senior Judge Norman K. Moon.(hnw)** |
| 04/24/2018 | 53 | ORDER denying 31 Motion to Suppress as to Richard A. Wellbeloved−Stone (1); denying 32 Motion to Dismiss as to Richard A. Wellbeloved−Stone (1); denying 35 Sealed Motion as to Richard A. Wellbeloved−Stone (1); denying 36 Sealed Motion as to Richard A. Wellbeloved−Stone (1)and denying 49 Motion to Suppress as to Richard A. Wellbeloved−Stone (1) for reasons that will be stated in a memorandum opinion to follow. Signed by Senior Judge Norman K. Moon on 4/24/18. (jcj) |
| 04/25/2018 | 54 | Notice Rescheduling Hearing **(CR)** **(No Interpreter requested)** previously set for Jury Trial on February 26, 2018 at 9:30 a.m. before Judge Norman K. Moon in Charlottesville as to Richard A. Wellbeloved−Stone (CUSTODY) ( See Order 50 dated 2/23/18−" Given the several pretrial motions pending before the Court, the trial is hereby CONTINUED until after the motions have been ruled upon. The time period between the scheduled trial date and when the motions are ruled upon is to be excluded from the calculation under the Speedy Trial Act. See 18 U.S.C. § 3161(h)(1)(D)")Change of Plea Hearing set for April 26, 2018 11:00 AM in Charlottesville before Senior Judge Norman K. Moon.(hnw) |
| 04/26/2018 | 55 | Minute Entry for proceedings held before Senior Judge Norman K. Moon:Guilty Plea Hearing as to Richard A. Wellbeloved−Stone held on 4/26/2018 Plea entered by Richard A. Wellbeloved−Stone (1) Guilty Count 3. Defendant remanded to custody (Court Reporter Sonia Ferris) (hnw) |
| 04/26/2018 | 56 | Factual Basis/Statement of Facts − filed by USA, Richard A. Wellbeloved−Stone. (hnw) |

| | | |
|---|---|---|
| 04/26/2018 | 57 | Guilty Plea Form as to Richard A. Wellbeloved−Stone. (hnw) |
| 04/26/2018 | 58 | PLEA AGREEMENT as to Richard A. Wellbeloved−Stone. (hnw) |
| 04/26/2018 | 59 | NOTICE OF HEARING as to Richard A. Wellbeloved−Stone (CUSTODY) **(CR)** Sentencing set for 7/30/2018 11:30 AM (two hours) in Charlottesville before Senior Judge Norman K. Moon.(hnw) |
| 04/26/2018 | | Notice of Appearance − Probation Officer: Brittany Warren as to Richard A. Wellbeloved−Stone (ch) |
| 04/26/2018 | 60 | MEMORANDUM OPINION as to Richard A. Wellbeloved−Stone. Signed by Senior Judge Norman K. Moon on 4/26/18. (jcj) |
| 06/26/2018 | 61 | **SEALED** PRESENTENCE INVESTIGATION REPORT − **INITIAL** as to Richard A. Wellbeloved−Stone. The parties shall file any initial objections or corrections to the Presentence Investigation Report by July 10, 2018. (Attachments: # 1 Supplement Victim Impact Statement, # 2 Supplement Victim Impact Statement)(ch) |
| 07/09/2018 | 62 | Presentencing Order as to Richard A. Wellbeloved−Stone. Signed by Senior Judge Norman K. Moon on 7/9/2018. (hnw) |
| 07/18/2018 | 63 | **SEALED** Objections to PSR re 61 − Notice to Probation and Opposing Counsel only as to Richard A. Wellbeloved−Stone. (Healey, Nancy) |
| 07/18/2018 | 64 | **SEALED** Objections to PSR re 61 − Notice to Probation and Opposing Counsel only as to Richard A. Wellbeloved−Stone. (Lorish, Lisa) |
| 07/19/2018 | 65 | Consent MOTION for Extension of Time to File *Sentencing Memorandum until July 24, 2018* by Richard A. Wellbeloved−Stone. (Attachments: # 1 Text of Proposed Order)(Lorish, Lisa) |
| 07/20/2018 | 66 | ORAL ORDER granting 65 Motion for Extension of Time to File as to Richard A. Wellbeloved−Stone (1). Entered by Senior Judge Norman K. Moon on 7/20/18. (hnw) |
| 07/20/2018 | 67 | **SEALED** PRESENTENCE INVESTIGATION REPORT − **REVISED FINAL** re 61 SEALED PSR − Initial, 63 SEALED Objections to PSR − Notice to Probation and Opposing Counsel Only, 64 SEALED Objections to PSR − Notice to Probation and Opposing Counsel Only as to Richard A. Wellbeloved−Stone. (ch) |
| 07/23/2018 | 68 | MOTION to allow the United States to receive records prior to sentencing date by USA as to Richard A. Wellbeloved−Stone. (Attachments: # 1 Text of Proposed Order)(Healey, Nancy) |
| 07/23/2018 | 69 | ORDER granting 68 Motion to subpoena information in advance of sentencing as to Richard A. Wellbeloved−Stone (1). Signed by Senior Judge Norman K. Moon on 7/23/18. (hnw) |
| 07/24/2018 | 70 | SENTENCING MEMORANDUM by Richard A. Wellbeloved−Stone (Attachments: # 1 Exhibit, # 2 Exhibit)(Lorish, Lisa) |
| 07/24/2018 | 71 | SENTENCING MEMORANDUM by USA as to Richard A. Wellbeloved−Stone (Healey, Nancy) |
| 07/24/2018 | 72 | MOTION to Seal Document *Redacted Portions of Sentencing Memorandum* by Richard A. Wellbeloved−Stone. (Attachments: # 1 Text of Proposed Order)(Lorish, Lisa) |
| 07/25/2018 | 73 | ORDER granting 72 Motion to Seal Document as to Richard A. Wellbeloved−Stone (1). Signed by Senior Judge Norman K. Moon on 7/25/18. (hnw) |
| 07/25/2018 | 74 | Sealed Document−Sentencing Memorandum (hnw) |
| 07/27/2018 | 75 | Response re 70 Sentencing Memorandum (Healey, Nancy) |
| 07/27/2018 | 76 | MOTION re 75 Response *Motion To Clarify* by USA as to Richard A. Wellbeloved−Stone. (Healey, Nancy) |
| 07/30/2018 | 77 | PRELIMINARY ORDER DIRECTING FORFEITURE OF PROPERTY as to Richard A. Wellbeloved−Stone.. Signed by Senior Judge Norman K. Moon on 7/30/18. (hnw) |

| | | |
|---|---|---|
| 07/30/2018 | 78 | Minute Entry for proceedings held before Senior Judge Norman K. Moon:Sentencing held on 7/30/2018 for Richard A. Wellbeloved−Stone (1), Count(s) 1, 2, 4, Dismissed; Count(s) 3, CBOP:276 Months; SR Life; SA $100 JVTA Assessment $5,000; Fine $2,500. Defendant remanded to custody (Court Reporter: Sonia Ferris) (hnw) (Entered: 07/31/2018) |
| 07/30/2018 | 79 | EXHIBIT LIST by USA as to Richard A. Wellbeloved−Stone_Exhibits Sealed or DVDs (hnw) (Entered: 07/31/2018) |
| 08/08/2018 | 80 | JUDGMENT as to Richard A. Wellbeloved−Stone (1), Count(s) 1, 2, 4, Dismissed; Count(s) 3, CBOP:276 Months; SR Life; SA $100 JVTA Assessment $5,000; Fine $2,500.(). Signed by Senior Judge Norman K. Moon on 8/6/18. (Attachments: # 1 Exhibit Preliminary order of Forfeiture) (hnw) |
| 08/09/2018 | 82 | **SEALED** PRESENTENCE INVESTIGATION REPORT − **FINAL AMENDED** re 67 SEALED PSR − Revised Final, 61 SEALED PSR − Initial, 63 SEALED Objections to PSR − Notice to Probation and Opposing Counsel Only, 64 SEALED Objections to PSR − Notice to Probation and Opposing Counsel Only as to Richard A. Wellbeloved−Stone. (ch) |
| 08/10/2018 | 83 | NOTICE OF APPEAL − Final Judgment to 4CCA by Richard A. Wellbeloved−Stone re 80 Judgment, (Lorish, Lisa) |
| 08/10/2018 | 84 | Transmittal of Notice of Appeal as to Richard A. Wellbeloved−Stone to 4CCA re 83 Notice of Appeal − Final Judgment to 4CCA NOTE: The Docketing Statement and Transcript Order Form are available on the 4th Circuit Court of Appeals website at www.ca4.uscourts.gov. If CJA24 forms(s) are applicable, you must submit a separate Auth−24 for each court reporter from whom you wish to order a transcript through the District Court's eVoucher system. (jcj) |
| 08/13/2018 | 85 | NOTICE of Docketing Record on Appeal from USCA as to Richard A. Wellbeloved−Stone re 83 Notice of Appeal − Final Judgment to 4CCA filed by Richard A. Wellbeloved−Stone. USCA Case Number 18−4573; Case Manager: Karen Stump (jcj) |
| 08/13/2018 | 86 | USCA Order Appointing ***Federal Public Defender for the Western District of Virginia at Charlottesville*** counsel in 4CCA as to Richard A. Wellbeloved−Stone re 83 Notice of Appeal − Final Judgment to 4CCA filed by Richard A. Wellbeloved−Stone. (jcj) |
| 09/25/2018 | 87 | **SEALED** PRESENTENCE INVESTIGATION REPORT − **FINAL AMENDED** re 67 SEALED PSR − Revised Final, 82 SEALED PSR − Final Amended, 61 SEALED PSR − Initial, 63 SEALED Objections to PSR − Notice to Probation and Opposing Counsel Only, 64 SEALED Objections to PSR − Notice to Probation and Opposing Counsel Only as to Richard A. Wellbeloved−Stone. (ch) |

CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILE, VA
FILED
09/27/2017
JULIA C. DUDLEY, CLERK
BY: H. Wheeler
DEPUTY CLERK

AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

Western District of Virginia

United States of America
v.
Richard A. WELLBELOVED-STONE

*Defendant(s)*

Case No. 3:17MJ00060

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of May 18, 20, 2017 and July 25, 2017 in the ~~county~~ ljc of city of Charlottesville in the Western District of Virginia, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. Section § 2251(a);<br><br>18 U.S.C. Section § 2252(a)(4)(B); | did use a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, which visual depiction was produced using materials that had been mailed, shipped and transported in and affecting interstate and foreign commerce by any means, including by computer; and did knowingly possessing at least one matter containing child pornography under 18 U.S.C. § 2256(8)(A), which was produced using using materials which had been mailed and shipped and transported using any means and facility of interstate and foreign commerce, including by computer. |

This criminal complaint is based on these facts:

See attached affidavit

☑ Continued on the attached sheet.

Received by reliable electronic means and sworn and attested to by telephone.

*Complainant's signature*

Lazaro "Larry" J. Cosme, HSI Special Agent

*Printed name and title*

~~Sworn to before me and signed in my presence.~~

Date: 9/27/17

*Judge's signature*

City and state: Charlottesville, Virginia

Hon. Joel S. Hoppe, United States Magistrate Judge

*Printed name and title*

REDACTED

CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
09/27/2017

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE, VIRGINIA

JULIA C. DUDLEY, CLERK
BY: H. Wheeler
DEPUTY CLERK

UNITED STATES OF AMERICA )
)
v. )
) Criminal No. 3:17MJ00060
Richard A. WELLBELOVED-STONE )

## AFFIDAVIT IN SUPPORT OF ARREST WARRANT

1. I, Lazaro "Larry" Cosme a Special Agent with the Department of Homeland Security, Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), in Harrisonburg, Virginia. I have been employed by HSI and its predecessor agency for over twenty-four and a half years. As part of my daily duties as an HSI Special Agent, I am assigned to investigations of criminal matters including the one set out in this affidavit which concerns an investigation related to child exploitation and child pornography. I have worked on numerous child exploitation cases and have also attended training related to child exploitation offenses and investigations. I have successfully completed training at the Federal Law Enforcement Training Center in Glynco, Georgia. I possess a Bachelor's Degree in Criminal Justice from New Jersey City University. Additionally, I conduct and investigate criminal violations relating to illicit finance, bulk cash smuggling, human trafficking/smuggling, customs and immigration laws.

2. The information set forth in this affidavit is based on information provided to me by other Law Enforcement Officers, and on my investigation of this matter. I have not included each and every fact known to me concerning the investigation. Rather, I have set forth only those facts necessary to establish probable cause.

3. On or about **July 14, 2017**, a Law Enforcement Agency in the U.K. known to HSI provided documentation in reference to the KIK Messenger user **"bijsincville"** and a Google email account **"bijsincville@gmail.com"** relating to chat conversations concerning the ongoing sexual exploitation of a [redacted] year old child.

4. Excerpts of communications are set forth below. "Lee" is an undercover officer (UC) with the above-referenced U.K. law enforcement agency and "Jack" was later determined to be Richard A. Welbeloved-Stone as set forth further below.

**KIK CHAT WITH UC**
**DATE: Wednesday July 12, 2017**

- 13:53 – Jack;
- "Hey there. How are things?"

- 15:42 – Lee;

- "Hi all good here, how are you? how are things...."

- 16:14 – Jack;
- "Doing well. Have been only fantasizing about [redacted] (REDACTED by law enforcement as it pertains to the identity of Victim 1). So hard since last week I helped her get dressed for bed."

- 16:15 – Lee;
- "mmmm nice! how old is she again?"

- 16:52 – Jack;
- [redacted]

- 16:54 – Jack;
- "And how old are your girls?"

- 16:55 – Lee;
- "3 and 6, well lucy is 7 in a couple of weeks"

- 16:56 – Jack;
- "Nice. Have a good birthday surprise for her?"

- 16:59 – Jack;
- "You tasted both of them, or just Lucy?"

- 16:59 – Lee;
- "i lick them both out, they taste so good"

- 17:00 – Jack;
- "Mmm, yes"

- 17:00 – Jack;
- "I've only had a little taste of (REDACTED by law enforcement as it pertains to the identity of Victim 1), but she was so sweet"

5. Pursuant to an administrative subpoena, KIK revealed that username **bijsincville** belonged to a "Jack Smith," using IP address **76.120.226.19** (*Date: July 16, 2017 Time: 17:41:42*) during the time of the undercover chats. Open Source information relating to IP address **76.120.226.19** identified the IP provider as Comcast Communications.

6. Pursuant to an administrative subpoena, Comcast revealed that during the date of July 16, 2017 Time: 17:41:42, (during the time of the chats), IP address **76.120.226**, was assigned to Rick Wellbeloved, and Internet Service was provided to address 1028 Cottonwood Road, Charlottesville, VA 22901.

7. On July 20, 2017, HSI Special Agent Cosme preformed a law enforcement database check for Richard Alan Wellbeloved-Stone DOB: XX/XX/1964, SSN: XXX-XX-7933 listed as residing at **1028 Cottonwood Road, Charlottesville, VA 22901.**

8. Charlottesville Police Department Detective Nicholas Rudman requested information

from the Virginia Department of Motor Vehicles (Virginia DMV). The Virginia DMV has Richard Alan Wellbeloved-Stone current address as 1028 Cottonwood Road, Charlottesville, VA 22901.

9. On July 20, 2017, Detective Rudman conducted surveillance on the residence of **1028 Cottonwood Road, Charlottesville, VA 22901.** During the surveillance, Detective Rudman observed a two vehicle(s) parked at the residence. The first vehicle was a four door sedan in the driveway with VA registration: "PORTUS" and the other vehicle parked on the street in front of the residence VA registration "LUVROX2". Both vehicles are registered to **Richard Wellbeloved-Stone** address: **1028 Cottonwood Road, Charlottesville, VA 22901.**

10. [redacted] pictures located by your Affiant show what appears to law enforcement to be Richard Alan Wellbeloved-Stone and his wife in a [redacted] picture with [redacted]

11. On July 24, 2017, Detective Nicholas Rudman applied for a Virginia State Search warrant before Albemarle Circuit Court Judge Hon. Cheryl V. Higgins. Judge Higgins issued the search warrant for **1028 Cottonwood Road, Charlottesville, Virginia 22901** for evidence relating to possible Virginia state charges of forcible sodomy and aggravated sexual battery.

12. On July 25, 2017, Federal Agents with Homeland Security Investigations, Charlottesville Police Department Detectives, and Virginia State Police Agents were present during the execution of this search warrant at **1028 Cottonwood Road, Charlottesville, Virginia 22901.** During the search, Law Enforcement Agents collected, among other things, computers, cellular phones and other electronic device(s) that may contain evidence in accordance with the above-referenced state warrant.

13. Law Enforcement Agents collected numerous items during the execution of the Virginia State Search Warrant at **1028 Cottonwood Road, Charlottesville, Virginia 22901.** Inside the residence, Law Enforcement Agents found and seized among other things an Apple IPHONE, Model A166, IMEI: 353819083209045 and a Lacie External Hard Drive, SN: NL3ITKEX these items contained evidence of sexually explicit materials related to the sexual exploitation of minor children.

14. On July 25, 2017, during the search of **1028 Cottonwood Road, Charlottesville, Virginia, 22901** computer forensic examiners from HSI and the Virginia State Police Department previewed some of the digital evidence. Computer forensic examiners identified a Lacie External Hard Drive which contains a folder titled "**not on bu**" as having ten files with titles consistent with child pornography. Described below are two examples of the contents in this folder. This external hard drive was located on the desk of Richard Wellbeloved-Stone. During the execution of the state search warrant Mr. Wellbeloved-Stone's adult son told Charlottesville Police Department Detective Blaine Cosgro that the desk is his father's. Law enforcement officers observed karate certificates in the name of Mr. Richard Wellbeloved-Stone directly above the desk. Additional items including a Charlottesville City School computer belonging to Mr. Wellbeloved-Stone was in a carrying case next to the desk.

a. Title "!!pthc lsm magazine 9yo kidzilla pre-teen young little girls harry

potter jenny - Polin115.jpg". Description: Image file with two prepubescent girls sitting on the floor together, one prepubescent girl has her feet in the air exposing her vagina and the other girl is behind her holding up her legs. The girl's vagina appears to be the focal point of the image.

b. Title "pthc 12 yo holy cross middle school cougar girl sucks young boyfriend - homemade webcam.mpg". Description: This video is two minutes and fifty four seconds in length. During the video a young female, who appears to be approximately twelve-years old, performing oral sex on a male about the same age. This video appears to be captured by a webcam. Your Affiant knows from other Law Enforcement Officers, that this video is an identified child by the National Center of Missing and Exploited Children.

15. On July 26, 2017, Detective Blaine Cosgro forensically extracted Richard Wellbeloved-Stone's IPHONE the KIK Messenger application and the KIK Messenger username "**bijsincville**" were located on this IPHONE. Detective Cosgro found some KIK messenger chats on this IPHONE with the Undercover Agent. There were also personal files belonging to Richard Wellbeloved-Stone that would identify ownership of this IPHONE. This IPHONE, was located next to Wellbeloved-Stone's bed on a night stand. Mr. Wellbeloved-Stones adult children identified the IPHONE as belonging to Richard Wellbeloved-Stone.

16. During a review of the photos on the IPHONE, Agents located approximately 20 images of a pre-pubescent female's vagina. These photos are from the waist down and the focal point is the pre-pubescent female's vagina. Some of the images show the hand of an adult male manipulating this pre-pubescent female's vagina. The metadata of the photos shows that the photos were taken from this IPHONE, on May 18, 2017 and May 20, 2017.

17. Law Enforcement officers identified a young child [redacted] This child known to law enforcement [redacted]. There were also non-sexual pictures of this child on the above referenced IPHONE that appeared to have been taken [redacted] shortly before to the production of the child exploitation images and [redacted] An interview of the child's parents confirmed [redacted] (1028 Cottonwood Road, Charlottesville, Virginia located in the Western District of Virginia) [redacted]

18. On August 9, 2017, your Affiant contacted Apple, Inc. and a representative advised affiant that all Apple IPHONES are made in the country of China. The Apple representative further stated that the Apple IPHONES have a stamp in the back of the device indicating the place where it was made China. The Apple representative's name is known to law enforcement.

19. On August 10, 2017, your Affiant reviewed one of the Lacie External Hard Drives and opened the external hard drive casing revealing the label which indicated this is a Seagate hard drive and is product of Thailand. Further, research on these particular Lacie External Hard Drives indicated that they are being made in Thailand.

## CONCLUSION

20. Based on the information set forth in this affidavit and the history of Richard A. Wellbeloved-Stone, I submit that there is probable cause to believe:

a. That on or about May 18, 2017 and May 20, 2017, Richard A. Wellbeloved-Stone did use a minor to engage in sexually explicit conduct, for the purpose of producing a visual depiction of such conduct, which visual depiction was produced using materials that had been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means, including by computer, in violation of 18 U.S.C. § 2251(a).

b. On July 25, 2017, Richard A. Wellbeloved-Stone did knowingly possess at least one matter which contains a visual depiction which was produced using materials which had been mailed and shipped and transported using any means and facility of interstate and foreign commerce, including by computer, and the production of such visual depiction involved the use of a minor engaging in sexually explicit conduct, and such visual depiction was of such conduct, in violation of 18 U.S.C. §2252(a)(4)(B).

Received by reliable electronic means and sworn and attested to by telephone on September 27, 2017.

Lazaro "Larry" Cosme
Special Agent
Homeland Security Investigations (HSI)
Harrisonburg, Virginia

~~Subscribed and sworn to before me this ___ day of September, 2017.~~

HONORABLE JOEL HOPPE
U.S. Magistrate Judge

CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILE, VA
FILED

OCT 25 2017

JULIA C. DUDLEY, CLERK
BY: [signature]
DEPUTY CLERK

IN THE
UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF VIRGINIA
AT CHARLOTTESVILLE
OCTOBER 2017 SESSION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | **INDICTMENT** |
| | ) | |
| v. | ) | Criminal No. 3:17-cr-00014 |
| | ) | |
| RICHARD ALAN WELLBELOVED-STONE | ) | 18 U.S.C. §§ 2251(a), 2252(a)(4)(B), |
| | ) | 2251(e), and 2252(b)(2) |

**COUNT ONE**

The Grand Jury charges:

1. That between in or about 2011 and in or about 2014, the exact date(s) being unknown to the Grand Jury, in the Western Judicial District of Virginia, the defendant, RICHARD ALAN WELLBELOVED-STONE, did employ, use, persuade, induce, entice, and coerce, and did attempt to employ, use, persuade, induce, entice, and coerce Minor 1, who was then a prepubescent minor under the age of 18 years old, to engage in sexually explicit conduct, for the purpose of producing one or more visual depiction(s) of such conduct, which visual depiction(s) was produced using materials that had been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means, including by computer.

2. In violation of Title 18, United States Code, Sections 2251(a) and 2251(e).

**COUNT TWO**

The Grand Jury further charges:

1. That on or about May 18, 2017, in the Western Judicial District of Virginia, the defendant, RICHARD ALAN WELLBELOVED-STONE, did employ, use, persuade, induce, entice, and coerce

Minor 2, who was then a prepubescent minor under the age of 18 years old, to engage in sexually explicit conduct, for the purpose of producing one or more visual depiction(s) of such conduct, which visual depiction(s) was produced using materials that had been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means, including by computer.

2. In violation of Title 18, United States Code, Sections 2251(a) and 2251(e).

**COUNT THREE**

The Grand Jury further charges:

1. That on or about May 20, 2017, in the Western Judicial District of Virginia and elsewhere, the defendant, RICHARD ALAN WELLBELOVED-STONE, did employ, use, persuade, induce, entice, and coerce Minor 2, who was then a prepubescent minor under the age of 18 years old, to engage in sexually explicit conduct, for the purpose of producing one or more visual depiction(s) of such conduct, which visual depiction(s) was produced using materials that had been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means, including by computer.

2. In violation of Title 18, United States Code, Sections 2251(a) and 2251(e).

**COUNT FOUR**

The Grand Jury further charges:

1. That on or about July 25, 2017, in the Western Judicial District of Virginia, the defendant, RICHARD ALAN WELLBELOVED-STONE, did knowingly possess at least one matter which contained a visual depiction(s) that had been shipped and transported using any means and facility of interstate and foreign commerce, and that had been shipped and transported in and affecting interstate and foreign commerce, and that was produced using materials which had been mailed,

and shipped and transported using any means and facility of interstate and foreign commerce, including by computer, and the production of such visual depiction(s) involved the use of a minor engaging in sexually explicit conduct, and such visual depiction(s) was of such conduct, and further that such image(s) included at least one depiction that involved a minor who had not attained 12 years of age.

2. In violation of Title 18, United States Code, Sections 2252(a)(4)(B) and 2252(b)(2).

**NOTICE OF FORFEITURE**

1. Upon conviction of one or more of the felony offenses alleged in this Indictment, the defendant shall forfeit to the United States:

a. any visual depiction described in 18 U.S.C. §§ 2251, 2251A, or 2252, 2252A, 2252B or 2260, or any book, magazine, periodical, film, videotape, or other matter which contains any such visual depiction, which was produced, transported, mailed, shipped or received in violation of law, pursuant to 18 U.S.C. § 2253(a)(1),

b. any property, real or personal, constituting or traceable to gross profits or other proceeds obtained from said violation of law, pursuant to 18 U.S.C. § 2253(a)(2), and

c. any property, real or personal used or intended to be used to commit or to promote the commission of said violation of law, or any property traceable to such property, pursuant to 18 U.S.C. § 2253(a)(3).

2. The property to be forfeited to the United States includes but is not limited to the following property:

a. All such material containing the above-described visual depictions,

b. One (1) iPhone cellular telephone, model A1661, IMEI: 353819083209045,

c. One (1) iPhone cellular telephone, model A1453, IMEI: 358757050616724,

d. One (1) Samsung cellular telephone, Model SPH-D720, MAC: 8C71F857996A, DEC: 268435460203220080,

e. One (1) Lacie external hard drive, serial number NL31TKEX,

f. One (1) Lacie external hard drive, serial number 14441111120284QR, and

g. One (1) Apple MacBook Pro laptop, serial number W8023011AGX.

3. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

a. cannot be located upon the exercise of due diligence,
b. has been transferred or sold to, or deposited with a third person,
c. has been placed beyond the jurisdiction of the Court,
d. has been substantially diminished in value, or
e. has been commingled with other property which cannot be subdivided without difficulty,

then it is the intent of the United States to seek forfeiture of any other property of the defendant up to the value of the above-described forfeitable property, pursuant to 21 U.S.C. § 853(p).

A TRUE BILL, this 25 day of October 2017.

*/s/FOREPERSON*
FOREPERSON

for
RICK A. MOUNTCASTLE
ACTING UNITED STATES ATTORNEY



*USAO No. 2017R00420*

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.: 3:17-cr-14 |
| | ) | |
| RICHARD ALAN WELLBELOVED-STONE | ) | |
| | ) | |
| Defendant. | ) | |

**MOTION TO DISMISS COUNTS ONE, TWO, THREE, AND FOUR OF INDICTMENT**

The defendant, Richard Alan Wellbeloved-Stone, by and through undersigned counsel and pursuant to Federal Rule of Criminal Procedure 12, submits this Motion to Dismiss Counts One, Two, Three, and Four of the Indictment because as applied to Wellbeloved-Stone, 18 U.S.C. §§ 2251(a), 2251(e) 2252(a)(4)(B) and 2252(b)(2) run afoul of the Commerce Clause.

**STATEMENT OF FACTS**

Counts One, Two, and Three of the Indictment allege that Wellbeloved-Stone violated 18 U.S.C. 2251(a) and 2251(e) by producing child pornography. Each count alleges as a basis for jurisdiction that the visual depiction "was produced using materials that had been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means."

Count Four of the Indictment alleges that Wellbeloved-Stone violated 18 U.S.C. 2252(a)(4)(B) and 2252(b)(2) by possession of child pornography. Count Four alleges that the visual depiction possessed by Wellbeloved-Stone "was produced using materials which had been mailed, and shipped and transported using any means and facility of interstate and foreign commerce."

## ARGUMENT

**I. <u>In light of *National Federation of Independent Business v. Sebelius* §§ 2251(a) and 2252(a) no longer apply to exclusively intrastate or local conduct</u>**

The Fourth Circuit has consistently rejected prior Constitutional challenges to the federal anti-child pornography regulatory scheme. *See United States v. Malloy*, 568 F.3d 166 (4th Cir. 2009); *United States v. Forrest*, 429 F.3d. 73 (4th Cir. 2005). However, the circuit has not decided any cases challenging the constitutionality of federal anti-child pornography statute since the Supreme Court decided *National Federation of Independent Business v. Sebelius*, 132 S.Ct. 2566 (2012) ("*NFIB*"), nearly three years ago.[1]

[1] The Fourth Circuit upheld the constitutionality of 18 U.S.C. §2423(c) on a challenge to the foreign commerce clause after *NFIB*, but has otherwise not issue any published decisions in cases challenging the constitutionality of criminal statutes after *NFIB*. Other circuits have upheld the constitutionality of criminal statutes since the *NFIB* decision was published, all relying on generalization that the statutes are not compelling conduct, but rather reacting to existing actions. *See e.g., United States v. Rose*, 714 F.3d 362, 371 (6th Cir. 2013) (rejecting *NFIB* challenge to circuit precedent on interstate commerce element of 18 U.S.C. § 2251), *cert. denied*, 134 S.Ct. 272 (2013); *United States v. Sullivan*, 756 F.3d 845, (9th Cir. 2014) (circuit precedent on the interstate commerce requirements of 18 U.S.C. §§ 2251 and 2252 remains binding after *NFIB*); *United States v. Parton*, 749 F.3d 1329, 1331 (11th Cir. 2014) (rejecting *NFIB* challenge to 18 U.S.C. § 2251(a)); *United States v. Robbins*, 729 F.3d 131, 135-36 (2d Cir. 2013) (rejecting an argument that *NFIB* eroded prior precedent sustaining the constitutionality of the Sex Offender Registration and Notification Act requiring the defendant to update his registration after traveling in interstate commerce), *cert. denied*, 134 S.Ct. 968 (2014*); United States v. Roszkowski*, 700 F.3d 50, 58-59 (1st Cir. 2012) (*NFIB* "did nothing to undermine the validity of 18 U.S.C. §§ 922(g)(1) and 922(k)"), *cert. denied*, 133 S.Ct. 1278 (2013); *United States v. Alcantar*, 733 F.3d 143, 145-46 (5th Cir. 2013) (*NFIB* did not overrule circuit precedent on interstate commerce element of 18 U.S.C. § 922(g)(1)), *cert. denied*, 134 S.Ct. 1570 (2014*); United States v. Henry*, 688 F.3d 637, 642 n. 5 (9th Cir. 2012) (*NFIB* did not overrule Ninth Circuit precedent that 18 U.S.C. § 922(o), which bans the transfer or possession of machine guns, is a valid exercise of Congress' Commerce Clause powers), *cert. denied*, 133 S.Ct. 996 (2013); *United States v. Humphrey*, 845 F.3d 1320 (10th Cir. 2017) (§ 2251 applied to purely intrastate production of child pornography does not violate Commerce Clause).

In *NFIB*, the Court rejected the Government's argument that the Commerce Clause powers sanction the individual mandate within the Patient Protection and Affordable Care Act.[2] The Government argued the Commerce Clause permits Congress to "order individuals to buy health insurance because the failure to do so affects interstate commerce[.]" *NFIB*, 132 S.Ct. at 1584. The Supreme Court rejected the Government's position. "Construing the Commerce Clause to permit Congress to regulate individuals precisely *because* they are doing nothing would open a new and potentially vast domain to congressional authority." *Id*. at 2587 (emphasis in original). "Allowing Congress to justify federal regulation by pointing to the effect of inaction on commerce would bring countless decisions an individual could *potentially* make within the scope of federal regulation[.]" *Id*. (emphasis in original). *Cf. Bond v. United States*, 134 S.Ct. 2077, 2086 (2014) ("A criminal act committed wholly within a State cannot be made an offense against the United States, unless it have some relation…to some matter within the jurisdiction of the United States") (*internal citation omitted*).

The statutes at issue, §§ 2251(a) and 2252(a), has the same practical effect as the individual mandate at issue in *NFIB*, subjecting individuals to federal police powers based exclusively on a lack of economic or commercial interstate activity. Thus, for the same reasons the *NFIB* plurality rejected the Commerce Clause as a legitimate source of Congressional power—namely, Government cannot exercise federal jurisdiction over those not participating in interstate commerce—§§ 2251(a) and 2252(a) as applied to Wellbeloved-Stone cannot be sustained, because there are no allegations that Wellbeloved-Stone was participating in the interstate market for child pornography. Because §§ 2251(a) and 2252(a) cannot constitutionally

[2] The individual mandate penalizes certain individuals who fail to maintain minimum essential health insurance coverage. The penalty is in the form of a payment, calculated as a certain percentage of household income, subject to various exemptions, limitations, and restrictions.

be extended to encompass Wellbeloved-Stone's alleged intrastate conduct, Counts One, Two, Three, and Four of the Indictment should be dismissed.

Wellbeloved-Stone seeks dismissal of these counts on the basis that *NFIB* represents a fundamental change in Commerce Clause analysis, necessitating a new look at the constitutionality of §§ 2251(a) and 2252(a), and that therefore the Fourth Circuit's prior decision in *Malloy*, 568 F.3d 166 is no longer controlling.

A. Commerce Clause Analysis

Congress may regulate the channels of interstate commerce, the instrumentalities of interstate commerce, and activities that substantially affect interstate commerce. *Gonzalez v. Raich*, 545 U.S. 1 (2005); *United State v. Lopez*, 514 U.S. 549, 558 (1995); *United States v. Buculei*, 262 F.3d 322, 328 (4th Cir. 2001). The application of §§ 2251(a) and 2252(a) in this case is not based upon either the channels or the instrumentalities of interstate commerce.[3] Thus, the only remaining justification for §§ 2251(a) and 2252(a) under the Commerce Clause is under the third, catch-all category, "activities that substantially affect interstate commerce." *Raich*, 545 U.S. at 16-18, *Lopez*, 514 U.S. at 558-59; *Patton*, 451 F.3d at 622.

In assessing whether Congress had a rational basis "to find that the regulated activity, taken in the aggregate, would substantially affect interstate commerce," the Fourth Circuit uses

[3] As applied to Wellbeloved-Stone, §§ 2251(a) and 2252(a) are not directed at the *movement* of child pornography through the channels of interstate commerce. Designed to limit the interstate market for child pornography, §§ 2251(a) and 2252(a) decidedly affect a different interstate market when applied to the facts of this case. Instead, the application of §§ 2251(a) and 2252(a) to Wellbeloved-Stone's alleged conduct results in attacking the movement of a camera and cassette tape through the channels of interstate commerce. Cameras and cassette tapes are not themselves instrumentalities of interstate commerce and §§ 2251(a) and 2252(a) are not directed at cameras and cassette tapes in ways that threaten or injure instrumentalities of interstate commerce.

the four-factor analysis established by *United States v. Morrison*, 529 U.S. 598 (2000) and *Lopez*. Specifically, the court looks at

> "(1) whether the statute relates to an activity that has something to do with commerce or any sort of economic enterprise . . . ; (2) whether the statute contains an express jurisdictional element which might limit its reach to activities having an explicit connection with or effect on interstate commerce; (3) whether congressional findings in the statute or its legislative history support the judgment that the activity in question has a substantial effect on interstate commerce; and (4) whether the link between the activity and a substantial effect on interstate commerce is attenuated."

*Buculei*, 262 F.3d at 328 (internal quotation marks omitted); *see United States v. Gilbert* 677 F.3d 613, 624 (4th Cr. 2012) (applying and analyzing four-factor analysis). Following the roadmap articulated and applied in *Gilbert*, illuminated by the most recent addition to Commerce Clause jurisprudence in *NFIB*, it is clear that §§ 2251(a) and 2252(a) exceed the scope of Congress' regulatory power as applied to the facts of Wellbeloved-Stone's case.

*1. Is the regulated activity commercial?*

The Constitution gives Congress powers to regulate commerce in and between the several states. "The power to *regulate* commerce presupposes the existence of commercial activity to be regulated." *NFIB* at 2586, (emphasis in original). Thus, the first line inquiry necessarily focuses on what is commercial activity. *See Forrest*, 429 F.3d at 78 (quoting *Raich*, 545 U.S. at 25) (describing "'quintessentially economic' activities" as "those involving the 'production, distribution, and consumption of commodities.'"). The decision in *NFIB* offers further elucidation, noting the requirement is for existing commercial activity. *See NFIB*, 132 S.Ct. at 2586 ("The power to *regulate* commerce presupposes the existence of commercial activity to be regulated") (*emphasis in original*). The Commerce Clause authorizes federal regulation so long as some activity exists to be regulated. Conversely, absent activity in interstate commerce, the federal government cannot claim jurisdiction under the Commerce Clause. This is the rare case

in which a double-negative is appropriate: not doing something in interstate commerce does not give rise to federal Commerce Clause powers. Congress may not enact legislation simply because the present inaction is hypothetically, at some undiscernible future point in time, tangentially related to interstate commerce. *NFIB*, 132 S.Ct. at 2587-91. If this logic persisted, everything and anything would be subject to federal regulation.

Not only did *NFIB* reinforce the need for economic or commercial activity to permit regulation under the Commerce Clause, the Court specifically distinguishes anticipatory effects of something on interstate commerce versus anticipating the actual activity as justification for regulation. *See NFIB*, 132 S.Ct. at 2590 ("we have never permitted Congress to anticipate that activity itself in order to regulate individuals not currently engaged in commerce"). The holding in *Wickard v. Filburn*, 317 U.S. 111 (1942), widely regarded as the "most far reaching example of Commerce Clause authority over intrastate activity," *Lopez*, 514 U.S. at 560, still stands because the farmer was engaged in an activity that was part of an interstate market properly regulated by Congress (the interstate wheat market). In contrast, the individual mandate (impermissibly) used inactivity in an interstate market to justify regulating individuals.

Using the Government's argument that inaction substantially affects interstate commerce, the Supreme Court suggested if this rationale held water, the federal government could force obese people to buy more vegetables, as diet impacts health and health care costs. Undoubtedly, the failure to buy (and eat) vegetables "can readily have a substantial effect on interstate commerce. Under the Government's logic, the connection between vegetable consumption and health care costs authorizes Congress to use its commerce power to compel citizens to act as the Government would have them act." *NFIB*, 132 S.Ct. at 2589. Presumably this train of thought does not stop at the produce aisle, but travels throughout the grocery store (skim milk, skinless

chicken, fish) and into shoe stores (running shoes) and book store (diet books, cookbooks), with no end in sight.

Though no universally accepted definition of economic or commercial exists, merely possessing a phone and/or photographs as alleged in Wellbeloved-Stone's case is not commercial or economic activity as it relates to the interstate market for child pornography. *See Lopez*, 514 U.S. at 560 (possessing a firearm near a school, by its terms, "has nothing to do with 'commerce' or any sort of economic enterprise"). Even though *Raich* ostensibly expanded the definition of economic or commercial to include "the consumption of commodities as well as their production and definition," merely possessing an object is neither economic nor commercial conduct, nor is it the consumption of a commodity. It necessarily follows that merely possessing a camera or cassette tape is not commercial or economic activity as related to the interstate market for child pornography, and not properly regulated as such under the Commerce Clause powers.

In sum, there must be actual economic or commercial activity to support Congressional use of Commerce Clause powers. Inactivity is not activity—and the Indictment does not allege that Wellbeloved-Stone participated in the interstate market for child pornography by distributing or purchasing such materials. Because mere possession of a phone and photographs do not constitute economic or commercial activity within the interstate market for child pornography, no relevant economic or commercial activity has been identified.

*2. Is there a jurisdictional hook?*

For legislation to withstand judicial scrutiny, the statute must be limited by an express jurisdictional element. *See Gilbert*, 677 F.3d at 625. A jurisdictional hook does not, however, ward off constitutional challenges. *See United States v. Rodia*, 194 F.3d 465, 472-73 (3d Cir.1999) (rejecting a "hard and fast rule that the presence of a jurisdictional element

automatically ensures the constitutionality of a statute"); *United States v. Holston*, 343 F.3d 83, 88 (2d Cir.2003) (finding the jurisdictional hook factor "superficially met" but not relying on "the mere existence of jurisdictional language purporting to tie criminal conduct to interstate commerce"). The Eleventh Circuit recently noted, "where a jurisdictional element is required, a meaningful one, rather than a pretextual incantation evoking the phantasm of commerce, must be offered." *Maxwell*, 446 F.3d at 1217 (internal quotation marks, citations, and alteration omitted).

The statute under which Wellbeloved-Stone was charged contains a jurisdictional hook, but one that contains only the pretextual incantations invoking the illusion of commerce. The hooks in §§ 2251(a) and 2252(a) do nothing to limit or restrict the reach of the statutes. Notwithstanding the legislative motivation underlying the expansion of federal jurisdiction to ensure federal law enforcement's ability to "prosecute a number of cases where the defendant produced child pornography but did not intend to transport the images in interstate commerce," *United States v. Morales de Jesus*, 372 F.3d 6, 12 (1st Cir. 2004) (internal citation omitted), the hook offers no substantive limitations. *See Lopez*, 514 U.S. at 561-62 (statute does not contain a jurisdictional hook to ensure, through case-by-case inquiry, firearm possession at issue affects interstate commerce).

If Congress were truly serious about restricting interstate movement of child pornography, the statute would be narrowly tailored to prohibit possession of such images that had actually moved in interstate commerce. Or the production of images with the intent of distributing them in interstate commerce. Congress could have crafted a jurisdictional hook such that a case-by-case inquiry would reveal those instances of intrastate conduct affecting interstate commerce. Instead, Congress utilized broad language such that all conduct, even that traditionally left to the state, became a federal offense. *Cf. Bond*, 134 S.Ct at 2089 (before

rendering traditionally local criminal conduct a federal offense, there must be "proof of a connection to interstate commerce in every case, thereby preserving an element of all offenses a requirement suited to federal criminal jurisdiction alone") (*quoting United States v. Bass*, 404 U.S. 336, 351 (1971)). A jurisdictional hook "that restricts a statute to items that bear a "trace of interstate commerce" is no restriction at all." *Id.*, *quoting Jones*, 529 U.S. at 857.

*3. Do congressional findings support the judgement that the regulated activity has a substantial effect on interstate commerce?*

Congress often makes findings in support of legislative efforts. Congressional findings "on essentially factual issues" are given "a great deal of deference." *Walters v. Nat'l Ass'n of Radiation Surveyors,* 473 U.S. 305, 300 n. 12 (1985). Congress made several formal findings with regard to the continual expansion §§ 2251(a) and 2252(a):

> (1) The effect of the intrastate production, transportation, distribution, receipt, advertising, and possession of child pornography on the interstate market in child pornography:
>
> (C) The interstate market in child pornography is carried on to a substantial extent through the mails and other instrumentalities of interstate and foreign commerce, such as the Internet. The advent of the Internet has greatly increased the ease of transporting, distributing, receiving, and advertising child pornography in interstate commerce. The advent of digital cameras and digital video cameras, as well as videotape cameras, has greatly increased the ease of producing child pornography. The advent of inexpensive computer equipment with the capacity to store large numbers of digital images of child pornography has greatly increased the ease of possessing child pornography. Taken together, these technological advances have had the unfortunate result of greatly increasing the interstate market in child pornography.
>
> (D) Intrastate incidents of production, transportation, distribution, receipt, advertising, and possession of child pornography, as well as the transfer of custody of children for the production of child pornography, have a substantial and direct effect upon interstate commerce because:
>
> (i) Some persons engaged in the production, transportation, distribution, receipt, advertising, and possession of child pornography conduct such activities entirely within the boundaries

> of one state. These persons are unlikely to be content with the amount of child pornography they produce, transport, distribute, receive, advertise, or possess. *These persons are therefore likely to enter the interstate market in child pornography in search of additional child pornography, thereby stimulating demand in the interstate market in child pornography.*
>
> (iii) Much of the child pornography that supplies the interstate market in child pornography is produced entirely within the boundaries of one state, is not traceable, and enters the interstate market surreptitiously. This child pornography supports demand in the interstate market in child pornography and is essential to its existence.

> (F) *Federal control of the intrastate incidents of the production*, transportation, distribution, receipt, advertising, and possession of child pornography, as well as the intrastate transfer of children for the production of child pornography, *is essential to the effective control of the interstate market in child pornography*.

ADAM WALSH CHILD PROTECTION AND SAFETY ACT OF 2006, PL 109–248, July 27, 2006, 120 Stat. 587 (*emphasis added*).

Congress made the same generalized explanations as above to justify regulating guns in *Lopez*, and congressional findings failed to carry persuasive weight. Interstate markets for guns absolutely exist and interstate movement of guns can increase crime. Yet, the simple existence of a particular market (for an object) and the occurrence of criminal conduct did not establish that the prohibition on possessing guns substantially affected interstate commerce. *Lopez*, 514 U.S. at 563-64.

The analysis and outcome remains the same when applied to the child pornography statute. Interstate markets for child pornography exist, and the interstate movement of child pornography can increase incidence and occurrence of child pornography. Interstate markets for cameras exist. However, no connection can be made between the intrastate possession of cameras and interstate commerce as it relates to child pornography. Thus, Congress' failure to

demonstrate how the interstate camera or film markets are inexorably linked to increased incidence of crime further inflicts damage on the continued vitality of §§ 2251(a) and 2252(a)

Additionally, the rationale Congress offered to justify regulating local activity as it relates to child pornography no longer suffices in light of *NGIB*. As illustrated by the facts alleged in Wellbeloved-Stone's case, §§ 2251(a) and 2252(a) are "particularly divorced from any link to existing commercial activity" and therefore exceed Congress' power under the Commerce Clause. *NFIB*, 132 S.Ct. at 2590. Under *NFIB*, in order for Congress to properly draw child pornography into its "impetuous vortex" of regulations, there must be commercial activity of a relevant and direct nature to interstate commerce. The Supreme Court was unequivocal about the limits of Congressional power: "[W]e have never permitted Congress to anticipate that activity itself in order to regulate individuals not currently engaged in commerce." *NFIB*, 132 S.Ct. at 2590. However, that is precisely what Congress is doing in §§ 2251(a) and 2252(a), and as such, the statutes are fatally flawed.

In a related vein, entirely *intra*state child pornography production is not *inter*state activity under the Commerce Clause and is properly addressed and must therefore be punished by state police power. Wellbeloved-Stone's alleged conduct occurred wholly within the confines of the State of Virginia. The State of Virginia has several provisions within its laws criminalizing sexual abuse of children.[4] The federal government has no jurisdiction to address Wellbeloved-Stone's conduct at this point; it is only if Wellbeloved-Stone chooses to participate in the interstate market for such images that the federal government may punish him.

---

[4] *See e.g.*, Va. Code Ann. § 18.2-63, Carnal Knowledge of a Child, Va. Code Ann. § 18.2-67.4:2, Sexual Abuse of a Child, Va. Code Ann. §§ 18.2-370; 18.2-370.1, Taking Indecent Liberties with a Child

Congressional findings do not establish relevant and substantial effects on interstate commerce. Instead, the findings raise concerns about federal intrusion and suggest that owning a phone affects interstate commerce insofar as all crime hurts the economy. This argument was expressly rejected by the Supreme Court in *Lopez* and *Morrison*. Indeed, the Congressional findings which accompany this statute asserted that creation of intrastate child pornography images affected the child pornography market, not that such actions affected the digital equipment market. Consequently, Congressional findings serve to inflict further damage on the already-suspect regulatory scheme of §§ 2251(a) and 2252(a).

*4. Is the link between the regulation on the activity and its substantial effect on interstate commerce too attenuated?*

The suggestion that merely possessing a phone, because of the possible use of such equipment, has a substantial effect on interstate commerce in child pornography is too attenuated a link. Moreover, *NFIB* insists that simply because of the future potential for camera or film to be used for interstate child pornography, federal regulation cannot preemptively criminalize conduct that is not yet connected to interstate commerce. *See NFIB*, 132 S.Ct. at 2589.

The inquiry now shifts to whether the noncommercial, intrastate possession of a camera and film might substantially affect interstate commerce by mere use. The use of *anything* might have an effect on interstate commerce, and therefore, the risk of an overly expansive interpretation of the Commerce Clause cannot be minimized or ignored. It is for this very reason that the Supreme Court routinely insists the effects on interstate commerce must be both "significant" and "not attenuated." *Morrison*, 529 U.S. at 612-15. The potential link between noncommercial, intrastate possession of camera and film and the interstate market for child pornography is an example of a picayune effect on interstate commerce being swept up by the tsunami of overly expansive federal legislation. The Government cannot prove that Wellbeloved-

Stone's intrastate possession of a phone and photographs have a significant and non-attenuated effect on interstate commerce related to child pornography.

5. *Scarbough v. United States*

*Scarbough v. United States*, 431 U.S. 563 (1977) presumed Congress could constitutionally regulate firearm possession on the basis that the weapons traveled in interstate commerce. Consequently, felon-in-possession statutes have survived due to the understanding implicit in *Scarbough*. Though the logic is suspect, possessing an object that has traveled in interstate commerce can be criminalized by Congress, provided the regulatory framework (for criminalizing possession) is narrowly tailored to regulate the market for that object.

The same analysis does not apply to the conduct alleged in this case, i.e., using camera and film that has traveled in interstate commerce to create (intrastate) child pornography or possess pornography created by such equipment. The statutes at issue, §§ 2251(a) and 2252(a), regulate creation and possession of child pornography as part of the scheme regulating the interstate market for child pornography. However, these statutes go beyond regulating the interstate market for child pornography by attacking the market for digital goods, criminalizing conduct stemming from the possession of digital equipment. The presumption in *Scarbough* that saved and continues to rescue felon-in-possession statutes cannot save §§ 2251(a) and 2252(a) as applied to Wellbeloved-Stone in the indictment – his conduct is not possessing the object for which the market regulation exists (i.e., child pornography or firearms); rather, he is being punished for using something for which a valid and thriving, non-criminal market (a phone) exists to create an object subject to federal regulation (images of child pornography).

It cannot be denied that if Wellbeloved-Stone used a phone as alleged, that some small portion of the phone's components likely travelled in interstate commerce. The statutes at issue,

§§ 2251(a) and 2252(a), contain the catch-all phrase to ensure unlimited federal jurisdiction over child pornography. However, §§ 2251(a) and 2252(a) regulate child pornography and the related market, not digital equipment or the market for said goods.[5]

6. *NFIB*

The application of §§ 2251(a) and 2252(a) to the wholly intrastate conduct Wellbeloved-Stone is alleged to have undertaken must fail for the same reason the Supreme Court summarily dismissed the Government's argument in *NFIB*. In *NFIB*, the Government argued health care financing and insurance "are inherently integrated," therefore regulating one necessarily justifies regulating the other. The Supreme Court was not persuaded even slightly. "No matter how "inherently integrated" health insurance and health care consumption may be, they are not the same thing." *NFIB*, 132 S.Ct at 2591. "They involve different transactions, entered into at different times, with different providers." *Id*. Ultimately, the "proximity and degree of connection between the mandate and the subsequent commercial activity [was] too lacking to justify" regulation under the Commerce Clause. *Id*.

Much like the relationship between health care financing and health care insurance, purchasing a camera and entering the interstate market for child pornography are discrete events, and the use of a camera at some point in the future to create child pornography does not create a new connection to interstate commerce. One could purchase a camera several years prior to even contemplating producing child pornography, evoking the Supreme Court's car buyer in *NFIB*. *See NFIB*, 132 S.Ct. at 2590 (in rejecting the government's arguments trying to make future conduct equal "active in the marketplace," the Supreme Court noted the moment the automobile

---

[5] It is not disputed §§ 2251(a) and 2252(a) attempt to regulate the child pornography market. However, in doing so, the legislation cannot legitimately also regulate the camera and film markets.

is purchased, the connection to interstate commerce exists and the individual is active in the marketplace for vehicles. Two seconds later when the paperwork is all signed and the buyer is leaving the showroom with keys in hand, the connection to interstate commerce is gone. Similarly, two years down the road and 40,000 miles later, the connection to interstate commerce remains a thing of memories, and the individual is not active in the marketplace. The use of the car can be categorized as conduct "divorced from any link to existing commercial activity.").

The same logic necessarily applies to digital equipment and child pornography. Just as in *NFIB*, no matter how integrated phones and child pornography may be, they are not the same thing and cannot be regulated as if one event. The instant of the purchase is the connection to interstate commerce, specifically touching upon the interstate markets for phones or automobiles. Upon completion of the purchase, simply owning the phone does not subject the owner to constant federal regulation, as the owner of the object is not active in any marketplace properly regulated by Congress. The owner must take additional and different affirmative steps to engage in interstate commerce using the items, be it purchasing goods online, uploading images from the phone to a file-sharing program, or something else connected to interstate activity. In light of the lack of relevant connection between the market for phones and the child pornography market, §2251(a) cannot extend to cover conduct that cannot be legitimately described as 'active in the marketplace' for child pornography.

Identified in footnote 1, *supra* p. 2, other circuits have rejected Commerce Clause challenges to criminal statutes since the decision in *NFIB* came down. However, only one of the decisions has addressed the argument applied by the Supreme Court in *NFIB*, namely that Commerce Clause power cannot extend federal jurisdiction to reach inactivity or non-participation in interstate commerce. *See United States v. Humphrey*, 845 F.3d 1320 (10th Cir.

2017); *Cf. Rose*, 714 F.3d at 370-71 (6th Cir. 2013) (claiming § 2251(a) does not force into commercial activity those who have refrained from commercial activity, so *NFIB* does not apply); *Burdulis*, 752 F.3d at 262 (1st Cir. 2014) (citing *NFIB* for the continued proposition that aggregation of activity warrants federal regulation under the Commerce Clause); *Parton*, 749 F.3d 1329 (11th Cir. 2014) (the inactivity of uninsured individuals is totally different from someone producing child pornography); *Sullivan*, 753 F.3d at 854 (§2251 and §2252 do not compel commerce but merely regulate an activity that Congress determined, when aggregated, affects interstate commerce). Arguably, the cases apart from *Humphrey* miss the point of *NFIB*, as none of the defendants actually participated in interstate commerce, let alone relevant interstate markets. Rather, the courts permit federal jurisdiction under the faulty premise that inactivity in interstate commerce, when aggregated, affects interstate commerce. *NFIB* rejects this proposition: Congress cannot regulate inactivity, nor can Congress exert federal jurisdiction over individuals on the basis of "prophesied future activity[.]" *NFIB*, 132 S.Ct. at 2590.

## CONCLUSION

As set forth above, the government does not have jurisdiction over the conduct alleged in Counts One, Two, Three and Four of the Indictment, and therefore they must be dismissed.

Dated this 18th day of December, 2017

Respectfully submitted,

RICHARD ALAN WELLBELOVED-STONE

By Counsel

Counsel:

/s Lisa M. Lorish
Lisa M. Lorish (VSB No. 81465)
Assistant Federal Public Defender
Office of the Federal Public Defender
401 E. Market St, Ste 106

Charlottesville, VA 22902
Tel (434) 220-3380

**CERTIFICATE OF SERVICE**

I hereby certify that on December 18, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: counsel of record; and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants: none.

s/ Lisa M. Lorish
Asst. Federal Public Defender

**IN THE**
**UNITED STATES DISTRICT COURT**
**FOR THE**
**WESTERN DISTRICT OF VIRGINIA**
**CHARLOTTESVILLE DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Case No. 3:17CR00014** |
| | : | |
| **v.** | : | |
| | : | |
| **RICHARD ALAN WELLBELOVED-STONE** | : | |

**UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

COMES NOW the United States of America, by counsel, and responds to the defendant's Motion to Dismiss Counts One, Two, Three and Four of the Indictment, by respectfully requesting the Court to deny the motion in all respects because it is wholly unsupportable as explained below.

The defendant is charged with three counts of production of child pornography, in violation of 18 U.S.C. § 2251(a), and one count of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B).[1] It is undisputed that

[1] A person is guilty of federal production of child pornography if he uses a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct "if that visual depiction was produced … using materials that have been mailed, shipped or transported in or affecting interstate or foreign commerce…" 18 U.S.C. § 2251(a). A person is guilty of federal possession of child pornography if he knowingly possesses a matter which contains a visual depiction, "which was produced using materials which have been mailed or … shipped or transported" [using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce] if the production of which involved a minor engaging in sexually explicit conduct and the visual

the child pornography in all counts was produced using materials from outside of Virginia. That is sufficient to bestow federal jurisdiction, notwithstanding the defendant's (erroneous) claim that the five-year-old case of *National Federation of Independent Business v. Sebelius*, 132 S. Ct. 2256 (2012) (*"NFIB")* somehow changed the legal landscape.

The defendant seems to acknowledge, but disregards, the distinctive nature of the argument the Supreme Court considered in *NFIB*. There, the Supreme Court found that the Commerce Clause could not encompass the inactivity proscribed by the Affordable Care Act, i.e., the inactivity of a person's decision not to purchase health care insurance; this is fundamentally different than the defendant's conscious choice to do something, i.e., to produce and possess child pornography. Moreover, since *NFIB* was decided, the Supreme Court has reaffirmed the holding of *Gonzalez v. Raich*, 545 U.S. 1 (2005), which found that the Commerce Clause authorized Congress to proscribe the purely intrastate production, possession, and sale of marijuana. *See Taylor v. United States*, 136 S.Ct. 2074, 2080 (2016). In *Taylor*, the Supreme Court, relying on *Raich*, affirmed Hobbs Act convictions in this district, finding that because Congress may regulate such intrastate activities based on their aggregate effect on interstate commerce, Congress may also regulate intrastate drug theft under the Hobbs Act. *See id.* "We have held that activities … that

---

depiction if of such conduct. 18 U.S.C. 2252(a)(4)(B).

"substantially affect" commerce – may be regulated so long as they substantially affect interstate commerce in the aggregate, even if their individual impact on interstate commerce is minimal." *Id.* at 2079 (citing *Wickard v. Filburn,* 317 U.S. 111, 135 (1942)). In affirming the convictions, the Supreme Court stated that "as a matter of law, the market for illegal drugs is commerce over which the United States has jurisdiction," and that it was irrelevant that actual or threatened effect on commerce in a specific case was minimal. *Id.* at 2081 (citation and internal quotation omitted).

The defendant rightfully notes that *United States v. Humphrey,* 845 F.3d 1320 (10th Cir.), *cert. denied*, 137 S. Ct. 2145 (2017) rejects the defendant's *NFIB* argument. The Tenth Circuit stated in that opinion that it had rejected a pre-*NFIB* challenge to intrastate production of child pornography, just like the Fourth Circuit had done in *United States v. Forrest*, 429 F.3d 73, 78 (4th Cir. 2005), noting that *Gonzales v. Raich*, 545 U.S. 1 (2005) required that result. *See Humphrey* at 1322 (citing *United States v. Jeronimo-Bautista,* 425 F.3d 1266, 1322 (10th Cir. 2005)). In rejecting a similar challenge post-*NFIB*, the Tenth Circuit distinguished *NFIB* by noting that in that "fractured opinion," five justices agreed that "[t]he Commerce Clause broadly authorizes Congress to regulate commercial activity, but not to compel individuals to engage in commercial activity." *Humphrey* at 1322-23 (citing *NFIB* at 2587). The *Humphrey* court further highlighted the fact that these justices

"recognized the breadth of Congress' power to regulate commercial activity," noting that "Humphrey didn't fail to produce child pornography; he actively engaged in producing it," *id.* at 1323, just like the defendant did here. In that case, the Tenth Circuit emphasized that "to the extent that *NFIB* says anything binding about the reach of Congress' Commerce Clause authority, it doesn't say anything to suggest that reach no longer extends as far as *Raich* and *Wickard* [*v. Filburn,* 317 U.S. 111 (1942)] held.' *Humphrey* at 1324. Finally, the Tenth Circuit further noted that *Taylor*, *supra*, erased any doubt that *Raich* remained good law and cited numerous cases that had "concluded that *NFIB* didn't alter Congress' authority to regulate the intrastate production of child pornography." *Id.* (citing cases).

Other cases besides *Humphrey* (including some mentioned by the defendant) have, since *NFIB,* unequivocally held that intrastate possession or production of child pornography does not violate the Commerce Clause when the only jurisdictional nexus is the item on which the material is stored or produced. *See, e.g., United States v. Joubert*, 778 F.3d 247 (1st Cir.), *cert. denied*, 135 S. Ct. 2874 (2015) (VHS tape made out of state was sufficient connection to interstate commerce) (reaffirming *United States v. Burdulis*, 753 F.3d 255, 262 (1st Cir.), *cert. denied*, 135 S. Ct. 467 (2014), a case cited by the defendant); *United States v. Sullivan*, 797 F.3d 623, 631-32 (9th Cir. 2015) (*NFIB* does not change prior precedent because 18 U.S.C. § § 2251 and 2252 "do not compel commerce, but

merely regulate an activity that Congress could rationally determine would affect interstate commerce, taken in the aggregate.") (citations omitted); *United States v. Parton*, 749 F.3d 1329, 1331 (11th Cir. 2014) (distinguishing compulsion of the existence of commerce found in *NFIB* and stating "the Supreme Court in [*NFIB*] said nothing to abrogate its holding in *Raich* to the effect that Congress has the power, as part of a comprehensive regulation of economic activity, to regulate purely local activities that are part of an economic 'class of activities' that have a substantial effect on interstate commerce"); *United States v. Rose*, 714 F.3d 362, 370-71 (6th Cir. 2013) (same); *United States v. Foley*, 750 F.3d 1079, 1085 (7th Cir. 2014) (government must prove commerce element, here that the visual depiction was produced using materials transported in interstate or foreign commerce); *see also Cottle v. United States*, 2015 WL 1736506 (D.Md. 2015) (unpublished) (purely intrastate possession and production of child pornography allowed by Commerce Clause).

The District of Maryland reaffirmed in *Cottle* the continuing validity of two pre-*NFIB* Fourth Circuit cases upholding prosecutions for intrastate production and possession of child pornography, i.e., *United States v. Forrest*, 429 F.3d 73 (4th Cir. 2005) and *United States v. Malloy*, 568 F.3d 166 (4th Cir. 2009). *See Cottle* at *3-5. In *Forrest*, the Fourth Circuit rejected a claim that the private production and possession of child pornography do not substantially affect interstate commerce. In

so doing, the court found that the case was "strikingly similar to *Raich*" which had rejected a "similar as-applied Commerce Clause challenge to the Controlled Substances Act … by intrastate growers and users of medical marijuana." *Forrest*, 429 F.3d at 78. The Fourth Circuit noted that both cases involved economic activity in a fungible commodity and that "Congress had a rational basis [in both cases] for concluding that prohibition of mere local possession of the commodity was essential to the regulation of an established, albeit illegal, interstate market." *Id.* (citing *Raich*, 125 S.Ct. at 2206) (internal quotations omitted). The *Forest* court further noted the "especially salient [concern] in the context of child pornography, because much of the material traded on that interstate market is homemade." *Id.* (citing *United States v. Buculei*, 262 F.3d 322m 329 (4th Cir. 2001), *cert. denied*, 535 U.S. 963 (2002)). Thereafter the court noted the findings in the 1996 child pornography laws justifying the prohibition on possession and viewing of child pornography to protect victims and eliminate the market for sexually exploiting children. *See Forrest* at 78-79. The court concluded that "the *de minimis* character of individual offenses" was irrelevant because Congress had a rational basis to conclude that intrastate offenses substantially affected interstate commerce. *Id.* at 79. The Fourth Circuit reaffirmed this holding in *Malloy* and noted that other circuits had followed suit. *See Malloy*, 568 F.3d at 179-80 (affirming conviction for "unquestionably 'local' production of child pornography with a video camera and videotape that had traveled in foreign

commerce”).

Notably, the defendant admits, as he must, that “[t]he Fourth Circuit has consistently rejected prior Constitutional challenges to the federal anti-child pornography regulatory scheme.” *See* Defendant’s Motion to Dismiss at 2. He also acknowledges that other circuits, including the First, Second, Fifth, Sixth, Ninth, Tenth, and Eleventh Circuit, have upheld these statutes since *NFIB* was decided – and have rejected the argument that the defendant forwards in his motion. *See id.* at n.1.[2] He cites *no* cases that support his position. Indeed, there appears to be no relevant case law to suggest that “*NFIB* represents a fundamental change in Commerce Clause analysis,” as alleged. *See id.* at 4. The offenses with which the defendant is charged involve the requisite activity justifying the use of the Commerce Clause and do not, as suggested by the defendant “contain[ ] only the pretextual incantations invoking the illusion of commerce.” *See id.* at 8.

[2] While he notes in that footnote that the Fourth Circuit has upheld the constitutionality of 18 U.S.C. § 2423(c) since *NFIB* was issued, he did not set forth the citation for that case – *United States v. Bollinger*, 798 F.3d 201 (4th Cir. 2015). In *Bollinger*, the Fourth Circuit noted that “every statute is presumed to be constitutional.” *Id.* at 207 (citation and internal quotations omitted). That case was however decided on the basis of the scope of the Foreign Commerce Clause, which “implicates concerns that are different from those present in interstate…regulation.” *See id.* at 218-19. Additionally, while the defendant claims that only the *Humphrey* case addressed the identical argument that he raises now, the rejected claims in the other cases are rather similar, and the distinction appears to be one without a true difference.

Interestingly, in making this last argument, he relies on the "recent[ ]" 2006 case, *United States v. Maxwell*, 446 F.3d 1210 (11th Cir. 2006). *See* Defendant's Motion at 8. This case, dubbed *Maxwell II* because it reversed a prior ruling[3] in light of *Raich* and held that intrastate possession of child pornography did not violate the Commerce Clause, cuts against the defendant's arguments here. Notably, the Eleventh Circuit in the later 2014 *Parton* case rejected a claim that *NFIB* had "effectively overruled" *Maxwell II*. *See Parton*, 749 F.3d at 1331.

It is clear that *Raich* and *Wickard* plainly survived *NFIB*. Thus, the standard is whether Congress had a rational basis to conclude that failing to regulate the non-commercial class of activity would undercut the regulation of the interstate market in that commodity. *Raich*, 545 U.S. at 18 (citing *Wickard*, 317 U.S. at 118). The Supreme Court has said nothing to alter the conclusion that federal laws prohibiting intrastate production and possession of child pornography (produced using materials that traveled in interstate commerce) constitute a valid exercise of the Commerce Clause irrespective of whether the child pornography was made or possessed for commercial purposes. Interestingly, the defendant quotes some of the relevant findings set forth in the Adam Walsh Act, highlighting, in part, the fact that intrastate production and possession have a substantial and direct effect upon interstate

[3] *See id.* at 1211 (noting the reversal of *United States v. Maxwell* ("*Maxwell I*), 386 F.3d 1042 (11th Cir. 2004)).

commerce because such offenders are unlikely to be content with the child pornography they produce and possess and are likely to enter the interstate market to search for more. *See* Defendant's Motion to Dismiss at 9-10. That is precisely what happened here in that, as set forth above, in that the defendant in this case communicated with an undercover officer about looking at material online and solicited him to share images.

In light of all of the above, the defendant's claims are clearly baseless and the United States respectfully requests this Court to deny the defendant's motion in all respects.

Respectfully submitted,

RICK A. MOUNTCASTLE
United States Attorney

s/ Nancy S. Healey
Nancy S. Healey
Assistant United States Attorney
VSB No. 39447
Nancy.Healey@usdoj.gov

/s/ Leslie Williams Fisher
Leslie Williams Fisher, Trial Attorney
U.S. Dept. of Justice, Criminal Division
Child Exploitation and Obscenity Section
1400 New York Avenue, NW
Washington, DC 20530
Phone: (202) 616-2557
Fax: (202) 514-1793
Email: Leslie.Fisher2@usdoj.gov
Virginia Bar No. 77470

## CERTIFICATE OF SERVICE

I hereby certify that on January 10, 2018, I electronically filed the foregoing response with the Clerk of the Court using the CM/ECF System, which will send notification of this Notice to Lisa Lorish, Assistant Federal Public Defender, Counsel for the Defendnat.

s/ Nancy S. Healey
Assistant United States Attorney

**IN THE**
**UNITED STATES DISTRICT COURT**
**FOR THE**
**WESTERN DISTRICT OF VIRGINIA**
**CHARLOTTESVILLE DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Case No. 3:17CR00014** |
| | : | |
| **v.** | : | |
| | : | |
| **RICHARD ALAN WELLBELOVED-STONE** | : | |

UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS AND INCORPORATED MEMORANDUM IN SUPPORT

COMES NOW the United States of America, by counsel, and responds to the defendant's Motion to Suppress and Incorporated Memorandum in Support regarding evidence obtained in response to the issuance of a summonses under 19 U.S.C. § 1509, by respectfully requesting the Court to deny the motion in all respects.

## INTRODUCTION

Defendant has moved this Court to suppress "all evidence obtained, directly or derivatively, from the execution of the 19 U.S.C. § 1509 summonses on Kik … and Comcast" in July 2017 by Homeland Security Investigations (HSI), part of the Department of Homeland Security (DHS), an agency which was formerly with the U.S. Customs Services. He argues that HSI did not have the authority under 1509 to summons the limited non-content internet information sought in the summonses.

HSI was involved in investigating and presenting for prosecution the charges against the defendant, all of which involve child sexual exploitation.

Defendant does not allege that HSI did not have authority to investigate these crimes. Rather he claims that the summonses were improper. The defendant relies in large part on a November 2017 memorandum, issued by DHS Office of Inspector General (OIG), which he attached to his motion, and suggests further that agents were on notice prior to July 2017 that using a 1509 summons was improper. The defendant is wrong for many reasons. In large part, he relies on so-called guidance that he suggests demonstrates that the summonses were improper. As will be set forth later below, the defendant's characterization of the guidance as somehow pertinent and controlling is not only plainly wrong, it is also misleading. Moreover, the defendant has no reasonable expectation of privacy in the ISP and Internet records utilized in the search warrant for the house and thus he has no standing to raise any Fourth Amendment challenge on this basis.

## ARGUMENT

Section 1509(a)(1) states in relevant part:

> In any investigation or inquiry conducted for the purpose of ascertaining the correctness of any entry, for determining the liability of any person for duty, fees and taxes due or duties, fees and taxes which may be due the United States, for determining liability for fines and penalties, ***or for insuring compliance with the laws of the United States administered by the United States Customs Service*** … the Secretary may **(**1) examine, or cause to be examined, upon reasonable notice, any record … described in the notice with reasonable

> specificity, which may be relevant to the investigation…[emphasis added]

DHS HSI (formerly U.S. Customs Service) has the authority to investigate criminal offenses, including child pornography offenses. Accordingly, Section 1509 authorizes HSI to issue these subpoenas.

In the search warrant for the defendant's home (the subject of a second motion to suppress by the defendant), Detective Nicholas Rudman, the affiant, clearly stated that the subscriber/account holder information for both Kik and Comcast came from the issuance of 1509 summonses. (*See* search warrant attached to defendant's motion to suppress the search warrant, p. 9-11). The only information set forth in the search warrant derived from the summonses was information intended to identify the user of the Kik username "bijsincville" and the IP address associated with the relevant communications between the defendant and a United Kingdom undercover officer. Those communications are discussed in more detail in the defendant's other motion to suppress and the United States' response to that motion.

*A. The Defendant Has No Reasonable Expectation of Privacy in Subscriber Information Held by Third Parties and Cannot Challenge the Validity of the Administrative Summonses Issued to Those Third Parties.*

Defendant seeks to suppress all information obtained "directly or derivatively" from the "execution" of the summonses. Defendant's Motion to Suppress 1509 Evidence at 1. In support, he claims that the issuance of these summonses was "in clear excess of the authority provided under 19 U.S.C. § 1509

which limits such summonses to matters concerning customs enforcement." Not only was HSI acting within their authority when they issued these summonses, the defendant also lacks a reasonable expectation of privacy in the subscriber information held by the third parties who received the summonses.

Courts have repeatedly held that a person has no reasonable expectation of privacy in subscriber information. *See, e.g., United States v. Bynum*, 604 F.3d 161, (4th Cir.) ("Bynum can point to no evidence that he had a subjective expectation of privacy in his internet and phone 'subscriber information" – i.e., his name, email address, telephone number, and physical address – which the government obtained through the administrative subpoenas. Bynum voluntarily conveyed all this information to his internet a phone companies…because the FBI's administrative subpoenas did not invade any legitimate privacy interest…their issuance did not violate the Fourth Amendment"), *cert. denied*, 560 U.S. 977 (2010); *United States v. Perrine*, 518 F.3d 1196, 1204 (10th Cir. 2008) ("Every federal court to address this issue has held that subscriber information provided to an internet provider is not protected by the Fourth Amendment's privacy expectation"). The defendant had no reasonable expectation of privacy in his IP address. *See, e.g., United States v. Matish*, 193 F.Supp.3d 585, 615 (E.D. Va. 2016) (defendant had no reasonable expectation of privacy in his computer's IP address, therefore the government's acquisition of the IP address did not violate the Fourth Amendment); *see also United*

*States v. Ulbricht*, 858 F.3d 71, 97 (2d Cir. 2017) (government did not need a warrant to collect IP address routing information in which the defendant did not have a legitimate privacy interest).

*B. The 1509 Summonses were Lawfully Issued.*

Even if the defendant had standing – and he does not – each summons was lawfully issued. Under 18 U.S.C. § 2703(c)(2), an electronic communication service or remote computing service provider is required to disclose to a government entity basic subscriber information including the subscriber's name, address, connection records, session records, length and types of service, utilized, and network address when the government entity uses an administrative subpoena authorized by a Federal or State statute…" An HSI administrative summons under 1509 is the functional equivalent of an administrative subpoena. Under 19 U.S.C. § 1509(a), a customs summons may be used "in any investigation or inquiry" conducted for the purpose of "insuring compliance with the laws of the United States administered by the United States Customs Service," which now means laws administered by HSI. HSI agents (some of whom were formerly referred to as Immigration and Customs Enforcement Agents or ICE agents) "are experts in investigating child exploitation offenses." *United States v. Fletcher*, 763 F.3d 711 (7th Cir. 2014). "Indeed, ICE has been traditionally responsible for investigating wrongdoing on a national and even global stage, and has had substantial duties in investigating and serving search

warrants upon alleged purveyors of child pornography. *United States v. Cray*, 673 F.Supp.2d 1368, 1377 (S.D. Ga. 2009) (citations omitted).

As the affidavit for the house search warrant made clear and as the excerpted communications in the present motion make clear, the defendant solicited images and links presumably to receive child pornography from the undercover officer. In the course of discussing the undercover's abuse of his very young "daughters" via email, the defendant said "..."if you ever would like to share pics, that would be amazing." The defendant later asks the undercover "And do you by chance have any links to pics?". On Kik, the defendant says to the undercover "Img for pics" and "Sometimes people share a Dropbox link." Other communications by the defendant imply that he has seen depictions of minors online and that he is sexually aroused by young girls, suggesting that the defendant was soliciting child pornography from the United Kingdom officer. Child pornography offenses are, of course, among the many offenses HSI agents are tasked to investigate.

C. *Even if the Summonses were Improper, Suppression is not an Available Remedy.*

However, even assuming *arguendo* that the summonses were somehow improper, suppression is not an available remedy. Since customers do not have a cognizable privacy interest in basic subscriber information, there was not a constitutional violation so exclusion under the Fourth Amendment is unavailable. *See United States v. Clenney*, 631 F.3d 658, 666 (4th Cir. 2011) (phone customers

do not have a constitutionally cognizable privacy interest in basic subscriber information); thus, there is no exclusionary rule remedy. *Id.* At most, it would be a statutory violation, not a constitutional one, and the exclusionary rule is generally inapplicable to statutory violations. *See id.* Indeed, while the Electronic Communications Privacy Act provides for a civil action against violators other than the United States, and for administrative discipline of offending federal officials, there is "no mention of a suppression remedy for such a violation," and 18 U.S.C. § 2708 "makes it clear" that the remedies and sanctions described in the Act "are the only judicial remedies and sanctions for nonconstitutional violations of this chapter." *Id.* (internal quotations omitted); *accord*, *United States v. Sherr*, 400 F.Supp.2d 843, 848 (D. Md. 2005); *United States v. Kennedy*, 81 F.Supp.2d 1103, 1110 (D. Kan. 2000). Nor has the defendant pointed to a statutory suppression remedy for violations of 1509. "Importantly, a right bestowed by Congress does not create a constitutional right, and does not trigger the exclusionary rule." *Cray*, 673 F.Supp.2d at 1376. The *Cray* court specifically rejected an argument that Customs summonses in that case were improper because they were supposed to be used for administrative purposes related to trade and were not in that case. Section 1509 summonses "may be used in an investigation or inquiry conducted for the purpose of insuring compliance with the laws of the United States. *Id.* at 1376. *Cray* was also a child pornography case. *See also United States v. Merrell*, 88 F.Supp.3d 1017

(D. Minn. 2015) (rejecting a challenge to a 1509 summons issued for employment records in a child pornography case).

Notably, the defendant has cited no cases relevant to his argument that would remotely suggest that his motion is reasonable. Indeed, the "precedent for using the exclusionary rule" that he discusses in his motion relate to Title 26 and tax records and investigations. And his allegation that "DHS has admitted wide-reaching abuse of the § 1509 summons," is simply untrue. Defendant's Motion at 17.

*D. The Investigators Acted Appropriately and Diligently Especially Because of the Urgent Nature of the Situation They Were Investigating.*

There is no question that the summonses issued in this case did not seek content but rather information to identify a person who was, in addition to requesting child pornography from and undercover officer, communicating about his prior and anticipated future molestation of a very young girl. To not act in such a situation would have gone against a primary function of law enforcement. The actions taken by the investigators in this case were not only reasonable and proper but also consistent with diligent law enforcement.

The defendant's citation to the recently argued *Carpenter v. United States*, 16-402, is similarly unavailing. First, there has been no decision rendered and thus the prevailing case law and standards apply, so there was no violation. Secondly, cell site location information—the subject of the *Carpenter* case--is not the same as subscriber information, which was obtained here.

A well-recognized exception to the search warrant requirement is when exigent circumstances of an investigation make the needs of law enforcement so compelling that a warrantless search is reasonable under the Fourth Amendment. *Kentucky v. King*, 563 U.S. 452, 460 (2011). Here, HSI agents knew from the content of the defendant's communications with the undercover officer that he had sexually abused a young minor victim. In an email from the defendant to the undercover officer, the defendant described "brush[ing] up against her panty covered mound" and "cupping her pussy with hand." He went on to say he would have "taken it further," but couldn't because he was at someone else's home. The defendant then told the undercover that the victim "is supposed to do a sleepover this month."

Based on these communications, it was reasonable for HSI to believe that the defendant had been abusing a minor victim, and that he was planning to further abuse her when given future opportunity. The ongoing and imminent future abuse of the minor victim created exigent circumstances such that the issuance of the § 1509 summonses was reasonable and necessary.

Furthermore, even if this Court finds that HSI exceeded their summons authority, the agents issued the summonses in good faith, and the evidence should not be suppressed. The Supreme Court has said that "evidence obtained from a search should be suppressed only if it can be said that the law

enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment." *United States v. Peltier*, 422 U.S. 531, 542 (1975).

HSI had a reasonable, good faith belief that they had the authority to issue the summonses pursuant to 1509. HSI was provided with documentation of online communication between an undercover officer from the United Kingdom and an individual who called himself "Jack Smith," later alleged to be the defendant. The defendant told the undercover officer in an email that he was from the "US", indicating that he was in and from the United States, and thus subject to United States law. In the context of the defendant's many explicit messages to the undercover, via email and Kik messenger, the defendant chronicled his sexual interest in children, his abuse of a young female victim to whom he had access, and sought advice about the sexual abuse of children from the undercover. In the course of discussing the undercover's abuse of his very young "daughters" via email, the defendant said "..."if you ever would like to share pics, that would be amazing." The defendant later asks the undercover "And do you by chance have any links to pics?". On Kik, the defendant says to the undercover "Img for pics" and "Sometimes people share a Dropbox link." All of these requests for pictures, in the context of the explicit conversations the defendant is engaging in about

his sexual attraction to and abuse of minors, supports the reasonable belief that the defendant was soliciting child pornography images, in violation of United States federal law. As discussed previously, HSI has jurisdiction to investigate federal crimes of child exploitation. Therefore, HSI acted in good faith when obtaining the summonses to obtain the defendant's IP address.

*E. This Court Should Avoid the Rabbit Hole the Defendant Seeks to Have This Court Go Down.*

In his arguments, the defendant claims that a memorandum issued in November 2017 is somehow dispositive on the impropriety of using 1509 summonses in cases other than traditional customs investigations. He argues that references to certain guidance allegedly provided to agents in the field earlier in 2017 put the agents on notice that they could not use 1509 summonses in such cases as the present case. The defendant however mischaracterizes the nature and intent of the memorandum that he attached to his motion. In other words, this argument is wholly irrelevant.

The memoranda (or "Management Bulletin") referenced by the defendant was specifically issued to Customs and Border Protection (CBP) – *a wholly distinct unit of DHS.*[1] Indeed, the memorandum is explicitly addressed to the then Acting

[1] Upon information and belief, when asset forfeiture is an issue, CBP may become involved in other investigations.

Commissioner of U.S. Customs and Border Protection and in the first line states that it is about *CBP's Use of Examination and Summons Authority Under 19 U.S.C. § 1509*. And, as acknowledged by the defendant, the memo was targeted to CBP's Office of Professional Responsibility (OPR). CBP investigates different statutes than HSI. Indeed, "CBP" is peppered throughout the memorandum and there is no reference to HSI. The agents investigating the present case are neither OPR agents nor CBP agents. Further, the memorandum discusses investigations wholly distinct from the type of investigation in the present case. There is no mention of HSI or of child exploitation offenses. Moreover, in quoting from the memorandum on page 11 of his motion, he quotes the memorandum as stating "DHS 'may have exceeded the scope of its authority under Section 1509 when it issued the summons to Twitter.'" *See* Defendant's Motion at 11. The memorandum does not however state that DHS, the umbrella Department for both CBP and HSI, may have exceeded its authority but explicitly states that it was "CBP" that may have done this.

Moreover, as set forth by the defendant, the Twitter reference above that apparently in part led to the memorandum relates to a complaint filed by Twitter. The defendant neglects to state, however, that the behavior about which the complaint was raised dealt with an alleged First Amendment free speech violation and was filed to prevent CBP from trying to unmask the identity of a Twitter user who was apparently a government employee critical of President Trump. This is

wholly distinguishable from the lawful use of the 1509 summonses in the present case.

## CONCLUSION

In light of all of the above, the United States respectfully requests this Court to deny the defendant's motion in all respects.

Respectfully submitted,

RICK A. MOUNTCASTLE
United States Attorney

s/ Nancy S. Healey
Nancy S. Healey
Assistant United States Attorney
VSB No. 39447

/s/ Leslie Williams Fisher
Leslie Williams Fisher, Trial Attorney
U.S. Dept. of Justice, Criminal Division
Child Exploitation and Obscenity Section
1400 New York Avenue, NW
Washington, DC 20530
Phone: (202) 616-2557
Fax: (202) 514-1793
Email: Leslie.Fisher2@usdoj.gov
Virginia Bar No. 77470

**CERTIFICATE**

I hereby certify that on January 12, 2018, I electronically filed the forgoing with the Clerk of the Court using CM/ECF system which will send notification of such filing to Lisa Lorish, Assistant Federal Public Defender, Counsel for the defendant.

s/ Nancy S. Healey
Nancy S. Healey
Assistant United States Attorney

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.: 3:17-cr-14 |
| | ) | |
| RICHARD ALAN WELLBELOVED-STONE | ) | |
| | ) | |
| Defendant. | ) | |

# REPLY IN SUPPORT OF MOTION TO SUPPRESS

The Government's incredible position is that 19 U.S.C. § 1509 authorizes Homeland Security Investigations ("HSI") the investigation arm of Immigration and Customs Enforcement ("ICE") a part of the Department of Homeland Security ("DHS") to issue a summons on any company, or individual, for any information relevant to any criminal activity without any reasonable suspicion, probable cause, or judicial inquiry of any kind. This is despite the fact that the Office of Inspector General for all of DHS has expressly, publicly, and very recently interpreted the summons authority of this statue as limited to matters involving "importation of merchandise or the assessment and collection of customs duties." *See* Ex. A to Mtn. to Suppress. The Government avoids any attempt to defend the fact that its novel interpretation of § 1509 would make redundant numerous other statutes that authorize administrative summonses and subpoenas for discrete inquiries to say nothing of the entire criminal subpoena power of the United States District Courts.

Of course the Government buries this interpretation of a customs statute in its opposition to the Defendant's motion to suppress, starting instead with a "no harm no foul" argument - that is, it does not matter whether the summonses issued in this case were proper or not because this

particular Defendant allegedly has no remedy. But the appropriate place to start is determining whether the Government abused § 1509, stretching it beyond any conceivable understanding of the plain statutory language. The answer to that question is yes.

The second inquiry is whether anything short of the exclusionary rule can effectively deter this practice in the future. The Third Circuit has suggested this would be an entirely appropriate remedy for the abuse of a different federal summons provision if proven that it was similarly broadened and misused for criminal investigation purposes. The mere fact that the Government continues to defend this use of § 1509 summonses is evidence that only application of the exclusionary rule will deter future misuse of this provision.

I. <u>The Summons Authority in § 1509 is Limited In Scope, to Proper Recipients, and Only for Customs Administrative Investigations</u>

As set forth at length in the Defendant's motion to suppress, § 1509 customs summons exist to administratively enforce the import-export laws and various trade agreement. *See* Mot. to Supp. at 8-14. Title 19 U.S.C. § 1509 authorizes Customs Special Agents in Charge to issue summons to inspect records for duties, fees, and other related matters. This code provision is contained within Part III (Ascertainment, Collection, and Recovery of Duties) of Subtitle III (Administrative Provisions) of Chapter Four (Tariff Act of 1930) of Title 19, United States Code.

On the face of the statute, customs summonses serve only administrative purposes related to enforcement of trade laws and not criminal investigations. The Government audaciously bolded the following excerpt from § 1509(a)(1), describing the authority of any investigation under this section, to include "**or for insuring compliance with the laws of the United States administered by the United States Customs Service.**" The Government then, ignoring the context of that bolded portion of the statute, asserts that "DHS HSI (formerly U.S. Customs Service) has the authority to investigate criminal offenses, including child pornography offenses.

Accordingly, Section 1509 authorizes HSI to issue these subpoenas." Gov't Resp. at 3. No citations were provided for these claims because no authority exists to support the inference that *authority* to investigate is the same thing as laws actually *administered* by the United States Customs Service. Furthermore, it is incorrect to assert that DHS HSI was formerly U.S. Customs Service.

First, "administer" is not synonymous with "enforce." In *Blacks' Law Dictionary*, 5th Ed., "administer" is defined as "to manage or conduct. To discharge the duties of an office; to take charge of business; to manage affairs." Whereas "enforce" is defined as "to put into execution; to cause to take effect; to make effective; as to enforce a particular law." When Congress granted the power of an administrative summons to Customs, it was to manage or conduct the regulatory function of collecting "duty, fees and taxes" or ensuring compliance with laws *managed* by the Customs service, *i.e.*, customs laws, and not to *enforce* the criminal laws. HSI explains on its website that it has "broad legal authority to enforce a diverse array of federal statutes" and then lists:

- Financial crimes, money laundering and bulk cash smuggling;
- Commercial fraud and intellectual property theft
- Cybercrimes
- Human rights violations
- Human smuggling and trafficking
- Immigration, documents and benefit fraud
- Narcotics and weapons smuggling/trafficking
- Transnational gang activity
- Export enforcement; and
- International art and antiquity theft.[1]

Adopting the Government's assumption that "administered by the United States Customs Service" is akin to *enforced* by HSI means that by this list alone, HSI would be authorized to use

[1] https://www.ice.gov/hsi (last accessed January 22, 2018).

1509 customs summons to require production of documents from any company or person related to financial crimes, any frauds, crimes committed using a computer, all drug offenses, all gun offenses, and all immigration offenses. It is difficult to conceive of a federal crime that would not be covered and therefore within the purview of a 1509 summons under the Government's interpretation. Or in this case – a local crime of sexual abuse. Therefore, every other code section that authorizes an administrative summons or administrative subpoenas, as well as the entire subpoena power of the United States Courts, would be rendered unnecessary.

Second, after the Patriot Act was passed in 2001, it is true that DHS was created, and the duties of the former United States Customs Service were divided into the Customs and Border Protection ("CBP") agency and ICE, which now both fall under the DHS.[2] It is also true as the Government argues that the Management Alert attached as Exhibit A to the Defendant's Motion to Suppress examined CBP's use of summons authority under § 1509. However, the Management Alert was written by the Office of Inspector General for the entire DHS which covers both CBP and ICE. And the Government apparently does not contest that the language of the authorizing statute - § 1509 – is the same, regardless of what agency issues the summons pursuant to the statute.

Instead, the Government appears to believe that the limit of § 1509 is determined by the agency in which any function of the former Customs service is *now* housed, instead of from the language of the statute itself. Under this reasoning, if the Government reorganized tomorrow and ICE was combined with the Department of Agriculture into one new agency, the new Immigration, Customs and Agricultural Enforcement Agency could use § 1509 summons to

---

[2] A current organizational chart of DHS can be found at https://www.dhs.gov/sites/default/files/publications/17_1219_DHS_Organizational_Chart.pdf (last accessed January 23, 2018).

compel companies or individuals to produce documents without a warrant about any agricultural violations using a customs summons.

Congress never authorized such an expansive reading of § 1509. Nor have the relevant agencies themselves. The Code of Federal Regulations contains the codification of permanent rules and regulations published by federal agencies and departments. The section that discusses the scope and authority of using § 1509 summons is under Title 19 of the Code of Federal Regulations, *for Customs Duties*. In particular Part 163 of Title 19 concerns recordkeeping and explains that it "sets forth the recordkeeping requirements and procedures governing the maintenance, production, inspection, and examination of records" as well as "the procedures governing the examination of persons in connection with any investigation, audit or other inquiry conducted for the purposes of ascertaining the correctness of any entry, for determining the liability of any person for duties, fees and taxes due or that may be due, for determining liability for fines, penalties and forfeitures, or for ensuring compliance with the laws and regulations administered or enforced by Customs." The appendix to Part 163 is a regularly updated list of the records and information required for the entry of merchandise that must be maintained by importers, as referenced in 19 U.S.C. § 1509(a)(1)(A), that importers are required to keep.

Of particular relevance, 19 C.F.R. §101.1 provides the relevant definition for "Customs or U.S. Customs Service" as used in the § 1509 summons as "U.S. Customs and Border Protection." Not ICE, or HSI. The portion of the Code of Federal Regulations that pertains to ICE, under Title 8 of the CFR,[3] does not discuss or mention any summons authority under § 1509. Therefore, there does not appear to be any statutory basis to permit ICE to issue a § 1509

[3] *See* 8 C.F.R. §1.1-§1337.10

summons in the first place, despite the Government's argument that since HSI issues these summons, therefore they must be allowed to do so.

II. This Court Must Apply the Exclusionary Rule to Deter Future Government Misuse of 1509 Summonses

The exclusionary rule was created for cases precisely such as this one where the Government engaged in deliberate overreach and will not be otherwise deterred. The Office of Inspector General's Management Bulletin details systematic abuse of the 1509 summons by Customs and Border Patrol. *See* Ex. A to the Defendant's Mot. to Supp. The Government's only response is that the rules are different for the ICE and HSI, without any explanation as to why. To the extent ICE is even permitted to use 1509 summons, they are subject to the same statutory limitations to which CBP is subject. The fact that the Government persists in defending the overuse of these administrative summons is reason enough to apply the exclusionary rule.

The Third Circuit determined the same in *United States v. Genser*, 582 F.2d 292 (3rd Cir. 1978) where the Government abused a similar administrative summons procedure. The Government dismisses the relevance of *Genser* because the administrative summons in question was under 26 U.S.C. § 7602, which permitted the Internal Revenue Service to use summons for civil inquiries and collection of tax liabilities. Title 26, which contains this provision, is of course the Internal Revenue Code. Yet, this tax summons is precisely akin to the customs summons under Title 19, the Customs Duties Code. In both circumstances, Congress gave a limited power for civil enforcement – not criminal investigation. And in both cases, the only remedy for abuse is the exclusionary rule. Absent the exclusionary rule, one can only hope that the Government will decide on its own that it should stop misusing a provision that gives it unfettered access to documents and information without any judicial check.

The Ninth Circuit has also suppressed evidence that was the result of an unauthorized warrantless border search on the grounds that the search was not authorized by the statute. *See United States v. Whiting*, 781 F.2d 692 (9th Cir. 1986). At the time of that decision the relevant statutory provision was found in 15 C.F.R. § 386.8(b)(6) which authorized Customs to execute border searches. The Ninth Circuit suppressed the results of the warrantless search that was carried out by officers from the Office of Export Enforcement because under the statutory language, only Customs had the authority to do a search. *Id.* The Ninth Circuit also concluded that the good faith exception did not apply for a warrantless search. *Id.* This same issue is addressed in more detail below.

III. The Good Faith Exception Does Not Apply

The good faith exception does not apply to save this search because there is no plausible reading of 19 U.S.C. § 1509 that would permit a HSI Investigator to believe that it authorizes sending a summons to an internet service provider to request information that the Stored Communications Act protects and provides a different mechanism for receiving.

Special Agent Internal Operating Procedures that were the policy governing CBP's use of these summons at the time this summons was issued also makes that abundantly clear. *See* Mot. To Suppress Ex. A at 4 (summons are for "the examination of records to ensure compliance with customs laws" and "cannot be used in drug-smuggling or export investigations" and can only be used to obtain information "related to Title 8 and Title 19 violations"). The Government's response suggests that an entirely different set of rules apply to ICE and therefore HSI. However, the customs summons form used by both CBP and ICE is identical, Department of Homeland Security form # 3115. That form refers to both agencies interchangeably on five different occasions. *See, e.g.*, Mot. to Supp. Ex. C ("APPEAR before the U.S. Customs and

Border Protection (CBP) Officer or U.S. Immigration and Customs Enforcement (ICE) Special Agent named in Block 2;" "Name of person authorized to serve this summons on any other CBP Officer or ICE Special Agent;" "contact the CBP Officer or ICE Special Agent identified;" "CBP Officer or ICE Special Agent before whom you are required to appear;" "laws or regulations administered by CBP and ICE"). The inference should be that since the same statute, same form, and same DHS are involved, the internal policies and procedures are also the same unless the Government can prove otherwise. Without such evidence, it is apparent the summons was issued in contravention of the statutory language and internal policies and therefore the good faith exception does not apply.

For these reasons, the good faith exception cannot save this search.

IV. Wellbeloved-Stone Had a Reasonable Expectation That Government Would Follow the Rules of the Stored Communications Act Giving Him Limited Privacy in His Online Actions Disclosed to Third Parties

While the Government is correct that no decision has yet been rendered in the *Carpenter* case (discussed at Mot. to Supp. at 17-20), numerous other cases have already signaled the need to revisit the notion that a Defendant has no privacy in his online actions that are revealed to third parties. *See, e.g., United States v. Jones*, 123 S. Ct. 945, 957 (2012) (Sotomayor, J., concurring) ("it may be necessary to reconsider the premise that an individual has no reasonable expectation of privacy in information voluntarily disclosed to third parties. This approach is ill suited to the digital age…"). The *Carpenter* case itself begins with an unsworn request for information, although the procedures of the Stored Communications Act (18 U.S.C. § 2703(d)) were followed in that case. The HSI agents in this case ignored the Stored Communications Act entirely, improperly using a customs summons to obtain subscriber information. The

Government fails to explain why Congress bothered enacting the Stored Communications Act if Wellbeloved-Stone had no reasonable expectation of privacy in his internet data.

## CONCLUSION

For the reasons set forth herein and in the Defendant's Motion to Suppress, the Court should issue an order pursuant to Fed. R. Crim. P. 12(b)(3) suppressing all evidence obtained, directly or derivatively, from the execution of the 19 U.S.C. § 1509 summonses on Kik and Comcast in this case.

Dated this 23rd day of January, 2018

Respectfully submitted,

RICHARD ALAN WELLBELOVED-STONE

By Counsel

Counsel:

/s Lisa M. Lorish
Lisa M. Lorish (VSB No. 81465)
Assistant Federal Public Defender
Office of the Federal Public Defender
401 E. Market St, Ste 106
Charlottesville, VA 22902
Tel (434) 220-3380

## CERTIFICATE OF SERVICE

I hereby certify that on January 23, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: counsel of record; and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants: none.

s/ Lisa M. Lorish

Asst. Federal Public Defender

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

UNITED STATES OF AMERICA )
)
Plaintiff, )
)
v. ) CASE NO.: 3:17-cr-14
)
RICHARD ALAN WELLBELOVED-STONE )
)
Defendant. )

---

**SUPPLEMENTAL MOTION IN SUPPORT OF MOTION TO SUPPRESS**

The defendant, Richard Alan Wellbeloved-Stone, hereby supplements his motion to suppress all evidence obtained, directly or derivatively, from the execution of the 19 U.S.C. § 1509 summonses on Kik Interactive, Inc. and Comcast Cable Communications, LLC in July of 2017, by moving to suppress all evidence obtained, directly or derivatively, from the execution of the § 1509 summons on Google in July 2017. A copy of the summons issued upon Google was just produced in discovery and is attached hereto as Exhibit 1. Google's response to that summons is attached hereto as Exhibit 2. The same arguments already set forth in detail in the Defendant's Motion to Suppress (ECF # 36) and Reply in Support of the Motion to Suppress (ECF # 46) warrant suppression of the results from this improper summons as well.

Finally, the Defendant attaches as Exhibit 3 the response provided by Comcast Cable Communications to the § 1509 summons that is one of the subjects of this suppression motion. This response from Comcast was referenced in the Defendant's Motion to Suppress (ECF # 36 at p. 7, n. 3) but had not been received at the time of filing.

Respectfully submitted,

RICHARD ALAN WELLBELOVED-STONE

By Counsel

Counsel:

/s Lisa M. Lorish
Lisa M. Lorish (VSB No. 81465)
Assistant Federal Public Defender
Office of the Federal Public Defender
401 E. Market St, Ste 106
Charlottesville, VA 22902
Tel (434) 220-3380

**CERTIFICATE OF SERVICE**

I hereby certify that on February 7, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: counsel of record; and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants: none.

s/ Lisa M. Lorish

Asst. Federal Public Defender

Homeland Security Investigations
Homeland Security Investigations
263 Neff Avenue
Harrisonburg, VA 22801

U.S. Immigration and Customs Enforcement

# Cover Sheet

**Date** 7/24/2017

**To:** Google
Legal Investigations Support
Legal
1600 Amphitheater Parkway
Mountain View, CA 94043
650-253-3425

**Electronic Service Methods:**

**Fax:** 650-253-0001

**E-Mail:** uslawenforcement@google.com

---

**From:** Lazaro J. Cosme

**Phone:** 540-746-0562

☒ Urgent ☒ Action ☐ Concurrence ☐ FYI

**Number of pages including cover: 4**

---

Comments:

This is related to a Child Exploitation case, please respond ASAP.

Notification to user(s)/subscriber(s) can result in the serious harm or injury to a potential child victim, therefore, IT IS REQUESTED THAT GOOGLE DOES NOT DISCLOSE or NOTIFY USER(S) OF THIS SUBPOENA REQUEST.

Attached is summons #: ICE-HSI-HH-2017-00065. Please respond ASAP.

| 1. To (Name, Address, City, State, Zip Code) | DEPARTMENT OF HOMELAND SECURITY |
|---|---|
| Google<br>Legal Investigations Support<br>Legal<br>1600 Amphitheater Parkway<br>Mountain View, CA 94043 | **SUMMONS**<br>**to Appear and/or Produce Records**<br>19 U.S.C. § 1509 |

Summons Number ICE-HSI-HH-2017-00065

By the service of this summons upon you, **YOU ARE HEREBY SUMMONED AND REQUIRED TO:**

(A) ☐ **APPEAR** before the U.S. Customs and Border Protection (CBP) Officer or U.S. Immigration and Customs Enforcement (ICE) Special Agent named in Block 2 at the place, date and time indicated to testify and give information.

(B) ☒ **PRODUCE** the records (including statements, declarations, and other documents) indicated in Block 3 before the CBP Officer or ICE Special Agent named in Block 2 at the place, date and time indicated.

Your testimony and/or production of the indicated records is required in connection with an investigation or inquiry to ascertain the correctness of entries, to determine the liability for duties, taxes, fines, penalties, or forfeitures, and/or to ensure compliance with the laws or regulations administered by CBP and ICE.

Failure to comply with this summons will render you liable to proceedings in a U.S. District Court to enforce compliance with this summons as well as other sanctions.

2. (A) CBP Officer or ICE Special Agent before whom you are required to appear

| | |
|---|---|
| Name | Lazaro J. Cosme |
| Title | Special Agent |
| Address | Homeland Security Investigations<br>Homeland Security Investigations<br>263 Neff Avenue<br>Harrisonburg, VA 22801 |
| Telephone Number | 540-746-0562 Fax Number (Not available) |

(B) Date

August 23, 2017

(C) Time

9:00 AM

3. Records required to be produced for inspection

Please see attached continuation page.

*You are requested not to disclose the existence of this summons for an indefinite period of time. Any such disclosure will impede this investigation and thereby interfere with the enforcement of federal law.*

Issued under authority of section 509, Tariff Act of 1930, as amended by Pub. L. No. 95-410 (19 U.S.C. § 1509); 44 F.R. 2217; Homeland Security Act of 2002

4. Name of person authorized to serve this summons or any other CBP Officer or ICE Special Agent

Lazaro J. Cosme

5. Date of issue JUL 24 2017

By ______ (Signature)

6. Name, title, address and telephone number of person issuing this summons

| | |
|---|---|
| Name | Patrick J. Lechleitner |
| Title | Special Agent in Charge |
| Address | Homeland Security Investigations<br>2675 Prosperity Avenue<br>Suite 400<br>Fairfax, VA 20598-5114 |
| Telephone Number | 703-285-6702 |

If you have any questions regarding this summons, contact the CBP Officer or ICE Special Agent identified in Block 2.

DHS Form 3115 (6/09)

# CERTIFICATE OF SERVICE AND ACKNOWLEDGMENT OF RECEIPT

## A. CERTIFICATE OF SERVICE OF SUMMONS

I certify that I served the summons on the front of this form as follows:

| | | |
|---|---|---|
| ☑ I delivered a copy of the summons to the person to whom it was directed, as follows: | Address or Location<br>Google-Legal Inv, Support. Legal. 1600 Amphitheater Pkway. Mountain View, CA 94043 | Date<br>07/24/17<br>Time<br>2:46<br>☐ a.m. ☑ p.m. |
| ☐ (For corporations, partnerships, and unincorporated associations which may be sued under a common name)<br>I delivered a copy of the summons to an officer, managing or general agent, or agent authorized to accept service of process as follows: | Address or Location | Date<br>Time<br>☐ a.m. ☐ p.m. |
| | Name of person to whom the summons was delivered | |
| Signature | | |
| Title | | Date |

## B. ACKNOWLEDGMENT OF RECEIPT

I acknowledge receipt of a copy of the summons on the front of this form.

| | | |
|---|---|---|
| Signature | | |
| Title | Date | Time<br>☐ a.m.<br>☐ p.m. |

DHS Form 3115 (6/09)

| | |
|---|---|
| 1. To (Name, Address, City, State, Zip Code)<br>Google<br>Legal Investigations Support<br>Legal<br>1600 Amphitheater Parkway<br>Mountain View, CA 94043 | DEPARTMENT OF HOMELAND SECURITY<br><br>**SUMMONS (Continuation)**<br><br>**to Appear and/or Produce Records**<br>19 U.S.C. § 1509 |
| Summons Number ICE-HSI-HH-2017-00065 | |

3. Records required to be produced for inspection (continued)

Information for the email accounts - bijsincville@gmail.com including but not limited to:

Email registration information to include name, address, phone numbers, date of birth, any and all contact information, linked accounts, and/or recovery email address(es). All sign-in/log-in information to include IP address, time, and duration of log-ins from June 1, 2017 to July 24, 2017.

IT IS REQUESTED THAT GOOGLE DOES NOT DISCLOSE or NOTIFY USER(S) OF THIS SUBPOENA REQUEST.

**Method of Response:**

**Preferred:**

Return the requested records in an accessible data file format such as ".XLS", ".CSV", ".TXT", or ".PDF". The data file(s) should be delivered via e-mail to Special Agent Lazaro J. Cosme at Lazaro.J.Cosme@ice.dhs.gov.

NOTE: The ICE e-mail system limits incoming messages containing file attachments to 10 MB. For larger files send the summons response in multiple e-mail messages.

**Alternates:**

The records should be delivered to Special Agent Lazaro J. Cosme at U.S. Immigration and Customs Enforcement, Homeland Security Investigations, Homeland Security Investigations, 263 Neff Avenue, Harrisonburg, VA 22801.

If you have questions, please contact Special Agent Lazaro J. Cosme at 540-746-0562.

*You are requested not to disclose the existence of this summons for an indefinite period of time. Any such disclosure will impede this investigation and thereby interfere with the enforcement of federal law.*

End of Document

Google Inc.
1600 Amphitheatre Parkway
Mountain View, California 94043

USLawEnforcement@google.com

www.google.com

July 24, 2017

Special Agent Lazaro "Larry" Cosme
ICE
263 Neff Avenue
Harrisonburg, VA 22801

**Re: Summons dated July 24, 2017 (Internal Ref. No. 1155843)**
***Case No. ICE-HSI_HH-2017-00065***

Dear Special Agent Cosme:

Pursuant to the Summons issued in the above-referenced matter, we have conducted a diligent search for documents and information accessible on Google's systems that are responsive to your request. Our response is made in accordance with state and federal law, including the Electronic Communications Privacy Act. See 18 U.S.C. § 2701 et seq.

Accompanying this letter is responsive information to the extent reasonably accessible from our system associated with the Google account(s), *BIJSINCVILLE*, as specified in the Summons. We have also included a signed Certificate of Authenticity which includes a list of hash values that correspond to each file contained in the production. Google may not retain a copy of this production but does endeavor to keep a list of the files and their respective hash values. To the extent any document provided herein contains information exceeding the scope of your request, protected from disclosure or otherwise not subject to production, if at all, we have redacted such information or removed such data fields.

Please note that Google Wallet service data is under the control of Google Payment Corporation. Any request for such data must be specifically addressed to Google Payment Corporation and can be served through the email address googlepayments@google.com.

Finally, in accordance with Section 2706 of the Electronic Communications Privacy Act, Google may request reimbursement for reasonable costs incurred in processing your request.

Regards,

Jonathan Ma
Google Legal Investigations Support

Google Inc.
1600 Amphitheatre Parkway
Mountain View, California 94043

USLawEnforcement@google.com
www.google.com

# CERTIFICATE OF AUTHENTICITY

I hereby certify:

1. I am employed by Google Inc. ("Google"), located in Mountain View, California. I am authorized to submit this affidavit on behalf of Google. I have personal knowledge of the following facts, except as noted, and could testify competently thereto if called as a witness.

2. Google provides Internet-based services.

3. Attached is a true and correct copy of records pertaining to the Google account-holder(s) identified with account(s) *BIJSINCVILLE,* with Google Ref. No. 1155843 ("Document"). Accompanying this Certificate of Authenticity as Attachment A is a list of hash values corresponding to each file produced in response to the Summons.

4. The Document attached hereto is a record made and retained by Google. Google servers record this data automatically at the time, or reasonably soon after, it is entered or transmitted by the user, and this data is kept in the course of this regularly conducted activity and was made by regularly conducted activity as a regular practice of Google.

5. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

___/s_Jonathan Ma_______
(Signature of Records Custodian)

Date: July 24, 2017

Jonathan Ma
(Name of Records Custodian)

Google Inc.
1600 Amphitheatre Parkway
Mountain View, California 94043

USLawEnforcement@google.com

www.google.com

**Attachment A: Hash Values for Production Files (Internal Ref. No. 1155843)**

bijsincville.AccountInfo.txt:

MD5- f1ae148634fbe44b345f20f9c6197203
SHA512-
86a1145e8d6a7935ae83ad5e3b0371897773f023623fb9d4851ce6eb68bda094d680cac3e7fde088c
0134b0c86bedd918362f2511ba86bc8784de049f8fd3f2b

bijsincville.AccountInfo.txt

############## * Google Confidential and Proprietary * ###############

GOOGLE SUBSCRIBER INFORMATION
Name: Jack Smith
e-Mail: bijsincville@gmail.com
Services: Gmail, Google Calendar, Google Hangouts, Google Photos, Google+, Has Google Profile, Has Plusone, Lock SafeSearch, Web & App Activity, YouTube
Recovery e-Mail: newdcpl@gmail.com
Created on: 2015/01/02-16:33:38-UTC
Terms of Service IP: 73.171.118.92, on 2015/01/02-16:33:38-UTC
Google Account ID: 449043569442
Last Logins: 2017/07/24-13:27:39-UTC, 2017/07/24-01:08:12-UTC, 2017/07/23-05:29:55-UTC

| Time | IP Address | Type |
|---|---|---|
| 2017/07/24-13:27:39-UTC | 2601:5c2:0:b54b:d002:a8a:c8e:5300 | Login |
| 2017/07/24-01:08:12-UTC | 66.87.73.202 | Login |
| 2017/07/23-05:29:55-UTC | 2601:5c2:0:b54b:49d8:10e6:539c:f79c | Login |
| 2017/07/18-21:18:34-UTC | 66.87.72.162 | Login |
| 2017/07/17-05:07:13-UTC | 2601:5c2:0:b54b:f8c8:aec8:efdb:5e3a | Login |
| 2017/07/17-00:20:25-UTC | 73.177.195.172 | Login |
| 2017/07/14-15:20:17-UTC | 2601:5c2:0:b54b:903d:d971:b7f6:5fbf | Login |
| 2017/07/13-19:12:47-UTC | 2601:5c2:0:b54b:54cd:e2c9:61de:a4da | Login |
| 2017/07/13-13:40:44-UTC | 2601:5c2:0:b54b:9cd5:4b35:bb0a:6558 | Login |
| 2017/07/13-02:58:47-UTC | 2601:5c2:0:b54b:5961:57ce:9d47:d50d | Login |
| 2017/07/12-02:53:44-UTC | 2601:5c2:0:b54b:89a2:f81f:a76:6bfc | Login |
| 2017/07/11-03:47:39-UTC | 2601:5c2:0:b54b:bd88:cd80:1e71:7d0f | Login |
| 2017/07/10-19:05:14-UTC | 66.87.76.183 | Login |
| 2017/07/10-13:37:43-UTC | 2601:5c2:0:b54b:6c43:76bb:84b0:1c3e | Login |
| 2017/07/09-04:07:46-UTC | 2601:5c2:0:b54b:2884:b8c8:a3f8:1939 | Login |
| 2017/07/08-16:45:20-UTC | 2601:5c2:0:b54b:9c29:24b3:588e:268b | Login |
| 2017/07/08-12:42:08-UTC | 2601:5c2:0:b54b:69d3:8c6e:52cc:4f77 | Login |
| 2017/07/08-04:35:44-UTC | 2601:5c2:0:b54b:d24:c147:1712:2e67 | Login |
| 2017/07/07-12:54:02-UTC | 2601:5c2:0:b54b:8bb:7f00:d012:a670 | Login |
| 2017/07/07-02:29:58-UTC | 2601:5c2:0:b54b:ccb7:d8ec:aec:e9e0 | Login |
| 2017/07/06-20:35:54-UTC | 2601:5c2:0:b54b:90e3:b2f1:b47a:3c3d | Login |
| 2017/07/06-18:29:29-UTC | 76.120.226.19 | Login |
| 2017/07/06-14:35:45-UTC | 66.87.72.93 | Login |
| 2017/07/06-12:59:53-UTC | 66.87.72.93 | Login |
| 2017/07/06-11:40:10-UTC | 2601:5c2:202:a7e0:3482:795f:5c8b:71ba | Login |
| 2017/07/05-19:57:23-UTC | 66.87.72.93 | Login |
| 2017/07/05-18:50:10-UTC | 66.87.72.93 | Login |
| 2017/07/05-18:23:32-UTC | 66.87.72.93 | Login |
| 2017/07/05-14:49:05-UTC | 76.120.226.19 | Login |
| 2017/07/05-13:11:39-UTC | 76.120.226.19 | Login |
| 2017/07/05-11:54:44-UTC | 76.120.226.19 | Login |

| | | |
|---|---|---|
| 2017/07/05-03:29:54-UTC | 76.120.226.19 | Login |
| 2017/07/05-02:03:50-UTC | 2601:5c2:0:b54b:1912:9334:88e6:c37e | Login |
| 2017/07/04-23:00:49-UTC | 73.177.195.172 | Login |
| 2017/07/04-22:16:54-UTC | 73.177.195.172 | Login |
| 2017/07/04-21:11:08-UTC | 73.177.195.172 | Login |
| 2017/07/04-17:19:20-UTC | 2601:5c2:0:b54b:f5b5:e42f:e468:219e | Login |
| 2017/07/04-16:07:12-UTC | 2601:5c2:0:b54b:f5b5:e42f:e468:219e | Login |
| 2017/07/04-14:57:35-UTC | 2601:5c2:0:b54b:f9d6:486:3bfc:e1a6 | Login |
| 2017/07/03-20:57:51-UTC | 66.87.76.248 | Login |
| 2017/07/03-20:07:58-UTC | 66.87.73.113 | Login |
| 2017/07/03-19:28:13-UTC | 66.87.93.5 | Login |
| 2017/07/03-03:51:19-UTC | 76.120.226.19 | Login |
| 2017/07/02-04:13:41-UTC | 2601:5c2:0:b54b:799e:5cdc:5540:8ddf | Login |
| 2017/07/01-21:37:48-UTC | 2601:5c2:0:b54b:1887:52b1:e837:f51e | Login |
| 2017/07/01-17:18:28-UTC | 76.120.226.19 | Login |
| 2017/07/01-15:45:48-UTC | 2601:5c2:0:b54b:cd63:8e23:281d:abeb | Login |
| 2017/07/01-04:07:43-UTC | 2601:5c2:0:b54b:a811:a1a:582b:9bcf | Login |
| 2017/06/30-14:37:22-UTC | 76.120.226.19 | Login |
| 2017/06/30-13:09:57-UTC | 66.87.76.112 | Login |
| 2017/06/30-02:47:33-UTC | 66.87.77.231 | Login |
| 2017/06/29-22:07:41-UTC | 66.87.77.33 | Login |
| 2017/06/29-19:16:32-UTC | 66.87.77.33 | Login |
| 2017/06/28-20:10:39-UTC | 76.120.226.19 | Login |
| 2017/06/28-14:20:11-UTC | 76.120.226.19 | Login |
| 2017/06/27-23:05:39-UTC | 66.87.76.124 | Login |
| 2017/06/27-21:16:52-UTC | 66.87.76.124 | Login |
| 2017/06/27-15:08:14-UTC | 2601:5c2:0:b54b:1d35:266c:e069:6b15 | Login |
| 2017/06/27-14:28:19-UTC | 76.120.226.19 | Login |
| 2017/06/21-13:09:46-UTC | 66.87.77.136 | Login |
| 2017/06/21-01:01:09-UTC | 66.87.77.136 | Login |
| 2017/06/20-19:01:12-UTC | 66.87.73.197 | Login |
| 2017/06/20-15:55:59-UTC | 2601:5c2:0:b54b:f85a:44bf:5fb4:3276 | Login |
| 2017/06/20-04:13:35-UTC | 76.120.226.19 | Login |
| 2017/06/20-03:04:44-UTC | 76.120.226.19 | Login |
| 2017/06/19-16:19:35-UTC | 2601:5c2:0:b54b:5475:ba73:d6f2:f4a | Login |
| 2017/06/17-23:07:20-UTC | 76.120.226.19 | Login |
| 2017/06/06-03:31:20-UTC | 76.120.226.19 | Login |
| 2017/06/05-04:42:08-UTC | 2601:5c2:0:b54b:95b2:82ca:4a91:733a | Login |
| 2017/06/03-15:42:11-UTC | 2600:1:f180:d959:2584:3566:1d26:68c3 | Login |
| 2017/06/02-19:20:39-UTC | 2600:1:f1a8:5177:a866:e83e:d7b3:4f31 | Login |

############## * Google Confidential and Proprietary * ###############

# COMCAST

## FACSIMILE TRANSMITTAL SHEET

| | |
|---|---|
| TO: SA Lazaro J. Cosme | FROM: Comcast Legal Response Center |
| COMPANY: Department of Homeland Security | DATE: 7/25/2017 12:47:28 PM |
| FAX NUMBER: 540-432-3392 | TOTAL NO. OF PAGES INCLUDING COVER: 3 |
| PHONE NUMBER: | SENDER'S REFERENCE NUMBER: 854771 |
| RE: Summons | YOUR REFERENCE NUMBER: |

☐ URGENT ☑ FOR REVIEW ☐ PLEASE COMMENT ☐ PLEASE REPLY ☐ PLEASE RECYCLE

NOTES/ COMMENTS:

Attached you will find Comcast's response to the above referenced Subpoena. If you have any questions regarding this matter, please contact the Legal Response Center at 866-947-8572.

Sincerely.

Comcast Legal Response Center

650 CENTERTON ROAD, MOORESTOWN, NJ 08057

COMCAST

Legal Response Center
650 Centerton Road
Moorestown, NJ 08057
866-947-8572 Tel
866-947-5587 Fax

**CONFIDENTIAL**

July 24, 2017

**VIA FACSIMILE**

SA Lazaro J. Cosme
Department of Homeland Security
263 Neff Avenue
Harrisonburg, VA 22801
**Fax: (540) 432-3392**

Re: Summons
Comcast File #: 854771

Dear SA Cosme:

The Summons received on 7/24/2017 with respect to the above-referenced matter has been forwarded to the Legal Response Center for a reply. The Summons requests Comcast to produce certain subscriber records pertaining to the following IP address: **76.120.226.19** assigned on **7/16/2017** at **17:41:42** UTC.

Based on the information provided pursuant to the Summons, the subscriber information obtained has been provided below:

| | |
|---|---|
| Subscriber Name: | RICK WELLBELOVED |
| Service Address: | [redacted] |
| Telephone #: | |
| Type of Service: | High Speed Internet Service |
| Account Number: | [redacted] |
| Start of Service: | Unknown |
| Account Status: | Active |
| IP Assignment: | Dynamically Assigned |
| Current IP: | See attached |
| E-mail User Ids: | [redacted] |
| | (the above user ID(s) end in @comcast.net) |

If you have any questions regarding this matter, please feel free to call 866-947-8572.

Very Truly Yours,

Comcast Legal Response Center

Current IP - Comcast File 854771

| |
|---|
| 76.120.226.19 (date of Summons, 07/24/2017 at 00:00:00 UTC) |
| 2001:0558:6036:007F:7D0C:4C96:41D6:A22D (date of Summons, 07/24/2017 at 00:00:00 UTC) |
| 50.220.64.240 (date of Summons, 07/24/2017 at 00:00:00 UTC) |

| Start Address | End Address |
|---|---|
| 2601:05C2:0000:B54B:0000:0000:0000:0000 | 2601:05C2:0000:B54B:FFFF:FFFF:FFFF:FFFF |
| IPv6 Prefix (date of Summons, 07/24/2017 at 00:00:00 UTC) | |


Wellbeloved-Stone-Disc-000106

**IN THE**
**UNITED STATES DISTRICT COURT**
**FOR THE**
**WESTERN DISTRICT OF VIRGINIA**
**CHARLOTTESVILLE DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Case No. 3:17CR00014** |
| | : | |
| **v.** | : | |
| | : | |
| **RICHARD ALAN WELLBELOVED-STONE** | : | |

**UNITED STATES' NOTICE OF NEW FOURTH CIRCUIT CASE RELEVANT TO DEFENDANT'S MOTION TO DISMISS**

COMES NOW the United States of America, by counsel, and hereby supplements its response to the defendant's motion to dismiss by alerting the Court to a new Fourth Circuit case, decided February 7, 2018, that corroborates the United States' position that the defendant's motion to dismiss is baseless.

In *United States v. Miltier*, ___ F.3d ___, 2018 WL 741365 (4th Cir. 2018), the Fourth Circuit held, in part, that the jurisdictional basis for a child pornography receipt conviction could be satisfied by showing that the computer on which the child pornography was found was made out of state. *See id.* at *4-*7. In so finding, the Fourth Circuit reiterated the "well settled" fact that "Congress has the authority to regulate purely intrastate activities, as long as a rational basis exists for concluding that a regulated activity sufficiently affects interstate commerce" and finding that

"Congress has made specific findings that the intrastate regulation of child pornography sufficiently affects the interstate child pornography market." *Id.* at *5 (citing, *inter alia*, *United States v. Lopez*, 514 U.S. 549, 557 (1995), *Gonzales v. Raich*, 545 U.S. 1, 17 (2005), and the Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, § 501(1)(F), 120 Stat. 587, 624) (internal quotations and brackets omitted). The *Miltier* Court further noted that courts had "uniformly" found that "the intrastate receipt, production, and possession of child pornography have a substantial effect on the interstate movement of child pornography," that Congress had the requisite rational basis for concluding that intrastate production and possession child pornography substantially affected interstate commerce, and that courts had held that Congress had the authority to allow an interstate jurisdictional requirement to be met by a computer's movement in interstate or foreign commerce *Id.* (citations omitted).

This latest binding authority reinforces the United States' position that the defendant's motion is unsupportable. Consequently, the United States respectfully repeats its request that this Court deny the defendant's motion in all respects.

Respectfully submitted,

RICK A. MOUNTCASTLE
United States Attorney

s/ Nancy S. Healey
Nancy S. Healey
Assistant United States Attorney
VSB No. 39447

/s/ Leslie Williams Fisher
Leslie Williams Fisher, Trial Attorney
U.S. Dept. of Justice, Criminal Division
Child Exploitation and Obscenity Section
1400 New York Avenue, NW
Washington, DC 20530
Phone: (202) 616-2557
Fax: (202) 514-1793
Email: Leslie.Fisher2@usdoj.gov
Virginia Bar No. 77470

## CERTIFICATE OF SERVICE

I hereby certify that on February 08, 2018, I electronically filed the forgoing with the Clerk of the Court using CM/ECF system which will send notification of such filing to Lisa Lorish, Assistant Federal Public Defender, and Andrea Harris, Assistant Federal Public Defender.

s/ Nancy S. Healey
Nancy S. Healey
Assistant United States Attorney

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.: 3:17-cr-14 |
| | ) | |
| RICHARD ALAN WELLBELOVED-STONE | ) | |
| | ) | |
| Defendant. | ) | |

**MOTION TO SUPPRESS AND INCORPORATED MEMORANDUM IN SUPPORT**

COMES NOW, the DEFENDANT, Richard Alan Wellbeloved-Stone, through undersigned counsel, and respectfully moves the Court for an order pursuant to Fed. R. Crim. P. 12(b)(3), suppressing all evidence obtained, directly or derivatively, from the execution of the 19 U.S.C. § 1509 summonses on Kik Interactive, Inc. ("Kik") and Comcast Cable Communications, LLC ("Comcast") in July of 2017. Both summonses were issued by Homeland Security Investigations ("HSI"), a division of Immigration and Customs Enforcement ("ICE"), which is part of the Department of Homeland Security ("DHS"), in clear excess of the authority provided under 19 U.S.C. § 1509 which limits such summonses to matters concerning customs enforcement. The fact that § 1509 summons are limited in this way has been confirmed as recently as November 17, 2017, when the Office of Inspector General ("OIG") for DHS issued a Management Alert concerning the misuse of summons under § 1509 for criminal, instead of customs, investigations.[1] More importantly, DHS was on notice about the blatant misuse of

[1] A copy of the Management Alert – CBP's Use of Examination and Summons Authority Under 19 U.S.C. § 1509, issued by the Office of Inspector General, Department of Homeland Security, November 16, 2017 (OIG-18-18) ("Management Alert") is attached hereto as Exhibit A, and

§ 1509 summonses prior to July 2017 when the summonses in this cases were issued. *See* Exhibit A. In fact, Customs and Border Patrol ("CBP"), another division of DHS, "delivered both verbal and written guidance to [CBP Office of Professional Responsibility] agents at headquarters and field offices relating to the issuance of Section 1509 Summonses / DHS 3115" between April and June of 2017 because of the overuse of 1509 summonses that was in direct contravention of written departmental policies. *Id.* at 6. The exclusionary rule is the only remedy for deliberate government abuse of a statutory provision that requires no threshold of reasonable suspicion or probable cause, and that was never intended to be used for criminal investigations. Further, Wellbeloved-Stone also had a reasonable expectation of privacy in his online subscriptions and actions. For each of these reasons, neither of the summonses, nor the evidence derived therefrom, could be relied upon in good faith.

**STATEMENT OF FACTS**

On June 28, 2017 at 15:33, a user "Jack Smith" with an email address bijsincville@gmail.com sent an email message to an undercover agent that said "would love to hear more about you and your daughters."[2] [redacted]

[redacted]

may also be accessed at https://www.oig.dhs.gov/sites/default/files/assets/2017-11/OIG-18-18-Nov17.pdf.

[2] The allegations provided herein were set forth in a state search warrant affidavit that remains under seal and is attached hereto as Sealed Exhibit B. Attachment B to the search warrant (Ex. B pages 8-22) sets forth probable cause according to the affiant, Detective Nicholas Rudman with the Charlottesville Police Department.

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

The next day, on July 12, 2017, the undercover agent and "Jack" spoke through Kik Messenger. *Id.* at 14. The search warrant affidavit explains that "Kik is a freeware instant messaging mobile app" with 300 million registered users as of May 2016, used by "approximately 40% of United States teenagers." *Id.* at 13. The affidavit further states that "Kik Messenger has drawn controversy due to its reported involvement in a number of incidents of child exploitation" and that the affiant "has had past child exploitation cases involving Kik…rang[ing] from solicitation of children for sexual acts to the trading of child pornography." *Id.*

The chat between "Jack" and the undercover agent "Lee" on July 12, 2017 was excerpted as follows in the search warrant affidavit (Ex. B at 14-16):

[redacted]

[redacted]

Following this exchange, the undercover agent contacted the HSI who, on July 14, 2017, sent a federal summons to Kik under 19 U.S.C. § 1509 (attached hereto as Exhibit C) requesting:

> the name, address, local and/or long distance telephone number, connection records or records of session times, duration, length of service (including start date) and types of service utilized; telephone or instrument number or other subscriber number or identity, including any temporary assigned network address; means of source of payment for such service (including any credit card and/or bank account number), as per HR.3162 effective 10/26/2001. Specifically – Registered user information, IP login information for past 60 days or last 20 logins available, email addresses associated with account for the following account: "bijsincville"

Ex. C at 4. The summons stated that "production of the indicated records is required in connection with an investigation or inquiry to ascertain the correctness of entries, to determine the liability for duties, taxes, fines, penalties, or forfeitures, and/or to ensure compliance with the laws or regulations administered by CBP and ICE." *Id.* at 2. The summons also stated that "[f]ailure to comply with this summons will render you liable to proceedings in a U.S. District Court to enforce compliance with this summons as well as other sanctions." *Id.*

Kik produced a response to the request dated July 17, 2017 (attached hereto as Exhibit D), which provided subscriber information, and most recent IP addresses for the username "bijsincville". The documents produced in response to the summons included the date and time stamps that the user "bijsincville" had accessed the Kik program from June 21, 2017 until July 16, 2017. The following is an example of the excerpt of these results for July 12, 2017:

| | |
|---|---|
| 2017/07/12 01:47:54 UTC 1499824074003 CIP | "ip":"66.87.77.234", "remotePort":"16965", "chatNetwork":"Unknown" |
| 2017/07/12 02:53:52 UTC 1499828032586 CIP | "ip":"76.120.226.19", "remotePort":"55982", "chatNetwork":"Unknown |
| 2017/07/12 03:24:14 UTC 1499829854814 CIP | "ip":"76.120.226.19", "remotePort":"56012", "chatNetwork":"Unknown |
| 2017/07/12 03:53:58 UTC 1499831638440 CIP | "ip":"76.120.226.19", "remotePort":"56108", "chatNetwork":"Unknown |
| 2017/07/12 04:18:24 UTC 1499833104931 CIP | "ip":"76.120.226.19", "remotePort":"56949", "chatNetwork":"Unknown |
| 2017/07/12 04:54:09 UTC 1499835249705 CIP | "ip":"76.120.226.19", "remotePort":"56971", "chatNetwork":"Unknown |
| 2017/07/12 05:14:51 UTC 1499836491394 CIP | "ip":"76.120.226.19", "remotePort":"56976", "chatNetwork":"Unknown |
| 2017/07/12 06:12:08 UTC 1499839928204 CIP | "ip":"76.120.226.19", "remotePort":"56981", "chatNetwork":"Unknown |
| 2017/07/12 07:02:56 UTC 1499842976182 CIP | "ip":"76.120.226.19", "remotePort":"56988", "chatNetwork":"Unknown |
| 2017/07/12 07:30:27 UTC 1499844627886 CIP | "ip":"76.120.226.19", "remotePort":"56993", "chatNetwork":"Unknown |
| 2017/07/12 07:57:55 UTC 1499846275039 CIP | "ip":"76.120.226.19", "remotePort":"56999", "chatNetwork":"Unknown |
| 2017/07/12 08:44:10 UTC 1499849050953 CIP | "ip":"76.120.226.19", "remotePort":"57008", "chatNetwork":"Unknown |
| 2017/07/12 09:11:43 UTC 1499850703006 CIP | "ip":"76.120.226.19", "remotePort":"57012", "chatNetwork":"Unknown |
| 2017/07/12 10:06:35 UTC 1499853995736 CIP | "ip":"76.120.226.19", "remotePort":"57021", "chatNetwork":"Unknown |
| 2017/07/12 10:27:45 UTC 1499855265362 CIP | "ip":"76.120.226.19", "remotePort":"57033", "chatNetwork":"Unknown |
| 2017/07/12 11:18:15 UTC 1499858295665 CIP | "ip":"76.120.226.19", "remotePort":"57044", "chatNetwork":"Unknown |
| 2017/07/12 11:27:55 UTC 1499858875537 CIP | "ip":"76.120.226.19", "remotePort":"57048", "chatNetwork":"Unknown |
| 2017/07/12 12:50:30 UTC 1499863830483 CIP | "ip":"66.87.76.245", "remotePort":"17741", "chatNetwork":"Unknown" |

2017/07/12 12:53:24 UTC 1499864004743 CIP "ip":"66.87.76.245", "remotePort":"12755", "chatNetwork":"Unknown"
2017/07/12 13:55:28 UTC 1499867728504 CIP "ip":"66.87.76.245", "remotePort":"6951", "chatNetwork":"Unknown"
2017/07/12 15:12:30 UTC 1499872350536 CIP "ip":"76.120.226.19", "remotePort":"57338", "chatNetwork":"Unknown
2017/07/12 15:51:55 UTC 1499874715739 CIP "ip":"76.120.226.19", "remotePort":"57373", "chatNetwork":"Unknown
2017/07/12 16:43:31 UTC 1499877811198 CIP "ip":"76.120.226.19", "remotePort":"57632", "chatNetwork":"Unknown
2017/07/12 17:07:45 UTC 1499879265967 CIP "ip":"76.120.226.19", "remotePort":"57812", "chatNetwork":"Unknown
2017/07/12 17:26:12 UTC 1499880372598 CIP "ip":"76.120.226.19", "remotePort":"58516", "chatNetwork":"Unknown
2017/07/12 18:45:13 UTC 1499885113529 CIP "ip":"66.87.76.245", "remotePort":"23112", "chatNetwork":"Unknown"

From this information, an agent determined that the IP address 76.120.226.19 was a Comcast IP address and thereafter served Comcast with a summons under 19 U.S.C. § 1509 on July 17, 2017 (attached hereto as Exhibit E). This summons sought to require production of

> the name, address, local and/or long distance telephone number, connection records or records of session times, duration, length of service (including start date) and types of service utilized; telephone or instrument number or other subscriber number or identity, including any temporary assigned network address; means of source of payment for such service (including any credit card and/or bank account number), as per HR.3162 effective 10/26/2001. Specifically – Registered user information, IP login information for past 60 days or last 20 logins available, email addresses associated with account for the following account: IP address 76.120.226.19 7/16/2017 17:41:42 UTC

Ex. E at 2. Comcast provided a response[3] on July 18, 2017 on that allegedly included the defendant's registered address and associated email and phone numbers. *See* Ex. B at 18. Law enforcement then surveilled the identified home address and observed vehicles at the residence registered to the defendant. *Id.* at 11-12. A wifi scan close to the residence identified that all available networks were secure/password protected. *Id.*

Finally, Special Agent Cosme located a photograph that was the undated background image on [redacted] facebook page. *Id.* at 12. A copy of this page was submitted

[3] The defendant has requested production of this response but has not received it to date.

as Attachment D to the search warrant (Ex. B at 24) and was described in the affidavit as a social media picture that allegedly showed:

> [redacted] his image is attached to this affidavit as "Attachment D". This is corroborative evidence to support allegations in the above chat with the UCA (Undercover Agent). The pictures show the access to a child about the same age as the subject chatted about with the Undercover Agent.

*Id.* at 12. Detective Nicholas Rudman swore out the affidavit and received a search warrant from Albemarle County Circuit Court Judge Cheryl Higgens on July 24, 2017. Ex. B at 25.

## ARGUMENT

### I. Customs Summonses Were Improperly Used by HSI to Obtain Information for a Potential Criminal Investigation Entirely Unrelated to Customs Enforcement

After receiving a report that an undercover law enforcement officer had an online chat about the possible abuse of an underaged child through a messenging service known as Kik Interactive, DHS sent a § 1509 customs summons to Kik on July 14, 2017. Ex. C. The summons stated that Kik was "required" to produce

> the name, address, local and/or long distance telephone number, connection records or records of session times, duration, length of service (including start date) and types of service utilized; telephone or instrument number or other subscriber number or identity, including any temporary assigned network address; means of source of payment for such service (including any credit card and/or bank account number), as per HR.3162 effective 10/26/2001. Specifically – Registered user information, IP login information for past 60 days or last 20 logins available, email addresses associated with account for the following account: "bijsincville"

*Id.* at 4. The summons stated generically that production of records was required "in connection with an investigation or inquiry to ascertain the correctness of entries, to determine the liability for duties, taxes, fines, penalties, or forfeitures, and/or to ensure compliance with the laws or regulations administered by CBP and ICE." *Id.* at 2. Beyond that boilerplate language, the summons provided no justification for issuing a summons targeting the defendant's Kik account. The summons warned that "[f]ailure to comply with this summons will render you liable to

proceedings in a U.S. District Court to enforce compliance with this summons as well as other sanctions." *Id.*

Likewise, the summons that DHS sent to Comcast on July 17, 2017 stated that Comcast was "required" to "produce[] for inspection"

> the name, address, local and/or long distance telephone number, connection records or records of session times, duration, length of service (including start date) and types of service utilized; telephone or instrument number or other subscriber number or identity, including any temporary assigned network address; means of source of payment for such service (including any credit card and/or bank account number), as per HR.3162 effective 10/26/2001. Specifically – Registered user information, IP login information for past 60 days or last 20 logins available, email addresses associated with account for the following account: IP address 76.120.226.19 7/16/2017 17:41:42 UTC.

Ex. E at 2. This summons also included the generic reason that production of records was required "in connection with an investigation or inquiry to ascertain the correctness of entries, to determine the liability for duties, taxes, fines, penalties, or forfeitures, and/or to ensure compliance with the laws or regulations administered by CBP and ICE." *Id.* at 1. The summons again warned that "[f]ailure to comply with this summons will render you liable to proceedings in a U.S. District Court to enforce compliance with this summons as well as other sanctions." *Id.*

Both of these summonses were unlawful because they demanded production of records that DHS is not authorized to obtain under 19 U.S.C. § 1509. The summonses exceed the scope of DHS's authority under 19 U.S.C. § 1509 for at least three reasons. *First*, 19 U.S.C. § 1509 limits the purpose of a summons under this statute to instances where there is an investigation or inquiry concerning the importation of merchandise, not where there is a potential criminal investigation. *Second*, the summons sought production of records that are not of the narrowly limited type authorized for obtaining under 19 U.S.C. § 1509. *Third,* 19 U.S.C. § 1509 authorizes the United States Customs Service to issue a summons pursuant to this statute, not DHS or ICE.

### A. Customs Summons Under 19 U.S.C. § 1598 May Only Be Used for the Purpose of Furthering Customs Investigations

19 U.S.C. § 1509 confers authority on the Secretary of the United States Customs Service (or a delegate at or above the rank of district director or special agent in charge) to compel disclosure of records only in connection with "any investigation or inquiry conducted for the purpose of ascertaining the correctness of any entry, for determining the liability of any person for duty, fees and taxes due or duties, fees and taxes which may be due the United States, for determining liability for fines and penalties, or for insuring compliance with the laws of the United States administered by the United States Customs Service." 19 U.S.C. § 1509(a). The first three listed items clearly relate narrowly to imports, and the meaning of the fourth term is "cabin[ed]" by the first three. *See Yates v. United States*, 135 S. Ct. 1074, 1085 (2015) (applying "the principle of noscitur a sociis—a word is known by the company it keeps—to 'avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving unintended breadth to the Acts of Congress'" *quoting Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995))

Further, the fourth term is limited by the phrase "*administered by the United States Customs Service*." Even if DHS can be substituted for the United States Customs Service in this sentence – which it cannot as set forward below – laws *administered* by DHS are distinct from laws that may be *enforced* by DHS. When Congress granted the power of an administrative summons to the United States Customs Service it was to manage or conduct the regulatory function of "duty, fees and taxes" or compliance with laws managed by the Customs service – not to enforce any and all of the criminal laws.

Affirming this interpretation of § 1509 is DHS's own November 18, 2017 Management Bulletin which followed an internal investigation at DHS about the use of §1509 summonses.

*See* Ex. A. This investigation was kicked off after a § 1509 summons was issued to Twitter in early 2017 in an effort to uncover the subscriber information for a particular account that had been critical of Present Trump. Ex. A at 2. Twitter filed for an injunction to prevent complying with this subpoena in the United States District Court for the Northern District of California in April 2017, citing the over-reach of the § 1509 summons.[4] DHS withdrew the § 1509 summons the very next day.[5]

The Management Bulletin affirmed that this request from DHS for subscriber information from Twitter was "unrelated to the importation of merchandise or the assessment and collection of customs duties" and stated that DHS "may have exceeded the scope of its authority under Section 1509 when it issued the summons to Twitter." Ex. A at 3. More telling, however, is an email that the Executive Director of CBP's Investigative Operations Division circulated to personnel a month after the Twitter incident, on May 25, 2017, "clarifying the limited contexts in which Section 1509 Summonses may properly be used" as:

> OPR IOD may utilize a 1509 summons authority in investigations and inquiries involving employee misconduct, but only where such misconduct is connected to the importation, certain exportations, or transportation or storage under bond, of merchandise. In such investigations, OPR may use a 1509 summons to obtain entry records or other records required to be kept under 19 U.S.C. § 1508. **In instances where records are sought from third parties, such as telecommunications providers, social media outlets, and banks, who are not otherwise obligated to keep records pursuant to 1508, the issuance of a 1509 summons requires probable cause to *believe* that the *records relate* to an importation of merchandise that is prohibited. Prior to issuance of a section 1509 summons to a third party, OPR agents are required to consult with the appropriate Associate/Assistance Chief Counsel office.**

---

[4] Complaint, *Twitter v. U.S. Dep't of Homeland Security et al*, Case 3:17-cv-01916, N.D.Ca. April 6, 2017, ECF #1. The complaint is also available at: https://s3.amazonaws.com/big.assets.huffingtonpost.com/show_multidocs.pl.pdf

[5] *See, e.g.*, https://www.reuters.com/article/us-twitter-lawsuit/twitter-pulls-lawsuit-over-anti-trump-account-says-summons-withdrawn-idUSKBN1792N9 (last accessed Dec. 7, 2017)

*Id.* (emphasis added). Therefore, as of May 25, 2017, DHS interpreted § 1509 to only permit the issuance of summons where an investigation concerned importation of merchandise and not for criminal investigations.

Such an interpretation should have never been necessary considering the existing Special Agent Internal Operating Procedures which clearly limited the proper uses of § 1509 summonses. The Special Agent Internal Operating Procedures, issued on April 15, 2016, stated that § 1509 summonses authorized "the examination of records to ensure compliance with customs law," that the summonses "cannot be used in drug-smuggling or export investigation," and that the summonses could only be used to obtain information "related to Title 8 and Title 19 violations" but that "[a]bsent a nexus to a Title 8 or Title 19 violation" the summons "may not be used." *Id.* at 4. Title 8 of course pertains to aliens and nationality related offenses, and Title 19 to customs duties. Neither of which include child sex offenses.

### B. Customs Summons Only Allow Compelled Production of Importation-Related Documents

Section 1509 does not authorize DHS to compel production of the account-related records that the summonses demand. The Secretary or his delegate can compel the production of only records that fall within a narrow category defined in 15 U.S.C. § 1509(d)(1)(A). *See* 15 U.S.C. § 1509(a)(2)(D) ("[T]he Secretary ... may … summon … any … person he may deem proper … to produce records, as defined in subsection (d)(1)(A)."). Subsection 1509(d)(1)(A) limits the "records" whose production may be permissibly compelled through a summons to those (1) that are "required to be kept under section 1508 of this title" and (2) "regarding which there is probable cause to believe that they pertain to merchandise the importation of which into the United States is prohibited." The records these summonses demanded Kik and Comcast to disclose meet neither of these criteria.

To the contrary, Section 1508 requires importers to maintain certain records relating to their activity of importing merchandise. *See United States v. Frowein*, 727 F.2d 227, 233 (2d Cir. 1984) ("Section 1508 … imposes recordkeeping requirements on those who import or cause goods to be imported."). Specifically, the entities that must maintain records under section 1508 are limited to the following: any "owner, importer, consignee, importer of record, entry filer, or other party who—(A) imports merchandise into the customs territory of the United States, files a drawback claim, or transports or stores merchandise carried or held under bond, or (B) knowingly causes the importation or transportation or storage of merchandise carried or held under bond into or from the customs territory of the United States," 19 U.S.C. § 1508(a)(1); or any "agent of any party described in paragraph (1)," *id.* § 1508(a)(2); or any "person whose activities require the filing of a declaration of entry, or both," *id.* § 1508(a)(3). The records Section 1508 requires these entities to maintain are limited to records that both "pertain to any such activity, or to the information contained in the records required by this chapter in connection with any such activity" and "are normally kept in the ordinary course of business." 19 U.S.C. § 1508(a)(3). Subsection 1509(d)(1)(A)(ii) likewise limits the scope of records whose production CBP may compel pursuant to a summons to records relating to the importation of merchandise—specifically, records "pertain[ing] to merchandise the importation of which into the United States is prohibited."

The two summonses plainly did not request records relating to the importation of merchandise. They requested that Kik and Comcast produce information that pertains to the identity of the individuals who established and used particular accounts as part of a potential criminal investigation. And it is utterly implausible that DHS's interest in this information stemmed from importation of merchandise into the United States.

### C. Customs Summons May Only Be Issued by the United States Customs Service

19 U.S.C. § 1509 confers authority on the United States Customs Service to administratively enforce the import-export laws and various trade agreements. DHS, which issued the summonses in question, does not appear in the text of 19 U.S.C. § 1509. In fact, the United States Customs Service is a federal agency that ceased to exist after March 1, 2003, when it was reorganized under DHS as United States Customs and Border Protection ("CBP"). Today, there are seven different agencies that are grouped under DHS: CBP, United States Citizenship and Immigration Services, United States Coast Guard, Federal Emergency Management Agency, ICE, United States Secret Service, and the Transportation Security Administration.[6] While Section 403(1) of Homeland Security Act of 2002 transferred the functions, personnel, assets, and liability of the U.S. Customs Service from the Secretary of the Treasury to the Secretary of Homeland Security, it did not amend 19 U.S.C. § 1509 or otherwise broaden that narrow statutory grant. Therefore, there is nothing to support the notion that this narrow grant of summons authority to the now-non-existent United States Customs Service can be expanded to include every later-formed agency that happens to be lumped under the DHS – another entity that did not exist until March of 2003.

## II. The Only Appropriate Remedy For This Government Overreach Is Application of the Exclusionary Rule

Applying the exclusionary rule in this case is the only way to deter future Government misuse of the § 1509 summons. While the Management Bulletin indicates that future summonses will be subject to internal review to ensure they meet necessary legal thresholds, this

[6] *See* Organizational Chart for Department of Homeland Security, available at https://www.dhs.gov/sites/default/files/publications/Public%20Org%20Charts%202017.08.15.pdf (last accessed December 6, 2017).

assurance provides no guarantee that the summonses will be issued in accordance with the law. *See* Ex. A. To the contrary, data provided by to the Office of Inspector General for DHS indicated that DHS regularly used the § 1509 summons in violation of internal policy. Despite *an express prohibition against using the summons in drug-smuggling cases* in its existing policies, § 1509 summons were issued in at least 43 drug smuggling cases between January 2015 and May 2017, representing approximately 20% of the total summonses issued during that time period. Ex. A at 4. These summonses were also used to obtain records from Craigslist in a matter involving a Border Patrol agent who allegedly attempted to sell government-issued night vision goggle on the site and in cases where a CBP employee requested sick leave under false pretenses. *Id.* In addition to the unauthorized uses described by the Management Bulletin, the undersigned counsel is aware of numerous other 1509 summonses that were issued to obtain internet provider information such as the summonses in this case. More shockingly, DHS issued a § 1509 summons issued this year to a hotel, requesting copies of all business records including hotel charges for rooms and services, payments made for hotel charges, the payer of all hotel charges, any credit cards used to pay for all hotel charges, and vehicles stored on hotel premises for an identified hotel guest and vehicle.[7]

There is no remedy but the exclusionary rule to restrain the Government's overreach in using § 1509 summonses in this way. The exclusionary rule exists as a court-created tool to combat police misconduct. *See Alderman v. United States*, 394 U.S. 165 (1969); *Olmstead v. United States*, 277 U.S. 438 (1928); *Weeks v. United States*, 232 U.S. 383 (1914); *Boyd v. United States*, 116 U.S. (1886). The exclusionary rule's "prime purpose is to deter future unlawful

[7] The summons described is part of an ongoing case in a different federal jurisdiction and is attached hereto under seal as Exhibit

police conduct." *United States v. Calandra*, 414 U.S. 338 (1974). In *Herring v. United States*, 555 U.S. 135, 143 (2009), the Supreme Court explained that "[t]he extent to which the exclusionary rule is justified by these deterrence principles varies with the culpability of the law enforcement conduct" and quoted *Leon* for the role that "an assessment of the flagrancy of the police misconduct constitute an important step in the calculus" of applying the rule. *Leon*, 468 U.S. at 911. The Court continued that "police conduct must be sufficiently deliberate" such that "exclusion can meaningfully deter it" and "sufficiently culpable that such deterrence is worth the price paid by the justice system" and that "[a]s laid out in our cases, the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." *Herring*, 555 U.S. at 144.

The abuses of the 1509 summonses by the DHS are deliberate and systemic, and not every company or person who is subject to this misuse can afford, as Twitter did, to hire the former Solicitor General of the United States and his colleagues from Wilmer Hale in response. Further, there is precedent for using the exclusionary rule to remedy overreach of an administrative summons. In *United States v. Genser*, 582 F.2d 292 (3rd Cir. 1978), the Third Circuit explained that suppression was the only practical remedy to cure statutory abuse if an administrative summons issued pursuant to 26 U.S.C. § 7602 exceeded the authority of that statute. At the relevant time, § 7602 permitted the Internal Revenue Service to issue summonses to persons to obtain testimony and documents for the limited purpose of "ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax…or collecting any such liability." After *United States v. LaSalle Nat'l Bank*, 437 U.S. 298 (1978), the IRS could not in good faith, by means of a § 7602 summons, gather evidence solely for a criminal investigation. In *Genser*, the Third Circuit

remanded the case to the district court to hold a hearing to determine the purpose for which these particular summonses had been issued. 582 F.2d at 311. In explaining why suppression would be appropriate, the court explained

> If a court determines in the context of enforcement proceedings that a summons was illegally issued, it will deny enforcement of the summons…That summons is no less illegal merely because it escapes detection at the investigatory stage. The prophylactic principles which operate at the enforcement level are equally appropriate to the trial stage, and suppression is the only practical remedy at that point to cure the statutory abuse.

*Id.* at 308.

In another case where the IRS abused its statutory authority the district court dismissed the criminal prosecution *sua sponte*, with prejudice, because it found the IRS had acted with institutional bad faith in gathering evidence for the prosecution. *United States v. Weiss*, 566 F.Supp. 1452 (C.D.Cal. 1983). This court concluded that "[a]ny such criminal use of Civil Summonses is not to be condoned or tolerated by the Judiciary." *Id.* at 1455*; see also United States v. Dahlstrum*, 493 F.Supp. 966, 971-73 (C.D.Cal. 1980) ("this Court feels compelled to dismiss the indictment with prejudice in order to preserve the interests of a taxpayer defendant subjected to this type of governmental misconduct, even though fueled only by 'institutional bad faith' and not any personal bad faith"). DHS has admitted wide-reaching abuse of the § 1509 summons, and there is no recourse but the exclusionary rule to ensure that these abuses do not continue.

## III. The Summonses Also Violate Wellbeloved-Stone's Reasonable Expectation of Privacy in his Online Actions

The Supreme Court has recognized the need to re-examine traditional understandings of privacy in the digital age. For this reason, the Court granted certiorari and heard argument this term in *Carpenter v. United States*, 16-402. *Carpenter* concerns warrantless law enforcement

requests for cellphone location data pursuant to a disclosure order under the Stored Communications Act (SCA). Under the SCA, a disclosure order does not require a finding of probable cause but is contingent upon the government offering "specific and articulable facts showing that there are reasonable grounds to believe" that the records sought "are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). The applications for court orders in the *Carpenter* case requested "[a]ll subscriber information, toll records and call detail records including listed and unlisted numbers dialed or otherwise transmitted to and from [the] target telephones from December 1, 2010 to present" as well as "cell site information for the target telephones at call origination and at call termination for incoming and outgoing calls[.]" *Pet. For Cert.* at 3-4. These applications went on to provide unsworn evidence about a cooperating defendant and the nature of the underlying criminal investigation for Hobbs Act Robbery that was being undertaken.

The Sixth Circuit found that no search had occurred under the Fourth Amendment because the defendant Carpenter had no reasonable expectation of privacy in cell phone location records held by his service provider. The underlying reasoning being that this data was the business record of the service provider, not contents of communications. The Sixth Circuit relied in part on *Smith v. Maryland*, 442 U.S. 735 (1979), reasoning that like the dialed phone numbers conveyed to the phone company in *Smith*, people knowingly expose their location information to their service provider and therefore lack an expectation of privacy in it.

Of course no decision has been issued in *Carpenter*, but there are good reasons to believe that the Court may reform its third-party disclosure doctrine from the 1970s. The Court has signaled this in a number of other recent cases. As Justice Sotomayor noted in *United States v. Jones*:

> it may be necessary to reconsider the premise that an individual has no reasonable expectation of privacy in information voluntarily disclosed to third parties. This approach is ill suited to the digital age, in which people reveal a great deal of information about themselves to third parties in the course of carrying out mundane tasks

123 S. Ct. 945, 957 (2012) (Sotomayor, J., concurring). In *Jones*, the Court unanimously held that tracking a car with a GPS device constituted a Fourth Amendment search – despite the fact that a car's location is disclosed to the public.

This case is different because it does not concern geographic location monitoring. However, Wellbeloved-Stone had a reasonable expectation of privacy in his internet locations and activity. The summonses in this case requested

> the name, address, local and/or long distance telephone number, **connection records or records of session times, duration,** length of service (including start date) and types of service utilized; telephone or instrument number or other subscriber number or identity, including any temporary assigned network address; means of source of payment for such service (including any credit card and/or bank account number), as per HR.3162 effective 10/26/2001. Specifically – Registered user information, **IP login information for past 60 days or last 20 logins available,** email addresses associated with account for the following account: "bijsincville"

The result was a record of every time that Wellbeloved-Stone sent a message through Kik, down to the minute. *See* Ex. D. Wellbeloved-Stone had a reasonable expectation that his identity, the time of day he was engaged in online chats and the number of those chats would be private. The Government has not yet produced what Comcast provided to HSI in response to the summons, but HSI requested the same type of information to which Wellbeloved-Stone had a reasonable expectation of privacy.

This case differs from *Carpenter* in two important ways – first, by using a § 1509 summons, the Government did not even provide "reasonable articulable grounds" to a court to get an order for production. Nothing was required for the Government to request and receive information that allows them to have a digital map of Wellbeloved-Stone's actions online.

Second, Wellbeloved-Stone's reasonable expectation of privacy stems not just from the Fourth Amendment but from the same Stored Communications Act at issue in *Carpenter*. The SCA established specific legal processes that government agencies must follow in order to obtain certain types of information from service providers such as Kik and Comcast that the Government circumvented by using a § 1509 summons. Even to request basic subscriber information—such as the user's name and address—the SCA requires "an administrative subpoena authorized by a Federal or State statute." 18 U.S.C. § 2703(c)(2). The summonses in this case were not valid administrative subpoenas because, among other defects, they vastly exceeded the scope of authority under 19 U.S.C. § 1509. But the summonses also went far beyond basic subscriber information by requesting the precise times and lengths of each user session.

**IV. The Good Faith Exception Does Not Apply**

The good faith exception cannot save the Government's conduct in this case. It is well-established that an exception to the exclusionary rule applies where evidence is obtained in "objectively reasonable good-faith reliance upon a search warrant." *Id.* (citations and internal quotation marks omitted). "Under the good-faith exception, evidence obtained during the execution of a warrant later determined to be deficient is admissible nonetheless, so long as the executing officers' reliance on the warrant was objectively reasonable and in good faith." *United States v. Payne*, 341 F.3d 393, 399 (5th Cir. 2003) (citing *United States v. Leon*, 468 U.S. 897, 921–25, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)). The good-faith exception cannot apply if "the issuing magistrate/judge was misled by information in an affidavit that the affiant knew was false or would have known except for reckless disregard of the truth[.]" *Id.* at 399 (quoting *United States v. Webster*, 960 F.2d 1301, 1307 n.4 (5th Cir. 1992) (per curiam)). "The 'good faith

inquiry is confined to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization.' " *Pope*, 467 F.3d at 917 (*quoting Leon*, 468 U.S. at 922 n.23, 104 S.Ct. 3405).

In this case, the good faith exception should not apply because it is premised on the receipt of a warrant, and there was no warrant. There was no probable cause determination by a judicial officer upon which the Government relied in this case. By attempting an end-run around obtaining a subpoena or complying with the requirements under the CSA, the Government is unable to rely on the good faith exception.

Even if the good faith exception case law could be contorted to apply on these facts, the exception could not apply here because the HIS officer that issued the summonses could not have done so in reasonable reliance that they were justified under § 1509. This is true based on a plain reading of § 1509. As discussed herein, a plain reading of § 1509 does not allow a summons for the information obtained in this case. It is also supported by the Special Agent Internal Operating Procedures for use of these summonses that was issued on April 15, 2016 and that stated that § 1509 summonses authorized "the examination of records to ensure compliance with customs law" and that the summonses could be used to obtain information "related to Title 8 and Title 19 violations" but that "[a]bsent a nexus to a Title 8 or Title 19 violation" the summons "may not be used." Title 8 of course pertains to aliens and nationality related offenses, and Title 19 to customs duties. Neither of which include child sex offenses.

But more egregiously in this case, DHS's internal Special Agent Internal Operating Procedures, issued on April 15, 2016, made it plain that § 1509 summonses authorized only "the examination of records to ensure compliance with customs law," that the summonses "cannot be used in drug-smuggling or export investigation," and that the summonses could only be used to

obtain information "related to Title 8 and Title 19 violations" but that "[a]bsent a nexus to a Title 8 or Title 19 violation" the summons "may not be used." *Id.* at 4. If that was not enough, DHS was certainly on notice as of April 6, 2017, when Twitter filed its complaint for injunctive relief, that use of a § 1907 customs summons for non-customs related documents was overreach and not authorized by statute. The fact that the Department of Homeland Security withdrew its summons the day after the complaint was filed is further evidence of that. What is more, an internal email sent from CBP's Investigative Operations Division to all CBP OPR personnel on May 25, 2017, "clarify[ied] the limited contexts in which Section 1509 Summonses may properly be used" as:

> OPR IOD may utilize a 1509 summons authority in investigations and inquiries involving employee misconduct, but only where such misconduct is connected to the importation, certain exportations, or transportation or storage under bond, of merchandise. In such investigations, OPR may use a 1509 summons to obtain entry records or other records required to be kept under 19 U.S.C. § 1508. **In instances where records are sought from third parties, such as telecommunications providers, social media outlets, and banks, who are not otherwise obligated to keep records pursuant to 1508, the issuance of a 1509 summons requires probable cause to *believe* that the *records relate* to an importation of merchandise that is prohibited. Prior to issuance of a section 1509 summons to a third party, OPR agents are required to consult with the appropriate Associate/Assistance Chief Counsel office.**

Ex A at 3 (emphasis added). Therefore, as of May 25, 2017, DHS interpreted § 1509 to only permit the issuance of summons where an investigation concerned importation of merchandise and not for criminal investigations.

For these reasons, the good faith exception simply does not apply to the summonses that were issued to Kik and Comcast months later in July of 2017.

## CONCLUSION

For the reasons set forth herein, the Court should issue an order pursuant to Fed. R. Crim. P. 12(b)(3) suppressing all evidence obtained, directly or derivatively, from the execution of the 19 U.S.C. § 1509 summonses on Kik and Comcast in this case.

Dated this 18th day of December, 2017

Respectfully submitted,

RICHARD ALAN WELLBELOVED-STONE

By Counsel

Counsel:

/s Lisa M. Lorish
Lisa M. Lorish (VSB No. 81465)
Assistant Federal Public Defender
Office of the Federal Public Defender
401 E. Market St, Ste 106
Charlottesville, VA 22902
Tel (434) 220-3380

## CERTIFICATE OF SERVICE

I hereby certify that on December 18, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: counsel of record; and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants: none.

s/ Lisa M. Lorish

Asst. Federal Public Defender

OFFICE OF INSPECTOR GENERAL

# Management Alert - CBP's Use of Examination and Summons Authority Under 19 U.S.C. § 1509

Homeland Security

November 16, 2017

OIG-18-18

# OFFICE OF INSPECTOR GENERAL

Department of Homeland Security

Washington, DC 20528 / www.oig.dhs.gov

November 16, 2017

MEMORANDUM FOR: Kevin McAleenan
Acting Commissioner
U.S. Customs and Border Protection

FROM: John Roth
Inspector General

SUBJECT: Management Alert – *CBP's Use of Examination and Summons Authority Under 19 U.S.C. § 1509*

For your action is our final management alert, *CBP's Use of Examination and Summons Authority Under 19 U.S.C. § 1509*, prepared by the DHS OIG Special Reviews Group. This final management alert incorporates the management response provided by your office.

The alert contains three recommendations aimed at ensuring that CBP personnel are informed and trained on the appropriate exercise of CBP's examination and summons authority under 19 U.S.C. § 1509. Based on the information provided in CBP's response to the draft alert, we consider Recommendations 1 and 2 resolved and open, and Recommendation 3 unresolved and open.

As prescribed by DHS Directive 077-01, *Follow-Up and Resolution for Office of Inspector General Report Recommendations*, within 90 days of the date of this memorandum, please provide our office with a written update on your corrective action plan and the target completion date for each recommendation. In this update, please identify the parties responsible for implementing the corrective action and provide any other supporting documentation necessary to inform us about the current status of the recommendations. Until your response is received and evaluated, the recommendations will remain open. Please send your written update to Special.Reviews@oig.dhs.gov.

Consistent with our responsibility under the *Inspector General Act of 1978*, as amended, we will provide copies of our report to congressional committees with oversight and appropriation responsibility over DHS. We will post the report on our website for public dissemination.

Please call me with any questions, or your staff may contact Diana Shaw, Director of the Special Reviews Group, at (202) 254-4100.

## Background

On March 14, 2017, the U.S. Customs and Border Protection (CBP) Office of Professional Responsibility (OPR) issued a summons to Twitter, Inc. (Twitter) purportedly pursuant to its authority under 19 U.S.C. § 1509. The summons sought "[a]ll records regarding the twitter account @ALT_USCIS to include, User names, account login, phone numbers, mailing addresses, and I.P. addresses." On April 6, 2017, Twitter filed a complaint against CBP in federal court claiming the summons exceeded the scope of CBP's authority under 19 U.S.C. § 1509. Twitter further accused CBP of attempting to "unmask" the @ALT_USCIS anonymous speaker and infringing upon his or her First Amendment rights. On April 7, 2017, CBP withdrew the summons, and Twitter subsequently dismissed its complaint.

In the course of investigating the circumstances surrounding these events, the Department of Homeland Security (DHS) Office of Inspector General (OIG) identified issues concerning CBP's policies and practices with respect to summonses issued pursuant to 19 U.S.C. § 1509 (Section 1509 Summonses). As described further below, lack of clear guidance on the proper use of Section 1509 Summonses has resulted in inconsistent — and, in some cases, improper — use of such summonses. While we understand that CBP has taken steps to clarify the guidance, CBP can and should do more to ensure that its personnel are properly informed and educated about the appropriate use of Section 1509 Summonses.

### *CBP OPR's Use of a Section 1509 Summons in the @ALT_USCIS Case*

CBP issued the summons to Twitter regarding the @ALT_USCIS account for the purpose of identifying the owner of the account. CBP took the position that it needed this information in order to "insur[e] compliance with the laws of the United States administered by the [Service]" — *i.e.*, to investigate possible criminal violations by CBP officials, including murder, theft, and corruption.

However, Subtitle III, Part III of Title 19 — under which Section 1509 falls — addresses ascertainment, collection, and recovery of *customs duties*. Specifically, section 1509(a)(1) authorizes the U.S. Customs Service[1] (Service) to examine, or cause to be examined, any "record" that

[1] Pursuant to Section 403(1) of the *Homeland Security Act of 2002*, the functions, personnel, assets, and liabilities of the U.S. Customs Service were transferred from the Secretary of the Treasury to the Secretary of Homeland Security. DHS Delegation Number 7010.3 delegates to the CBP Commissioner, and through him to his officers and CBP employees, all rights, privileges, powers, and duties previously enforced or

may be relevant to an investigation or inquiry conducted by the Service for the purpose of (1) ascertaining the correctness of any entry [of merchandise]; (2) determining the liability of any person for duties, fees, and taxes due to the United States; (3) determining liability for fines and penalties; or (4) "insuring compliance with the laws of the United States administered by the [Service]."

Section 1509(d) details special procedures for issuing summonses to third parties. Section 1509(d)(1)(A) limits the scope of third-party summonses to "records" pertaining to prohibited merchandise, or records required to be kept under 19 U.S.C. § 1508. Section 1508 defines "records" as documents pertaining to the importation of merchandise into the customs territory of the United States, the filing of a draw-back claim, or the transportation and storage of merchandise carried or held under bond.

CBP's purpose in issuing the summons to Twitter was unrelated to the importation of merchandise or the assessment and collection of customs duties. Accordingly, CBP may have exceeded the scope of its authority under Section 1509 when it issued the summons to Twitter, a fact CBP OPR appeared to tacitly acknowledge when, on May 25, 2017, the Executive Director of CBP OPR's Investigative Operations Division (IOD) emailed CBP OPR personnel clarifying the limited contexts in which Section 1509 Summonses may properly be used:

> In the upcoming revised IOP, there will be additional information included to assist you and your agents navigate Title 8 and 19 summonses. In addition, the Commissioner has asked we change the review process. Until those details are finalized, I wanted to give you supplemental guidance regarding the issuance of summonses under 19 U.S.C § 1509 in criminal and administrative investigations involving employee misconduct. OPR IOD may utilize a 1509 summons authority in investigations and inquiries involving employee misconduct, but only where such misconduct is connected to the importation, certain exportations, or transportation or storage under bond, of merchandise. In such investigations, OPR may use a 1509 summons to obtain entry records or other records required to be kept under 19 U.S.C. § 1508. In instances where records are sought from third parties, such as telecommunications providers, social media outlets, and banks, who are not otherwise obligated to keep records pursuant to 1508, the issuance of a 1509 summons requires probable cause to *believe* that the *records relate* to an importation of merchandise that is prohibited. Prior to issuance of a section 1509 summons to a third party, OPR agents are required to consult with the appropriate Associate/Assistant Chief Counsel office.

(*emphasis added*)

The guidance communicated in this email brings CBP OPR's policy on the use of Section 1509 Summonses in line with the purpose and language of Title 19, and should assist CBP OPR personnel in determining when such summonses may properly be used. However, we

---

administered by the U.S. Customs Service, including the summons authority provided under 19 U.S.C. § 1509.

understand that this email guidance is not yet reflected in CBP OPR's official operating policies or procedures. Specifically, as explained below, we understand that CBP OPR has not updated its Special Agent Internal Operating Procedures (IOP) to communicate this guidance on the proper use of Section 1509 Summonses, including the new legal review process.

*CBP OPR's Policy and Practice Regarding Use of Section 1509 Summonses*

CBP exercises its examination and summons authority under 19 U.S.C. §1509 using summons form DHS 3115, "Summons to Appear and/or Produce Records, 19 U.S.C. § 1509." CBP OPR's Special Agent Internal Operating Procedures sets forth the agency's policy with respect to the use of DHS 3115 / Section 1509 Summonses. Chapter 10.1 of the most recent version of the IOP, issued on April 15, 2016, states the following:

> **DHS Summons to Appear and/or Produce Records (DHS 3115)**
>
> SAs will utilize the DHS 3115 to obtain information related to Title 8 and Title 19 violations. This form may not be modified or updated in any manner. Absent a nexus to a Title 8 or Title 19 violation, the DHS 3115 may not be used. Coordinate with the AUSA or state/local prosecutor on use of the DHS 3115.
>
> This type of summons authorizes the examination of records to ensure compliance with customs law. As the DHS 3115 form, itself, specifies, it may be utilized "in connection with an investigation or inquiry to ascertain the correctness of entries, to determine the liability for duties, taxes, fines, penalties or forfeitures, and/or to insure compliance with the laws or regulations administered by CBP and ICE."
>
> The DHS 3115 cannot be used in drug-smuggling or export investigations. If the investigation does not meet these limited criteria, the use of the DHS 3115 is not authorized.

Data provided by CBP to DHS OIG indicates that DHS 3115 regularly has been used by CBP OPR personnel in violation of the policy. For instance, despite the express prohibition against use of DHS 3115 in drug-smuggling cases, CBP OPR used DHS 3115 in at least 43 drug-smuggling cases between January 2015 and May 2017, representing approximately 20% of the total summonses issued by CBP OPR during this period. Based on this data, it appears CBP OPR's use of DHS 3115 during this period violated its own policy at least 1 out of every 5 times.

This same data reflects the use of DHS 3115 summonses in other questionable contexts. For instance, a DHS 3115 summons was used to obtain records from Craigslist in a matter involving a Border Patrol agent who allegedly attempted to sell government-issued night vision goggles on the site. Similarly, a DHS 3115 summons was used in several cases in which a CBP employee requested sick leave under false pretenses. It is difficult to see how such employee misconduct bears a nexus to Title 8

(aliens and nationality) or Title 19 (customs duties), as required by CBP OPR policy.

This evidence demonstrates a lack of understanding of the proper use of DHS 3115 / Section 1509 Summonses on the part of CBP OPR personnel. It indicates that these summonses are being used to obtain records — including records from third parties — in a wide range of cases having no nexus to Title 8 or Title 19. Such uses violate CBP OPR's stated policy and potentially open up the agency to legal challenges, as in the @ALT_USCIS case.

## Recommendations

**Recommendation 1:** We recommend that CBP update the Special Agent Internal Operating Procedures immediately to reflect the guidance on the use of Section 1509 Summonses provided in the May 25, 2017 email referenced in this report from the Executive Director of CBP OPR's Investigative Operations Division.

**Recommendation 2:** We recommend that relevant CBP personnel receive training on the proper use of Section 1509 Summonses as soon as practicable.

**Recommendation 3:** We recommend that CBP look at use of Section 1509 Summonses across the agency to determine how such summonses are being used, and whether such uses comport with the law and CBP's updated policy.

## Management Comments and OIG Analysis

CBP concurred with the recommendations and provided comments to the draft alert. A summary of CBP's response and our analysis follows. We have included a copy of CBP's management response in its entirety in Appendix A. CBP also provided technical comments to the alert. We made changes to incorporate these comments, where appropriate.

CBP has taken, and is continuing to take, corrective action to address the issues raised in this alert. Specifically, CBP informed us that, between April and June 2017, CBP OPR delivered both verbal and written guidance to OPR agents at headquarters and field offices relating to the issuance of Section 1509 Summonses / DHS 3115. These updates were followed by training for OPR Special Agents in Charge (SACs) in July 2017. CBP further informed us that it will revise its IOP to reflect the updated guidance on the issuance of DHS 3115. Once the updated IOP is released, training will be provided to OPR SAC Offices.

Finally, CBP has created a CBP-wide working group to review and update the current CBP Directive on the Examination and Summons Authority Under 19 U.S.C. § 1509 to ensure that it reflects the updated guidance on the proper use of Section 1509 Summonses.

**Response to Recommendation #1: Concur.** CBP agreed to issue a revised IOP by April 30, 2018, which will include updated guidance on the issuance of Section 1509 Summonses / DHS 3115. The revised IOP will provide guidance on the issuance of Section 1509 Summonses

consistent with the guidance provided in the May 25, 2017 email from the Executive Director of CBP OPR's IOD. The revised IOP will also lay out a multi-level approval process for Section 1509 Summonses, which includes preliminary review by an OPR SAC, legal review by an Associate or Assistant Chief Counsel, review by the IOD Executive Director, and approval by the CBP OPR Assistant Commissioner.

While awaiting issuance of the revised IOP, CBP has taken steps to disseminate information about the updated guidance and new approval process to relevant CBP OPR personnel. This included issuing verbal and written guidance between April and June 2017.

**OIG Analysis of CBP's Response:** CBP concurred with our recommendation and provided copies of the written guidance already provided to CBP OPR personnel on the appropriate use of Section 1509 Summonses / DHS 3115. However, this recommendation will remain open and resolved until CBP OPR issues a revised IOP reflecting the updated guidance.

**Response to Recommendation #2: Concur.** CBP agreed to provide training to all OPR SAC Offices following issuance of the revised IOP, which will include training on the updated guidance regarding issuance of Section 1509 Summonses / DHS 3115. CBP also conducted training with all OPR SACs in July 2017 on the appropriate use of Section 1509 Summonses / DHS 3115.

**OIG Analysis of CBP's Response:** CBP concurred with our recommendation and provided a copy of the training materials used to train OPR SACs in July 2017 on the appropriate use of Section 1509 Summonses / DHS 3115. The guidance provided in the training materials is consistent with the guidance provided in the May 25, 2017 email from the Executive Director of CBP OPR's IOD. However, this recommendation will remain open and resolved until CBP OPR completes the training it intends to conduct at all OPR SAC Offices following issuance of the revised IOP.

**Response to Recommendation #3: Concur.** On May 5, 2017, CBP created a CBP-wide working group to update the CBP Directive on the Examination and Summons Authority Under Title 19 U.S.C. § 1509 (Directive). The working group updated the Directive to reflect the current use of the examination and summons authority by various offices within CBP, and included a new training requirement for offices across CBP on the proper use of Section 1509 Summonses. The Directive is in final draft and is currently out for review and comment by all impacted CBP Offices.

**OIG Analysis of CBP's Response:** CBP concurred with our recommendation and provided a copy of the final draft version of the updated Directive. One sub-section of the draft Directive specifically addresses summonses issued to third parties pursuant to 19 U.S.C. § 1509, including social media outlets like Twitter. The sub-section specifies that if the requested records are not required to be kept under 19 U.S.C. § 1508, such summonses may be issued only if CBP has probable cause to believe the requested records pertain to merchandise the importation of which into the U.S. is prohibited. This instruction is consistent with the guidance provided in the May 25, 2017 email from the Executive Director of CBP OPR's IOD. A separate section of the draft Directive also requires CBP Offices to provide training to employees on best practices associated with the issuance of the 1509 summons.

While the draft Directive addresses the concerns reflected in Recommendations 1 and 2 of this alert, it does not address Recommendation 3. Recommendation 3 calls on CBP to review how its personnel have been using Section 1509 Summonses to determine whether such summonses are consistently being used in compliance with the law and CBP's updated policy. Accordingly, this recommendation will remain unresolved and open until CBP provides evidence that it has conducted this retrospective review.

## Authorities

This management alert reflects work performed by the DHS OIG Special Reviews Group pursuant to Section 2 of the *Inspector General Act of 1978*, as amended. Specifically, this management alert provides information about the inconsistent and improper use of Section 1509 Summonses by CBP OPR for the purpose of keeping the Secretary of DHS and Congress fully and currently informed about problems and deficiencies relating to the administration of DHS programs and operations and the necessity for and progress of corrective action. This management alert is designed to promote the efficient and effective administration of, and to prevent and detect fraud and abuse in, the programs and operations of DHS.

## Appendix A
## CBP Response to the Alert

1300 Pennsylvania Avenue NW
Washington, DC 20229

U.S. Customs and Border Protection

OCT 2 7 2017

MEMORANDUM FOR: John Roth
Inspector General
Department of Homeland Security

FROM: Sean M. Mildrew
Senior Component Accountable Official
U.S. Customs and Border Protection

SUBJECT: Management's Response to OIG Draft Management Alert: "CBP's Use of Summons Authority" (Project No. 17-SRG-3)

Thank you for the opportunity to review and comment on this draft report. U.S. Customs and Border Protection (CBP) appreciates the work of the Office of Inspector General (OIG) in planning and conducting its review and issuing this report.

The CBP Office of Professional Responsibility's (OPR) intent has always been, and will continue to be, to utilize every lawful tool at its disposal to aggressively investigate allegations of criminal or serious misconduct on the part of CBP officers, agents or other employees. Guidance regarding the use of Section 1509 Summonses, as reflected in the OPR Special Agent Internal Operating Procedures (IOP), dated April 15, 2016, is consistent with that intent.

In May 2017, as referenced in OIG's draft alert, OPR headquarters issued new written guidance to its Special Agents in Charge on the use of Section 1509 Summonses. The new policy, presently in effect, requires that all summons requests undergo a legal sufficiency review and receive final written approval by the Assistant Commissioner of OPR prior to issuance. The new policy guidance will be incorporated into an updated IOP.

The draft report contained three recommendations, with which CBP concurs. Attached find CBP's detailed response to each recommendation.

Again, thank you for the opportunity to review and comment on this draft report. Technical comments were previously provided under separate cover. Please feel free to contact me if you have any questions. We look forward to working with you in the future.

Attachment

## Attachment: Management Response to the Office of Inspector General (OIG) Draft Management Alert: "*CBP's Use of Summons Authority*" (Project No. 17-SRG-3)

The OIG recommended that CBP:

**Recommendation 1:** Update the Special Agent Internal Operating Procedures immediately to reflect the guidance on the use of Section 1509 Summonses provided in the May 25, 2017 email referenced in this report from the Executive Director of CBP OPR's Investigative Operations Division.

**Response:** Concur. CBP's Office of Professional Responsibility (OPR) has initiated a three pronged approach for immediate corrective action. The first prong commenced in April 2017, when CBP OPR delivered verbal guidance to OPR agents at headquarters and field offices on the issuance of the Customs Summons. The guidance included the requirement to obtain concurrence from the CBP Office of Chief Counsel (OCC) prior to issuance of any Customs Summons. The second prong for immediate corrective action was completed in May 2017, when CBP OPR provided additional written guidance to OPR agents related to the issuance of the Customs Summons. Lastly, the third prong for immediate corrective action was finalized in June 2017. CBP OPR released written guidance to OPR agents on the issuance of the DHS 3115, Customs Summons, and Immigration Enforcement Subpoena to Appear and/or Produce Records (Title 8 USC § 1225(d)), requiring final approval from the Assistant Commissioner of OPR on all requests.

The guidance also includes a three level approval process. First, OPR Special Agents in Charge (SAC) will review all summons and subpoenas and supporting documentation to ensure compliance with applicable authorities and policies, prior to submission to OCC. Next, the appropriate Associate or Assistant Chief Counsel (ACC) office will review the requests for legal sufficiency and provide a recommendation regarding issuance of the subpoena or summons. Lastly, the OPR SAC will ensure a copy of the summons or subpoena and ACC's legal review and recommendation are forwarded to IOD Headquarters for review by the IOD Executive Director and approval by the CBP OPR Assistant Commissioner. In addition, CBP OPR is revising the Investigative Operations Division (IOD) Internal Operating Procedures (IOP) 2.0, and expects to issue the updated guidance no later than April 30, 2018. The IOP 2.0 will include the revised and updated guidance on the issuance of the DHS 3115.

Estimated Completion Date (ECD): April 30, 2018

**Recommendation 2:** Relevant CBP personnel receive training on the proper use of Section 1509 Summonses as soon as practicable.

**Response:** Concur. In July 2017, all OPR SACs were provided updated training from CBP OCC on the authority and issuance of the DHS 3115, pursuant Title 19 U.S.C. § 1509, as it relates to CBP OPR. Additionally, once the IOP 2.0 is released, OPR anticipates conducting an

IOP 2.0 Training to all of the OPR SAC Offices. The training will cover every chapter of IOP 2.0, to include the updated guidance on the issuance of the DHS 3115 Summons.

ECD: May 30, 2018

**Recommendation 3:** Look at use of Section 1509 Summonses across the agency to determine how such summonses are being used, and whether such uses comport with the law and CBP's updated policy.

**Response:** Concur. On May 5, 2017, CBP created a CBP-wide working group, spearheaded by CBP OCC, to update the CBP Directive on the Examination and Summons Authority under Title 19 U.S.C. § 1509. The working group reviewed the existing CBP Directive and has revised it to reflect the current use of the summons authority by various offices within CBP. The CBP Directive will also include a training requirement for offices across the agency on proper use of Section 1509 summonses. The CBP Directive is in final draft and pending review and comment from all impacted CBP Offices.

ECD: May 30, 2018

# Appendix B
# Report Distribution

**Department of Homeland Security**

Secretary
Deputy Secretary
Chief of Staff
Deputy Chiefs of Staff
General Counsel
Executive Secretary
Director, GAO-OIG Liaison Office
Assistant Secretary for Office of Policy
Assistant Secretary for Office of Public Affairs
Assistant Secretary for Office of Legislative Affairs

**U.S. Customs and Border Protection**

Commissioner
Assistant Commissioner, Office of Professional Responsibility
Audit Liaison Office

**Office of Management and Budget**

Chief, Homeland Security Branch
DHS OIG Budget Examiner

**Congress**

Congressional Oversight and Appropriations Committees

## Additional Information and Copies

To view this and any of our other reports, please visit our website at: www.oig.dhs.gov.

For further information or questions, please contact Office of Inspector General Public Affairs at: DHS-OIG.OfficePublicAffairs@oig.dhs.gov.
Follow us on Twitter at: @dhsoig.

## OIG Hotline

To report fraud, waste, or abuse, visit our website at www.oig.dhs.gov and click on the red "Hotline" tab. If you cannot access our website, call our hotline at (800) 323-8603, fax our hotline at (202) 254-4297, or write to us at:

Department of Homeland Security
Office of Inspector General, Mail Stop 0305
Attention: Hotline
245 Murray Drive, SW
Washington, DC 20528-0305

HSI International Affairs
American Embassy London
Unit 8400 Box 52
DPO, AE 09498-0052

U.S. Immigration and Customs Enforcement

# Cover Sheet

**Date** 7/14/2017

**To:** Kik Interactive, Inc.
Subpoena Compliance
Custodian of Records
420 Weber Street North
Suite I
Waterloo, ON N2L 4E7
519-883-7368

**Electronic Service Methods:**

**Fax:** (Not available)

**E-Mail:** lawenforcement@kik.com

**From:** Mark J. Zivilik

**Phone:** +44 207-894-0780

☐ Urgent ☒ Action ☐ Concurrence ☐ FYI

**Number of pages including cover:** 4

Comments:

Attached is summons #: ICE-OIA-LN-2017-00203.

Please respond by July 28, 2017.

| 1. To (Name, Address, City, State, Zip Code) | DEPARTMENT OF HOMELAND SECURITY |
|---|---|
| Kik Interactive, Inc.<br>Subpoena Compliance<br>Custodian of Records<br>420 Weber Street North<br>Suite I<br>Waterloo, ON N2L 4E7 | **SUMMONS**<br>**to Appear and/or Produce Records**<br>19 U.S.C. § 1509 |

Summons Number ICE-OIA-LN-2017-00203

By the service of this summons upon you, **YOU ARE HEREBY SUMMONED AND REQUIRED TO:**

(A) ☐ **APPEAR** before the U.S. Customs and Border Protection (CBP) Officer or U.S. Immigration and Customs Enforcement (ICE) Special Agent named in Block 2 at the place, date and time indicated to testify and give information.

(B) ☒ **PRODUCE** the records (including statements, declarations, and other documents) indicated in Block 3 before the CBP Officer or ICE Special Agent named in Block 2 at the place, date and time indicated.

Your testimony and/or production of the indicated records is required in connection with an investigation or inquiry to ascertain the correctness of entries, to determine the liability for duties, taxes, fines, penalties, or forfeitures, and/or to ensure compliance with the laws or regulations administered by CBP and ICE.

Failure to comply with this summons will render you liable to proceedings in a U.S. District Court to enforce compliance with this summons as well as other sanctions.

2. (A) CBP Officer or ICE Special Agent before whom you are required to appear

| | |
|---|---|
| Name | Mark J. Zivilik |
| Title | Criminal Investigator, FSN |
| Address | HSI International Affairs<br>American Embassy London<br>Unit 8400 Box 52<br>DPO, AE 09498-0052 |
| Telephone Number | +44 207-894-0780 Fax Number (Not available) |

(B) Date

July 28, 2017

(C) Time

9:00 AM

3. Records required to be produced for inspection

Please see attached continuation page.

*You are requested not to disclose the existence of this summons for an indefinite period of time. Any such disclosure will impede this investigation and thereby interfere with the enforcement of federal law.*

Issued under authority of section 509, Tariff Act of 1930, as amended by Pub. L. No. 95-410 (19 U.S.C. § 1509), 44 F.R. 2217; Homeland Security Act of 2002

4. Name of person authorized to serve this summons or any other CBP Officer or ICE Special Agent

Mark J. Zivilik

5. Date of issue

By [signature] 7/14/17 07/14/2017

(Signature)

If you have any questions regarding this summons, contact the CBP Officer or ICE Special Agent identified in Block 2.

6. Name, title, address and telephone number of person issuing this summons

| | |
|---|---|
| Name | Michael S. Crabb |
| Title | Deputy Attaché |
| Address | HSI International Affairs<br>American Embassy London<br>Unit 8400 Box 52<br>DPO, AE 09498-0052 |
| Telephone Number | +44 778-972-1131 |

DHS Form 3115 (6/09)

## CERTIFICATE OF SERVICE AND ACKNOWLEDGMENT OF RECEIPT

### A. CERTIFICATE OF SERVICE OF SUMMONS

I certify that I served the summons on the front of this form as follows:

| | | |
|---|---|---|
| ☐ I delivered a copy of the summons to the person to whom it was directed, as follows: | Address or Location | Date<br>Time<br>☐ a.m. ☐ p.m. |
| ☐ (For corporations, partnerships, and unincorporated associations which may be sued under a common name)<br>I delivered a copy of the summons to an officer, managing or general agent, or agent authorized to accept service of process as follows: | Address or Location<br>Name of person to whom the summons was delivered | Date<br>Time<br>☐ a.m. ☐ p.m. |
| Signature | | |
| Title | | Date |

### B. ACKNOWLEDGMENT OF RECEIPT

I acknowledge receipt of a copy of the summons on the front of this form.

| | | |
|---|---|---|
| Signature | | |
| Title | Date | Time ☐ a.m. ☐ p.m. |

DHS Form 3115 (6/09)

| 1. To (Name, Address, City, State, Zip Code)<br>Kik Interactive, Inc.<br>Subpoena Compliance<br>Custodian of Records<br>420 Weber Street North<br>Suite I<br>Waterloo, ON N2L 4E7 | DEPARTMENT OF HOMELAND SECURITY<br><br>**SUMMONS (Continuation)**<br><br>**to Appear and/or Produce Records**<br>19 U.S.C. § 1509 |
|---|---|

Summons Number ICE-OIA-LN-2017-00203

3. Records required to be produced for inspection (continued)

Records required to be produced for inspection Pursuant to an investigation being conducted by the Department of Homeland Security, your office is requested to provide the name, address, local and/or long distance telephone number, connection records or records of session times, duration, length of service (including start date) and types of service utilized; telephone or instrument number or other subscriber number or identity, including any temporary assigned network address; means of source of payment for such service (including any credit card and/or bank account number), as per HR.3162 effective 10/26/2001.

Specifically – Registered user information, IP login information for past 60 days or last 20 logins available, email addresses associated with account for the following account:

"bijsincville"

[redacted]

[redacted]

[redacted]

You are requested not to disclose the existence of this summons for an indefinite period of time. Any such disclosure will impede this investigation and thereby interfere with the enforcement of federal law. Issued under authority of section 509, Tariff Act of 1930, as amended by Public law 95-410 (19 U.S.C. § 1509); 44 F.R. 2217; Homeland Security Act of 2002

**Method of Response:**

**Preferred:**

Return the requested records in an accessible data file format such as ".XLS", ".CSV", ".TXT", or ".PDF". The data file(s) should be delivered via e-mail to Criminal Investigator, FSN Mark J. Zivilik at Mark.Zivilik@associates.ice.dhs.gov.

NOTE: The ICE e-mail system limits incoming messages containing file attachments to 10 MB. For larger files send the summons response in multiple e-mail messages.

**Alternates:**

The records should be delivered to Criminal Investigator, FSN Mark J. Zivilik at U.S. Immigration and Customs Enforcement, HSI International Affairs, American Embassy London, Unit 8400 Box 52, DPO, AE 09498-0052.

If you have questions, please contact Criminal Investigator, FSN Mark J. Zivilik at +44 207-894-0780.

*You are requested not to disclose the existence of this summons for an indefinite period of time. Any such disclosure will impede this investigation and thereby interfere with the enforcement of federal law.*

End of Document

kik•

KIK INTERACTIVE, INC. RESPONSE TO REQUEST FOR SUBSCRIBER DATA DATED: **2017/07/17**

Please find below the most basic subscriber information, as well as the most recent IP addresses.

Please note that the requested data may not be available for Kik users who have been inactive for the past 30 days or if the requested date range is outside of 30 days prior to the date of this report.

**PLEASE NOTE:** A glossary of terms will be provided, which includes an explanation of the terms and data included in this response.

**Metrics:**

Date: July 17, 2017

First Name: Jack

Last Name: Smith

Email: bijsincville@gmail.com (unconfirmed)

Username: bijsincville

| | |
|---|---|
| 2017/03/31 14:56:24 UTC PROFILE_PIC_URL | http://profilepics.kik.com/1BVgOYY1AqzuX9LxGKUz8z69090/orig.jpg (107662 bytes) - original MD5: A3B4146952D15AD8A8D3AF8BAAC47B52, scale MD5: B72A12CAE184B7E12ED0F716A035A237 |
| 2017/03/31 14:56:24 UTC PROFILE_PIC_URL | http://profilepics.kik.com/1BVgOYY1AqzuX9LxGKUz8z69090/thumb.jpg (3126 bytes) - original MD5: A3B4146952D15AD8A8D3AF8BAAC47B52, scaled MD5: 6F6A079070DEC6D44027A78F46D48DFB |
| 2016/08/11 15:32:19 UTC USER_LOCALE | en |
| 2016/08/11 15:32:19 UTC REGISTRATION_TIMESTAMP | 2016/08/11 10:32:19 |
| 2017/07/16 17:41:42 UTC CLIENT_VERSION | 11.25.1.18443 |

Wellbeloved-Stone-142

| | | | |
|---|---|---|---|
| 2016/08/11 15:32:19 UTC | REGISTRATION_EMAIL | | REGISTRATION_EMAIL="bijsincville@gmail.com" |
| 2017/01/27 18:43:13 UTC | REGISTRATION_CLIENT_INFO | | country-code=US |
| 2017/01/27 18:43:13 UTC | REGISTRATION_CLIENT_INFO | | device-type=iphone |
| 2017/01/27 18:43:13 UTC | REGISTRATION_CLIENT_INFO | | enterprise=false |
| 2017/01/27 18:43:13 UTC | REGISTRATION_CLIENT_INFO | | model=iPhone |
| 2017/01/27 18:43:13 UTC | REGISTRATION_CLIENT_INFO | | prefix=CIP |
| 2017/01/27 18:43:13 UTC | REGISTRATION_CLIENT_INFO | | system-version=10.2 |
| 2017/01/27 18:43:13 UTC | REGISTRATION_CLIENT_INFO | | version=11.4.1.14599 |
| 2016/08/11 15:32:19 UTC | REGISTRATION_CLIENT_INFO | | lang=en |
| 2017/07/16 17:41:42 UTC | USER_LOCATION | | US (tz: America/New_York, ip: 76.120.226.19) |

[illegible]ville VA - Comcast.

| Date/time | Timestamp | Device | Extra data |
|---|---|---|---|
| 2017/06/21 14:44:47 UTC | 1498056287306 | CIP | "ip":"66.87.77.136", "remotePort":"2777", "chatNetwork":"Unknown" |
| 2017/06/22 13:44:58 UTC | 1498139098536 | CIP | "ip":"76.120.226.19", "remotePort":"63435", "chatNetwork":"Unknown" |
| 2017/06/22 14:46:47 UTC | 1498142807759 | CIP | "ip":"76.120.226.19", "remotePort":"64203", "chatNetwork":"Unknown" |
| 2017/06/22 14:51:58 UTC | 1498143118074 | CIP | "ip":"76.120.226.19", "remotePort":"64215", "chatNetwork":"Unknown" |
| 2017/06/22 14:56:01 UTC | 1498143361636 | CIP | "ip":"76.120.226.19", "remotePort":"64231", "chatNetwork":"Unknown" |
| 2017/06/22 15:04:23 UTC | 1498143863080 | CIP | "ip":"76.120.226.19", "remotePort":"64259", "chatNetwork":"Unknown" |
| 2017/06/22 15:22:04 UTC | 1498144924209 | CIP | "ip":"76.120.226.19", "remotePort":"64274", "chatNetwork":"Unknown" |
| 2017/06/22 15:48:56 UTC | 1498146536840 | CIP | "ip":"76.120.226.19", "remotePort":"64570", "chatNetwork":"Unknown" |
| 2017/06/22 16:00:33 UTC | 1498147233238 | CIP | "ip":"76.120.226.19", "remotePort":"64595", "chatNetwork":"Unknown" |
| 2017/06/22 16:00:48 UTC | 1498147248159 | CIP | "ip":"76.120.226.19", "remotePort":"64599", "chatNetwork":"Unknown" |
| 2017/06/22 16:01:00 UTC | 1498147260873 | CIP | "ip":"76.120.226.19", "remotePort":"64603", "chatNetwork":"Unknown" |
| 2017/06/22 16:01:52 UTC | 1498147312028 | CIP | "ip":"76.120.226.19", "remotePort":"64610", "chatNetwork":"Unknown" |
| 2017/06/22 16:02:04 UTC | 1498147324153 | CIP | "ip":"76.120.226.19", "remotePort":"64613", "chatNetwork":"Unknown" |

Sprint PCS

Wellbeloved-Stone-143

2017/06/22 16:02:29 UTC 1498147349564 CIP "ip":"76.120.226.19", "remotePort":"64616", "chatNetwork":"Unknown"
2017/06/22 16:02:58 UTC 1498147378909 CIP "ip":"76.120.226.19", "remotePort":"64626", "chatNetwork":"Unknown"
2017/06/22 16:03:22 UTC 1498147402958 CIP "ip":"76.120.226.19", "remotePort":"64628", "chatNetwork":"Unknown"
2017/06/22 16:13:46 UTC 1498148026149 CIP "ip":"76.120.226.19", "remotePort":"64645", "chatNetwork":"Unknown"
2017/06/22 16:14:15 UTC 1498148055187 CIP "ip":"76.120.226.19", "remotePort":"64661", "chatNetwork":"Unknown"
2017/06/22 16:14:48 UTC 1498148088134 CIP "ip":"76.120.226.19", "remotePort":"64665", "chatNetwork":"Unknown"
2017/06/22 16:15:03 UTC 1498148103891 CIP "ip":"76.120.226.19", "remotePort":"64668", "chatNetwork":"Unknown"
2017/06/22 16:16:38 UTC 1498148198554 CIP "ip":"66.87.73.72", "remotePort":"24085", "chatNetwork":"Unknown"
2017/06/22 16:17:02 UTC 1498148222207 CIP "ip":"76.120.226.19", "remotePort":"64675", "chatNetwork":"Unknown"
2017/06/22 16:30:37 UTC 1498149037740 CIP "ip":"76.120.226.19", "remotePort":"64809", "chatNetwork":"Unknown"
2017/06/22 16:58:32 UTC 1498150712732 CIP "ip":"76.120.226.19", "remotePort":"64855", "chatNetwork":"Unknown"
2017/06/22 17:02:31 UTC 1498150951959 CIP "ip":"76.120.226.19", "remotePort":"64862", "chatNetwork":"Unknown"
2017/06/22 17:14:02 UTC 1498151642701 CIP "ip":"76.120.226.19", "remotePort":"64887", "chatNetwork":"Unknown"
2017/06/22 17:54:18 UTC 1498154058505 CIP "ip":"66.87.73.72", "remotePort":"17482", "chatNetwork":"Unknown"
2017/06/22 18:15:00 UTC 1498155300552 CIP "ip":"66.87.73.72", "remotePort":"29659", "chatNetwork":"Unknown"
2017/06/23 15:55:20 UTC 1498233320368 CIP "ip":"76.120.226.19", "remotePort":"50951", "chatNetwork":"Unknown"
2017/06/23 16:05:30 UTC 1498233930460 CIP "ip":"76.120.226.19", "remotePort":"51203", "chatNetwork":"Unknown"
2017/06/23 16:32:32 UTC 1498235552558 CIP "ip":"66.87.77.107", "remotePort":"28453", "chatNetwork":"Unknown"
2017/06/23 17:41:46 UTC 1498239706368 CIP "ip":"66.87.77.107", "remotePort":"30610", "chatNetwork":"Unknown"
2017/06/23 18:10:04 UTC 1498241404661 CIP "ip":"76.120.226.19", "remotePort":"53068", "chatNetwork":"Unknown"
2017/06/23 19:32:02 UTC 1498246322078 CIP "ip":"76.120.226.19", "remotePort":"53327", "chatNetwork":"Unknown"
2017/06/24 13:32:53 UTC 1498311173544 CIP "ip":"66.87.77.107", "remotePort":"16810", "chatNetwork":"Unknown"
2017/06/24 17:14:59 UTC 1498324499284 CIP "ip":"76.120.226.19", "remotePort":"57474", "chatNetwork":"Unknown"
2017/06/25 00:47:52 UTC 1498351672632 CIP "ip":"76.120.226.19", "remotePort":"58358", "chatNetwork":"Unknown"
2017/06/25 00:51:18 UTC 1498351878968 CIP "ip":"76.120.226.19", "remotePort":"58368", "chatNetwork":"Unknown"


Wellbeloved-Stone-144

| | |
|---|---|
| 2017/06/25 00:53:21 UTC 1498352001468 CIP | "ip":"76.120.226.19", "remotePort":"58375", "chatNetwork":"Unknown" |
| 2017/06/25 00:54:10 UTC 1498352050174 CIP | "ip":"76.120.226.19", "remotePort":"58379", "chatNetwork":"Unknown" |
| 2017/06/25 00:55:16 UTC 1498352116094 CIP | "ip":"76.120.226.19", "remotePort":"58388", "chatNetwork":"Unknown" |
| 2017/06/25 00:56:26 UTC 1498352186448 CIP | "ip":"76.120.226.19", "remotePort":"58398", "chatNetwork":"Unknown" |
| 2017/06/25 00:58:19 UTC 1498352299340 CIP | "ip":"76.120.226.19", "remotePort":"58425", "chatNetwork":"Unknown" |
| 2017/06/25 01:02:23 UTC 1498352543504 CIP | "ip":"76.120.226.19", "remotePort":"58429", "chatNetwork":"Unknown" |
| 2017/06/25 01:02:49 UTC 1498352569283 CIP | "ip":"76.120.226.19", "remotePort":"58433", "chatNetwork":"Unknown" |
| 2017/06/25 01:03:30 UTC 1498352610103 CIP | "ip":"76.120.226.19", "remotePort":"58436", "chatNetwork":"Unknown" |
| 2017/06/25 01:03:40 UTC 1498352620057 CIP | "ip":"76.120.226.19", "remotePort":"58440", "chatNetwork":"Unknown" |
| 2017/06/25 01:05:13 UTC 1498352713906 CIP | "ip":"76.120.226.19", "remotePort":"58443", "chatNetwork":"Unknown" |
| 2017/06/26 19:39:46 UTC 1498505986961 CIP | "ip":"76.120.226.19", "remotePort":"64871", "chatNetwork":"Unknown" |
| 2017/06/26 20:01:53 UTC 1498507313916 CIP | "ip":"66.87.77.26", "remotePort":"2006", "chatNetwork":"Unknown" |
| 2017/06/26 20:04:06 UTC 1498507446219 CIP | "ip":"66.87.77.26", "remotePort":"25360", "chatNetwork":"Unknown" |
| 2017/06/26 21:05:29 UTC 1498511129656 CIP | "ip":"66.87.77.26", "remotePort":"12529", "chatNetwork":"Unknown" |
| 2017/06/26 21:24:06 UTC 1498512246431 CIP | "ip":"66.87.77.26", "remotePort":"27787", "chatNetwork":"Unknown" |
| 2017/06/26 22:03:56 UTC 1498514636664 CIP | "ip":"76.120.226.19", "remotePort":"49191", "chatNetwork":"Unknown" |
| 2017/06/26 22:18:36 UTC 1498515516239 CIP | "ip":"76.120.226.19", "remotePort":"49320", "chatNetwork":"Unknown" |
| 2017/06/26 22:27:29 UTC 1498516049743 CIP | "ip":"76.120.226.19", "remotePort":"49523", "chatNetwork":"Unknown" |
| 2017/06/26 22:41:41 UTC 1498516901957 CIP | "ip":"76.120.226.19", "remotePort":"49543", "chatNetwork":"Unknown" |
| 2017/06/26 23:18:28 UTC 1498519108589 CIP | "ip":"76.120.226.19", "remotePort":"49609", "chatNetwork":"Unknown" |
| 2017/06/26 23:26:39 UTC 1498519599473 CIP | "ip":"76.120.226.19", "remotePort":"49632", "chatNetwork":"Unknown" |
| 2017/06/26 23:42:08 UTC 1498520528003 CIP | "ip":"76.120.226.19", "remotePort":"49649", "chatNetwork":"Unknown" |
| 2017/06/26 23:56:02 UTC 1498521362961 CIP | "ip":"76.120.226.19", "remotePort":"49672", "chatNetwork":"Unknown" |
| 2017/06/27 00:16:05 UTC 1498522565087 CIP | "ip":"76.120.226.19", "remotePort":"49697", "chatNetwork":"Unknown" |
| 2017/06/27 00:40:45 UTC 1498524045183 CIP | "ip":"76.120.226.19", "remotePort":"49728", "chatNetwork":"Unknown" |

Wellbeloved-Stone-145

| | |
|---|---|
| 2017/06/27 00:50:53 UTC 1498524653906 CIP | "ip":"76.120.226.19", "remotePort":"49744", "chatNetwork":"Unknown" |
| 2017/06/27 01:08:37 UTC 1498525717643 CIP | "ip":"76.120.226.19", "remotePort":"49766", "chatNetwork":"Unknown" |
| 2017/06/27 01:33:25 UTC 1498527205933 CIP | "ip":"76.120.226.19", "remotePort":"49798", "chatNetwork":"Unknown" |
| 2017/06/27 01:59:22 UTC 1498528762885 CIP | "ip":"76.120.226.19", "remotePort":"49980", "chatNetwork":"Unknown" |
| 2017/06/27 02:18:03 UTC 1498529883954 CIP | "ip":"76.120.226.19", "remotePort":"50030", "chatNetwork":"Unknown" |
| 2017/06/27 02:26:27 UTC 1498530387868 CIP | "ip":"76.120.226.19", "remotePort":"50046", "chatNetwork":"Unknown" |
| 2017/06/27 02:37:27 UTC 1498531047999 CIP | "ip":"76.120.226.19", "remotePort":"50128", "chatNetwork":"Unknown" |
| 2017/06/27 03:02:40 UTC 1498532560309 CIP | "ip":"76.120.226.19", "remotePort":"50160", "chatNetwork":"Unknown" |
| 2017/06/27 03:18:05 UTC 1498533485708 CIP | "ip":"76.120.226.19", "remotePort":"50345", "chatNetwork":"Unknown" |
| 2017/06/27 03:51:46 UTC 1498535506078 CIP | "ip":"76.120.226.19", "remotePort":"50560", "chatNetwork":"Unknown" |
| 2017/06/27 03:58:59 UTC 1498535939679 CIP | "ip":"76.120.226.19", "remotePort":"50858", "chatNetwork":"Unknown" |
| 2017/06/27 04:55:22 UTC 1498539322267 CIP | "ip":"76.120.226.19", "remotePort":"51190", "chatNetwork":"Unknown" |
| 2017/06/27 05:45:55 UTC 1498542355159 CIP | "ip":"76.120.226.19", "remotePort":"51209", "chatNetwork":"Unknown" |
| 2017/06/27 06:22:18 UTC 1498544538333 CIP | "ip":"76.120.226.19", "remotePort":"51228", "chatNetwork":"Unknown" |
| 2017/06/27 06:46:31 UTC 1498545991465 CIP | "ip":"76.120.226.19", "remotePort":"51238", "chatNetwork":"Unknown" |
| 2017/06/27 07:04:48 UTC 1498547088067 CIP | "ip":"76.120.226.19", "remotePort":"51246", "chatNetwork":"Unknown" |
| 2017/06/27 07:45:26 UTC 1498549526420 CIP | "ip":"76.120.226.19", "remotePort":"51253", "chatNetwork":"Unknown" |
| 2017/06/27 08:38:00 UTC 1498552680201 CIP | "ip":"76.120.226.19", "remotePort":"51263", "chatNetwork":"Unknown" |
| 2017/06/27 09:30:06 UTC 1498555806198 CIP | "ip":"76.120.226.19", "remotePort":"51283", "chatNetwork":"Unknown" |
| 2017/06/27 09:57:05 UTC 1498557425855 CIP | "ip":"76.120.226.19", "remotePort":"51306", "chatNetwork":"Unknown" |
| 2017/06/27 10:29:08 UTC 1498559348150 CIP | "ip":"76.120.226.19", "remotePort":"51312", "chatNetwork":"Unknown" |
| 2017/06/27 11:01:44 UTC 1498561304588 CIP | "ip":"76.120.226.19", "remotePort":"51329", "chatNetwork":"Unknown" |
| 2017/06/27 11:10:25 UTC 1498561825732 CIP | "ip":"76.120.226.19", "remotePort":"51343", "chatNetwork":"Unknown" |
| 2017/06/27 12:05:32 UTC 1498565132931 CIP | "ip":"76.120.226.19", "remotePort":"51400", "chatNetwork":"Unknown" |
| 2017/06/27 12:12:37 UTC 1498565557890 CIP | "ip":"76.120.226.19", "remotePort":"51432", "chatNetwork":"Unknown" |

Wellbeloved-Stone-146

2017/06/27 12:22:29 UTC 1498566149242 CIP "ip":"76.120.226.19", "remotePort":"51815", "chatNetwork":"Unknown"
2017/06/27 12:55:39 UTC 1498568139541 CIP "ip":"66.87.76.124", "remotePort":"6089", "chatNetwork":"Unknown"
2017/06/27 13:35:55 UTC 1498570555046 CIP "ip":"76.120.226.19", "remotePort":"52210", "chatNetwork":"Unknown"
2017/06/27 13:47:15 UTC 1498571235352 CIP "ip":"76.120.226.19", "remotePort":"52349", "chatNetwork":"Unknown"
2017/06/27 14:04:04 UTC 1498572244486 CIP "ip":"76.120.226.19", "remotePort":"52521", "chatNetwork":"Unknown"
2017/06/27 14:10:52 UTC 1498572652341 CIP "ip":"76.120.226.19", "remotePort":"52738", "chatNetwork":"Unknown"
2017/06/27 14:10:58 UTC 1498572658784 CIP "ip":"76.120.226.19", "remotePort":"52742", "chatNetwork":"Unknown"
2017/06/27 14:12:58 UTC 1498572778802 CIP "ip":"76.120.226.19", "remotePort":"52747", "chatNetwork":"Unknown"
2017/06/27 14:13:24 UTC 1498572804607 CIP "ip":"76.120.226.19", "remotePort":"52751", "chatNetwork":"Unknown"
2017/06/27 14:13:48 UTC 1498572828917 CIP "ip":"76.120.226.19", "remotePort":"52754", "chatNetwork":"Unknown"
2017/06/27 14:14:03 UTC 1498572843053 CIP "ip":"76.120.226.19", "remotePort":"52757", "chatNetwork":"Unknown"
2017/06/27 14:14:26 UTC 1498572866200 CIP "ip":"76.120.226.19", "remotePort":"52760", "chatNetwork":"Unknown"
2017/06/27 14:19:20 UTC 1498573160125 CIP "ip":"76.120.226.19", "remotePort":"53084", "chatNetwork":"Unknown"
2017/06/27 14:25:47 UTC 1498573547426 CIP "ip":"76.120.226.19", "remotePort":"53225", "chatNetwork":"Unknown"
2017/06/27 14:26:11 UTC 1498573571494 CIP "ip":"76.120.226.19", "remotePort":"53229", "chatNetwork":"Unknown"
2017/06/27 14:27:07 UTC 1498573627454 CIP "ip":"76.120.226.19", "remotePort":"53232", "chatNetwork":"Unknown"
2017/06/27 14:27:31 UTC 1498573651293 CIP "ip":"76.120.226.19", "remotePort":"53235", "chatNetwork":"Unknown"
2017/06/27 14:28:31 UTC 1498573711210 CIP "ip":"76.120.226.19", "remotePort":"53259", "chatNetwork":"Unknown"
2017/06/27 14:34:01 UTC 1498574041055 CIP "ip":"76.120.226.19", "remotePort":"53264", "chatNetwork":"Unknown"
2017/06/27 14:36:15 UTC 1498574175363 CIP "ip":"76.120.226.19", "remotePort":"53358", "chatNetwork":"Unknown"
2017/06/27 14:39:37 UTC 1498574377652 CIP "ip":"76.120.226.19", "remotePort":"53400", "chatNetwork":"Unknown"
2017/06/27 14:59:53 UTC 1498575593190 CIP "ip":"76.120.226.19", "remotePort":"53417", "chatNetwork":"Unknown"
2017/06/27 15:00:22 UTC 1498575622806 CIP "ip":"76.120.226.19", "remotePort":"53435", "chatNetwork":"Unknown"
2017/06/27 15:01:18 UTC 1498575678351 CIP "ip":"76.120.226.19", "remotePort":"53438", "chatNetwork":"Unknown"
2017/06/27 15:01:25 UTC 1498575685083 CIP "ip":"76.120.226.19", "remotePort":"53442", "chatNetwork":"Unknown"

Wellbeloved-Stone-147

2017/06/27 19:16:12 UTC 1498590972713 CIP "ip":"66.87.76.124", "remotePort":"16835", "chatNetwork":"Unknown"
2017/06/27 21:08:51 UTC 1498597731860 CIP "ip":"66.87.76.124", "remotePort":"32167", "chatNetwork":"Unknown"
2017/06/27 21:14:37 UTC 1498598077058 CIP "ip":"66.87.76.124", "remotePort":"10819", "chatNetwork":"Unknown"
2017/06/27 23:05:56 UTC 1498604756884 CIP "ip":"66.87.76.124", "remotePort":"2181", "chatNetwork":"Unknown"
2017/06/28 06:58:00 UTC 1498633080205 CIP "ip":"76.120.226.19", "remotePort":"56260", "chatNetwork":"Unknown"
2017/06/28 07:20:35 UTC 1498634435938 CIP "ip":"76.120.226.19", "remotePort":"56279", "chatNetwork":"Unknown"
2017/06/28 07:33:36 UTC 1498635216153 CIP "ip":"76.120.226.19", "remotePort":"56291", "chatNetwork":"Unknown"
2017/06/28 07:54:17 UTC 1498636457849 CIP "ip":"76.120.226.19", "remotePort":"56295", "chatNetwork":"Unknown"
2017/06/28 08:15:11 UTC 1498637711912 CIP "ip":"76.120.226.19", "remotePort":"56305", "chatNetwork":"Unknown"
2017/06/28 08:22:42 UTC 1498638162066 CIP "ip":"76.120.226.19", "remotePort":"56313", "chatNetwork":"Unknown"
2017/06/28 08:50:36 UTC 1498639836803 CIP "ip":"76.120.226.19", "remotePort":"56320", "chatNetwork":"Unknown"
2017/06/28 09:34:23 UTC 1498642463660 CIP "ip":"76.120.226.19", "remotePort":"56333", "chatNetwork":"Unknown"
2017/06/28 10:08:25 UTC 1498644505564 CIP "ip":"76.120.226.19", "remotePort":"56340", "chatNetwork":"Unknown"
2017/06/28 10:38:10 UTC 1498646290423 CIP "ip":"76.120.226.19", "remotePort":"56350", "chatNetwork":"Unknown"
2017/06/28 10:55:11 UTC 1498647311610 CIP "ip":"76.120.226.19", "remotePort":"56369", "chatNetwork":"Unknown"
2017/06/28 11:07:26 UTC 1498648046799 CIP "ip":"76.120.226.19", "remotePort":"56380", "chatNetwork":"Unknown"
2017/06/28 11:23:02 UTC 1498648982650 CIP "ip":"66.87.76.124", "remotePort":"20964", "chatNetwork":"Unknown"
2017/06/28 11:50:57 UTC 1498650657109 CIP "ip":"76.120.226.19", "remotePort":"56392", "chatNetwork":"Unknown"
2017/06/28 11:57:31 UTC 1498651051191 CIP "ip":"66.87.76.124", "remotePort":"2095", "chatNetwork":"Unknown"
2017/06/28 12:19:20 UTC 1498652360315 CIP "ip":"76.120.226.19", "remotePort":"56403", "chatNetwork":"Unknown"
2017/06/28 12:53:05 UTC 1498654385068 CIP "ip":"76.120.226.19", "remotePort":"58455", "chatNetwork":"Unknown"
2017/06/28 13:14:29 UTC 1498655669527 CIP "ip":"76.120.226.19", "remotePort":"56677", "chatNetwork":"Unknown"
2017/06/28 13:26:12 UTC 1498656372949 CIP "ip":"76.120.226.19", "remotePort":"56697", "chatNetwork":"Unknown"
2017/06/28 13:49:44 UTC 1498657784958 CIP "ip":"76.120.226.19", "remotePort":"57703", "chatNetwork":"Unknown"
2017/06/28 14:03:56 UTC 1498658636520 CIP "ip":"76.120.226.19", "remotePort":"57707", "chatNetwork":"Unknown"


Wellbeloved-Stone-148

2017/06/28 14:15:45 UTC 1498659345169 CIP "ip":"76.120.226.19", "remotePort":"57719", "chatNetwork":"Unknown"
2017/06/28 14:30:48 UTC 1498660248035 CIP "ip":"76.120.226.19", "remotePort":"57730", "chatNetwork":"Unknown"
2017/06/28 14:47:57 UTC 1498661277127 CIP "ip":"76.120.226.19", "remotePort":"57740", "chatNetwork":"Unknown"
2017/06/28 14:55:32 UTC 1498661732797 CIP "ip":"76.120.226.19", "remotePort":"57899", "chatNetwork":"Unknown"
2017/06/28 15:28:21 UTC 1498663701605 CIP "ip":"76.120.226.19", "remotePort":"57958", "chatNetwork":"Unknown"
2017/06/28 15:49:03 UTC 1498664943232 CIP "ip":"76.120.226.19", "remotePort":"57967", "chatNetwork":"Unknown"
2017/06/28 16:06:34 UTC 1498665994482 CIP "ip":"76.120.226.19", "remotePort":"58613", "chatNetwork":"Unknown"
2017/06/28 16:17:13 UTC 1498666633968 CIP "ip":"76.120.226.19", "remotePort":"58692", "chatNetwork":"Unknown"
2017/06/28 16:27:07 UTC 1498667227956 CIP "ip":"76.120.226.19", "remotePort":"58697", "chatNetwork":"Unknown"
2017/06/28 16:52:15 UTC 1498668735800 CIP "ip":"76.120.226.19", "remotePort":"58738", "chatNetwork":"Unknown"
2017/06/28 17:17:15 UTC 1498670235253 CIP "ip":"76.120.226.19", "remotePort":"58757", "chatNetwork":"Unknown"
2017/06/28 17:25:29 UTC 1498670729474 CIP "ip":"76.120.226.19", "remotePort":"58771", "chatNetwork":"Unknown"
2017/06/28 17:53:05 UTC 1498672385343 CIP "ip":"76.120.226.19", "remotePort":"58991", "chatNetwork":"Unknown"
2017/06/28 18:12:18 UTC 1498673538390 CIP "ip":"76.120.226.19", "remotePort":"58995", "chatNetwork":"Unknown"
2017/06/28 22:22:35 UTC 1498688555677 CIP "ip":"66.87.76.124", "remotePort":"4377", "chatNetwork":"Unknown"
2017/06/28 23:34:27 UTC 1498692867053 CIP "ip":"66.87.94.93", "remotePort":"27367", "chatNetwork":"Unknown"
2017/06/28 23:42:57 UTC 1498693377099 CIP "ip":"66.87.77.118", "remotePort":"17989", "chatNetwork":"Unknown"
2017/06/29 13:41:58 UTC 1498743718709 CIP "ip":"76.120.226.19", "remotePort":"61478", "chatNetwork":"Unknown"
2017/06/29 20:19:34 UTC 1498767574434 CIP "ip":"66.87.77.33", "remotePort":"27122", "chatNetwork":"Unknown"
2017/06/30 05:51:49 UTC 1498801909143 CIP "ip":"76.120.226.19", "remotePort":"64841", "chatNetwork":"Unknown"
2017/06/30 07:31:56 UTC 1498807916067 CIP "ip":"76.120.226.19", "remotePort":"64889", "chatNetwork":"Unknown"
2017/06/30 13:25:02 UTC 1498829102782 CIP "ip":"66.87.76.112", "remotePort":"5920", "chatNetwork":"Unknown"
2017/06/30 13:49:31 UTC 1498830571454 CIP "ip":"66.87.76.112", "remotePort":"21476", "chatNetwork":"Unknown"
2017/07/03 19:55:25 UTC 1499111725148 CIP "ip":"66.87.73.113", "remotePort":"21675", "chatNetwork":"Unknown"
2017/07/03 19:55:48 UTC 1499111748309 CIP "ip":"66.87.73.113", "remotePort":"27767", "chatNetwork":"Unknown"

Wellbeloved-Stone-149

2017/07/05 14:50:24 UTC 1499266224370 CIP "ip":"76.120.226.19", "remotePort":"51519", "chatNetwork":"Unknown"
2017/07/05 14:57:01 UTC 1499266621405 CIP "ip":"76.120.226.19", "remotePort":"51557", "chatNetwork":"Unknown"
2017/07/05 15:17:27 UTC 1499267847997 CIP "ip":"66.87.72.93", "remotePort":"11187", "chatNetwork":"Unknown"
2017/07/05 15:32:51 UTC 1499268771741 CIP "ip":"66.87.72.93", "remotePort":"15355", "chatNetwork":"Unknown"
2017/07/05 15:44:52 UTC 1499269492337 CIP "ip":"66.87.72.93", "remotePort":"26939", "chatNetwork":"Unknown"
2017/07/05 16:06:03 UTC 1499270763953 CIP "ip":"66.87.72.93", "remotePort":"15368", "chatNetwork":"Unknown"
2017/07/05 16:26:47 UTC 1499272007554 CIP "ip":"66.87.72.93", "remotePort":"11721", "chatNetwork":"Unknown"
2017/07/05 18:31:09 UTC 1499279469538 CIP "ip":"66.87.72.93", "remotePort":"27660", "chatNetwork":"Unknown"
2017/07/05 18:46:01 UTC 1499280361149 CIP "ip":"66.87.72.93", "remotePort":"25383", "chatNetwork":"Unknown"
2017/07/05 21:08:34 UTC 1499288914988 CIP "ip":"66.87.72.93", "remotePort":"18019", "chatNetwork":"Unknown"
2017/07/06 13:05:03 UTC 1499346303892 CIP "ip":"66.87.72.93", "remotePort":"12667", "chatNetwork":"Unknown"
2017/07/06 18:29:54 UTC 1499365794630 CIP "ip":"76.120.226.19", "remotePort":"56061", "chatNetwork":"Unknown"
2017/07/06 19:09:51 UTC 1499368191160 CIP "ip":"76.120.226.19", "remotePort":"56125", "chatNetwork":"Unknown"
2017/07/06 20:36:06 UTC 1499373366976 CIP "ip":"76.120.226.19", "remotePort":"56261", "chatNetwork":"Unknown"
2017/07/06 20:51:25 UTC 1499374285390 CIP "ip":"76.120.226.19", "remotePort":"56286", "chatNetwork":"Unknown"
2017/07/06 21:08:19 UTC 1499375299392 CIP "ip":"76.120.226.19", "remotePort":"56706", "chatNetwork":"Unknown"
2017/07/07 12:54:24 UTC 1499432064606 CIP "ip":"76.120.226.19", "remotePort":"57695", "chatNetwork":"Unknown"
2017/07/07 13:08:31 UTC 1499432911421 CIP "ip":"76.120.226.19", "remotePort":"57727", "chatNetwork":"Unknown"
2017/07/07 14:20:46 UTC 1499437246692 CIP "ip":"76.120.226.19", "remotePort":"57792", "chatNetwork":"Unknown"
2017/07/07 15:04:37 UTC 1499439877657 CIP "ip":"76.120.226.19", "remotePort":"57874", "chatNetwork":"Unknown"
2017/07/07 15:17:19 UTC 1499440639661 CIP "ip":"76.120.226.19", "remotePort":"57891", "chatNetwork":"Unknown"
2017/07/07 21:23:48 UTC 1499462628943 CIP "ip":"66.87.72.67", "remotePort":"24630", "chatNetwork":"Unknown"
2017/07/07 21:30:24 UTC 1499463024953 CIP "ip":"66.87.72.67", "remotePort":"16006", "chatNetwork":"Unknown"
2017/07/07 21:34:37 UTC 1499463277356 CIP "ip":"66.87.72.67", "remotePort":"1494", "chatNetwork":"Unknown"
2017/07/07 22:25:36 UTC 1499466336777 CIP "ip":"66.87.72.67", "remotePort":"4553", "chatNetwork":"Unknown"


Wellbeloved-Stone-150

2017/07/07 22:28:39 UTC 1499466519576 CIP "ip":"66.87.72.67", "remotePort":"5726", "chatNetwork":"Unknown"
2017/07/07 22:28:51 UTC 1499466531396 CIP "ip":"66.87.72.67", "remotePort":"9341", "chatNetwork":"Unknown"
2017/07/07 22:29:29 UTC 1499466569304 CIP "ip":"66.87.72.67", "remotePort":"20568", "chatNetwork":"Unknown"
2017/07/07 22:36:16 UTC 1499466976617 CIP "ip":"66.87.72.67", "remotePort":"4065", "chatNetwork":"Unknown"
2017/07/07 22:47:25 UTC 1499467645335 CIP "ip":"66.87.72.67", "remotePort":"26767", "chatNetwork":"Unknown"
2017/07/07 22:47:26 UTC 1499467646262 CIP "ip":"66.87.72.67", "remotePort":"22739", "chatNetwork":"Unknown"
2017/07/07 22:54:31 UTC 1499468071347 CIP "ip":"66.87.72.67", "remotePort":"8592", "chatNetwork":"Unknown"
2017/07/08 00:45:31 UTC 1499474731624 CIP "ip":"76.120.226.19", "remotePort":"58779", "chatNetwork":"Unknown"
2017/07/08 00:51:55 UTC 1499475115422 CIP "ip":"76.120.226.19", "remotePort":"58803", "chatNetwork":"Unknown"
2017/07/08 00:56:37 UTC 1499475397268 CIP "ip":"76.120.226.19", "remotePort":"58815", "chatNetwork":"Unknown"
2017/07/08 04:35:59 UTC 1499488559247 CIP "ip":"76.120.226.19", "remotePort":"59159", "chatNetwork":"Unknown"
2017/07/09 04:21:58 UTC 1499574118490 CIP "ip":"76.120.226.19", "remotePort":"62108", "chatNetwork":"Unknown"
2017/07/09 16:51:08 UTC 1499619068071 CIP "ip":"66.87.73.156", "remotePort":"18638", "chatNetwork":"Unknown"
2017/07/09 18:48:38 UTC 1499626118398 CIP "ip":"76.120.226.19", "remotePort":"64055", "chatNetwork":"Unknown"
2017/07/09 19:09:35 UTC 1499627375678 CIP "ip":"76.120.226.19", "remotePort":"64271", "chatNetwork":"Unknown"
2017/07/11 03:47:58 UTC 1499744878693 CIP "ip":"76.120.226.19", "remotePort":"53551", "chatNetwork":"Unknown"
2017/07/11 04:10:31 UTC 1499746231261 CIP "ip":"76.120.226.19", "remotePort":"54064", "chatNetwork":"Unknown"
2017/07/11 04:31:02 UTC 1499747462511 CIP "ip":"76.120.226.19", "remotePort":"54080", "chatNetwork":"Unknown"
2017/07/11 05:10:09 UTC 1499749809877 CIP "ip":"76.120.226.19", "remotePort":"54092", "chatNetwork":"Unknown"
2017/07/11 06:09:54 UTC 1499753394691 CIP "ip":"76.120.226.19", "remotePort":"54119", "chatNetwork":"Unknown"
2017/07/11 06:38:19 UTC 1499755099568 CIP "ip":"76.120.226.19", "remotePort":"54132", "chatNetwork":"Unknown"
2017/07/11 07:09:40 UTC 1499756980609 CIP "ip":"76.120.226.19", "remotePort":"54139", "chatNetwork":"Unknown"
2017/07/11 07:29:34 UTC 1499758174370 CIP "ip":"76.120.226.19", "remotePort":"54148", "chatNetwork":"Unknown"
2017/07/11 08:09:25 UTC 1499760565632 CIP "ip":"76.120.226.19", "remotePort":"54154", "chatNetwork":"Unknown"
2017/07/11 08:34:46 UTC 1499762086686 CIP "ip":"76.120.226.19", "remotePort":"54164", "chatNetwork":"Unknown"

Wellbeloved-Stone-151

2017/07/11 09:05:07 UTC 1499763907661 CIP "ip":"76.120.226.19", "remotePort":"54171", "chatNetwork":"Unknown"
2017/07/11 10:04:52 UTC 1499767492390 CIP "ip":"76.120.226.19", "remotePort":"54191", "chatNetwork":"Unknown"
2017/07/11 10:35:45 UTC 1499769345206 CIP "ip":"76.120.226.19", "remotePort":"54195", "chatNetwork":"Unknown"
2017/07/11 11:05:09 UTC 1499771109397 CIP "ip":"76.120.226.19", "remotePort":"54205", "chatNetwork":"Unknown"
2017/07/11 11:46:37 UTC 1499773597536 CIP "ip":"76.120.226.19", "remotePort":"54224", "chatNetwork":"Unknown"
2017/07/11 11:55:20 UTC 1499774120815 CIP "ip":"76.120.226.19", "remotePort":"54277", "chatNetwork":"Unknown"
2017/07/11 12:25:13 UTC 1499775913722 CIP "ip":"76.120.226.19", "remotePort":"54338", "chatNetwork":"Unknown"
2017/07/11 12:34:21 UTC 1499776461788 CIP "ip":"76.120.226.19", "remotePort":"54364", "chatNetwork":"Unknown"
2017/07/11 12:43:29 UTC 1499777009292 CIP "ip":"66.87.77.1", "remotePort":"32215", "chatNetwork":"Unknown"
2017/07/11 13:12:06 UTC 1499778726915 CIP "ip":"76.120.226.19", "remotePort":"54425", "chatNetwork":"Unknown"
2017/07/11 13:19:52 UTC 1499779192180 CIP "ip":"76.120.226.19", "remotePort":"54441", "chatNetwork":"Unknown"
2017/07/11 13:27:24 UTC 1499779644953 CIP "ip":"76.120.226.19", "remotePort":"54452", "chatNetwork":"Unknown"
2017/07/11 14:00:08 UTC 1499781608630 CIP "ip":"76.120.226.19", "remotePort":"54478", "chatNetwork":"Unknown"
2017/07/11 14:23:42 UTC 1499783022711 CIP "ip":"76.120.226.19", "remotePort":"54512", "chatNetwork":"Unknown"
2017/07/11 14:40:44 UTC 1499784044503 CIP "ip":"76.120.226.19", "remotePort":"54540", "chatNetwork":"Unknown"
2017/07/11 14:58:39 UTC 1499785119681 CIP "ip":"76.120.226.19", "remotePort":"54607", "chatNetwork":"Unknown"
2017/07/11 16:13:07 UTC 1499789587873 CIP "ip":"66.87.77.1", "remotePort":"6977", "chatNetwork":"Unknown"
2017/07/11 17:16:17 UTC 1499793377780 CIP "ip":"66.87.77.1", "remotePort":"26577", "chatNetwork":"Unknown"
2017/07/11 18:40:22 UTC 1499798422331 CIP "ip":"66.87.77.1", "remotePort":"27387", "chatNetwork":"Unknown"
2017/07/11 18:58:18 UTC 1499799498102 CIP "ip":"76.120.226.19", "remotePort":"55312", "chatNetwork":"Unknown"
2017/07/11 19:22:26 UTC 1499800946417 CIP "ip":"76.120.226.19", "remotePort":"55378", "chatNetwork":"Unknown"
2017/07/11 19:28:54 UTC 1499801334967 CIP "ip":"66.87.77.1", "remotePort":"15399", "chatNetwork":"Unknown"
2017/07/11 19:30:57 UTC 1499801457962 CIP "ip":"76.120.226.19", "remotePort":"55667", "chatNetwork":"Unknown"
2017/07/11 19:43:47 UTC 1499802227791 CIP "ip":"76.120.226.19", "remotePort":"55677", "chatNetwork":"Unknown"
2017/07/11 19:52:30 UTC 1499802750241 CIP "ip":"76.120.226.19", "remotePort":"55688", "chatNetwork":"Unknown"

Wellbeloved-Stone-152

| | |
|---|---|
| 2017/07/11 20:00:31 UTC 1499803231672 CIP | "ip":"66.87.77.1", "remotePort":"3877", "chatNetwork":"Unknown" |
| 2017/07/11 20:07:42 UTC 1499803662163 CIP | "ip":"66.87.77.1", "remotePort":"13612", "chatNetwork":"Unknown" |
| 2017/07/11 20:16:06 UTC 1499804166263 CIP | "ip":"66.87.77.1", "remotePort":"32013", "chatNetwork":"Unknown" |
| 2017/07/11 20:57:31 UTC 1499806651742 CIP | "ip":"66.87.77.1", "remotePort":"25242", "chatNetwork":"Unknown" |
| 2017/07/11 21:18:48 UTC 1499807928146 CIP | "ip":"66.87.94.31", "remotePort":"10360", "chatNetwork":"Unknown" |
| 2017/07/11 21:19:17 UTC 1499807957333 CIP | "ip":"66.87.94.31", "remotePort":"6012", "chatNetwork":"Unknown" |
| 2017/07/11 21:24:18 UTC 1499808258139 CIP | "ip":"66.87.77.234", "remotePort":"11326", "chatNetwork":"Unknown" |
| 2017/07/12 01:47:54 UTC 1499824074003 CIP | "ip":"66.87.77.234", "remotePort":"16965", "chatNetwork":"Unknown" |
| 2017/07/12 02:53:52 UTC 1499828032586 CIP | "ip":"76.120.226.19", "remotePort":"55982", "chatNetwork":"Unknown" |
| 2017/07/12 03:24:14 UTC 1499829854814 CIP | "ip":"76.120.226.19", "remotePort":"56012", "chatNetwork":"Unknown" |
| 2017/07/12 03:53:56 UTC 1499831636440 CIP | "ip":"76.120.226.19", "remotePort":"56108", "chatNetwork":"Unknown" |
| 2017/07/12 04:18:24 UTC 1499833104931 CIP | "ip":"76.120.226.19", "remotePort":"56949", "chatNetwork":"Unknown" |
| 2017/07/12 04:54:09 UTC 1499835249705 CIP | "ip":"76.120.226.19", "remotePort":"56971", "chatNetwork":"Unknown" |
| 2017/07/12 05:14:51 UTC 1499836491394 CIP | "ip":"76.120.226.19", "remotePort":"56976", "chatNetwork":"Unknown" |
| 2017/07/12 06:12:08 UTC 1499839928204 CIP | "ip":"76.120.226.19", "remotePort":"56981", "chatNetwork":"Unknown" |
| 2017/07/12 07:02:56 UTC 1499842976182 CIP | "ip":"76.120.226.19", "remotePort":"56988", "chatNetwork":"Unknown" |
| 2017/07/12 07:30:27 UTC 1499844627886 CIP | "ip":"76.120.226.19", "remotePort":"56993", "chatNetwork":"Unknown" |
| 2017/07/12 07:57:55 UTC 1499846275039 CIP | "ip":"76.120.226.19", "remotePort":"56999", "chatNetwork":"Unknown" |
| 2017/07/12 08:44:10 UTC 1499849050953 CIP | "ip":"76.120.226.19", "remotePort":"57006", "chatNetwork":"Unknown" |
| 2017/07/12 09:11:43 UTC 1499850703006 CIP | "ip":"76.120.226.19", "remotePort":"57012", "chatNetwork":"Unknown" |
| 2017/07/12 10:06:35 UTC 1499853995736 CIP | "ip":"76.120.226.19", "remotePort":"57021", "chatNetwork":"Unknown" |
| 2017/07/12 10:27:45 UTC 1499855265362 CIP | "ip":"76.120.226.19", "remotePort":"57033", "chatNetwork":"Unknown" |
| 2017/07/12 11:18:15 UTC 1499858295665 CIP | "ip":"76.120.226.19", "remotePort":"57044", "chatNetwork":"Unknown" |
| 2017/07/12 11:27:55 UTC 1499858875537 CIP | "ip":"76.120.226.19", "remotePort":"57048", "chatNetwork":"Unknown" |
| 2017/07/12 12:50:30 UTC 1499863830483 CIP | "ip":"66.87.76.245", "remotePort":"17741", "chatNetwork":"Unknown" |

Wellbeloved-Stone-153

| | |
|---|---|
| 2017/07/12 12:53:24 UTC 1499864004743 CIP | "ip":"66.87.76.245", "remotePort":"12755", "chatNetwork":"Unknown" |
| 2017/07/12 13:55:28 UTC 1499867728504 CIP | "ip":"66.87.76.245", "remotePort":"6951", "chatNetwork":"Unknown" |
| 2017/07/12 15:12:30 UTC 1499872350536 CIP | "ip":"76.120.226.19", "remotePort":"57338", "chatNetwork":"Unknown" |
| 2017/07/12 15:51:55 UTC 1499874715739 CIP | "ip":"76.120.226.19", "remotePort":"57373", "chatNetwork":"Unknown" |
| 2017/07/12 16:43:31 UTC 1499877811198 CIP | "ip":"76.120.226.19", "remotePort":"57632", "chatNetwork":"Unknown" |
| 2017/07/12 17:07:45 UTC 1499879265987 CIP | "ip":"76.120.226.19", "remotePort":"57812", "chatNetwork":"Unknown" |
| 2017/07/12 17:26:12 UTC 1499880372598 CIP | "ip":"76.120.226.19", "remotePort":"58516", "chatNetwork":"Unknown" |
| 2017/07/12 18:45:13 UTC 1499885113529 CIP | "ip":"66.87.76.245", "remotePort":"23112", "chatNetwork":"Unknown" |
| 2017/07/13 01:16:45 UTC 1499908605073 CIP | "ip":"76.120.226.19", "remotePort":"59965", "chatNetwork":"Unknown" |
| 2017/07/13 05:21:27 UTC 1499923287205 CIP | "ip":"76.120.226.19", "remotePort":"61244", "chatNetwork":"Unknown" |
| 2017/07/13 05:34:42 UTC 1499924082999 CIP | "ip":"76.120.226.19", "remotePort":"61272", "chatNetwork":"Unknown" |
| 2017/07/13 05:54:15 UTC 1499925255815 CIP | "ip":"76.120.226.19", "remotePort":"61282", "chatNetwork":"Unknown" |
| 2017/07/13 06:02:33 UTC 1499925753049 CIP | "ip":"76.120.226.19", "remotePort":"61291", "chatNetwork":"Unknown" |
| 2017/07/13 06:08:59 UTC 1499926139876 CIP | "ip":"76.120.226.19", "remotePort":"61298", "chatNetwork":"Unknown" |
| 2017/07/13 06:28:28 UTC 1499927308739 CIP | "ip":"76.120.226.19", "remotePort":"61305", "chatNetwork":"Unknown" |
| 2017/07/13 06:42:45 UTC 1499928165318 CIP | "ip":"76.120.226.19", "remotePort":"61315", "chatNetwork":"Unknown" |
| 2017/07/13 07:10:37 UTC 1499929837479 CIP | "ip":"76.120.226.19", "remotePort":"61327", "chatNetwork":"Unknown" |
| 2017/07/13 08:00:27 UTC 1499932827851 CIP | "ip":"76.120.226.19", "remotePort":"61341", "chatNetwork":"Unknown" |
| 2017/07/13 08:19:51 UTC 1499933991391 CIP | "ip":"76.120.226.19", "remotePort":"61353", "chatNetwork":"Unknown" |
| 2017/07/13 08:34:14 UTC 1499934854327 CIP | "ip":"76.120.226.19", "remotePort":"61359", "chatNetwork":"Unknown" |
| 2017/07/13 09:06:08 UTC 1499936768488 CIP | "ip":"76.120.226.19", "remotePort":"61374", "chatNetwork":"Unknown" |
| 2017/07/13 09:29:44 UTC 1499938184399 CIP | "ip":"76.120.226.19", "remotePort":"61393", "chatNetwork":"Unknown" |
| 2017/07/13 09:55:17 UTC 1499939717768 CIP | "ip":"76.120.226.19", "remotePort":"61405", "chatNetwork":"Unknown" |
| 2017/07/13 10:36:07 UTC 1499942167655 CIP | "ip":"76.120.226.19", "remotePort":"61419", "chatNetwork":"Unknown" |
| 2017/07/13 10:56:07 UTC 1499943367312 CIP | "ip":"76.120.226.19", "remotePort":"61437", "chatNetwork":"Unknown" |

Wellbeloved-Stone-154

2017/07/13 11:12:44 UTC 1499944364838 CIP "ip":"76.120.226.19", "remotePort":"61451", "chatNetwork":"Unknown"
2017/07/13 11:37:52 UTC 1499945872121 CIP "ip":"76.120.226.19", "remotePort":"61470", "chatNetwork":"Unknown"
2017/07/13 11:43:15 UTC 1499946195945 CIP "ip":"76.120.226.19", "remotePort":"61512", "chatNetwork":"Unknown"
2017/07/13 13:41:08 UTC 1499953268361 CIP "ip":"76.120.226.19", "remotePort":"62184", "chatNetwork":"Unknown"
2017/07/13 14:05:10 UTC 1499954710522 CIP "ip":"76.120.226.19", "remotePort":"62531", "chatNetwork":"Unknown"
2017/07/13 14:57:05 UTC 1499957825820 CIP "ip":"76.120.226.19", "remotePort":"62601", "chatNetwork":"Unknown"
2017/07/13 15:25:05 UTC 1499959505021 CIP "ip":"76.120.226.19", "remotePort":"62903", "chatNetwork":"Unknown"
2017/07/13 15:32:33 UTC 1499959953609 CIP "ip":"76.120.226.19", "remotePort":"63138", "chatNetwork":"Unknown"
2017/07/13 15:40:52 UTC 1499960452903 CIP "ip":"76.120.226.19", "remotePort":"63229", "chatNetwork":"Unknown"
2017/07/13 15:48:33 UTC 1499960913589 CIP "ip":"76.120.226.19", "remotePort":"63246", "chatNetwork":"Unknown"
2017/07/13 15:56:11 UTC 1499961371850 CIP "ip":"66.87.76.245", "remotePort":"3117", "chatNetwork":"Unknown"
2017/07/13 16:06:06 UTC 1499961966689 CIP "ip":"76.120.226.19", "remotePort":"63261", "chatNetwork":"Unknown"
2017/07/13 16:16:13 UTC 1499962573140 CIP "ip":"76.120.226.19", "remotePort":"63333", "chatNetwork":"Unknown"
2017/07/13 16:39:52 UTC 1499963992709 CIP "ip":"66.87.76.245", "remotePort":"25149", "chatNetwork":"Unknown"
2017/07/13 22:06:08 UTC 1499983568094 CIP "ip":"66.87.76.245", "remotePort":"15656", "chatNetwork":"Unknown"
2017/07/14 04:26:04 UTC 1500006364383 CIP "ip":"76.120.226.19", "remotePort":"64620", "chatNetwork":"Unknown"
2017/07/14 04:47:13 UTC 1500007633716 CIP "ip":"76.120.226.19", "remotePort":"49190", "chatNetwork":"Unknown"
2017/07/14 05:10:52 UTC 1500009052440 CIP "ip":"76.120.226.19", "remotePort":"49225", "chatNetwork":"Unknown"
2017/07/14 05:39:54 UTC 1500010794342 CIP "ip":"76.120.226.19", "remotePort":"49243", "chatNetwork":"Unknown"
2017/07/14 06:16:34 UTC 1500012994465 CIP "ip":"76.120.226.19", "remotePort":"49255", "chatNetwork":"Unknown"
2017/07/14 06:36:54 UTC 1500014214323 CIP "ip":"76.120.226.19", "remotePort":"49265", "chatNetwork":"Unknown"
2017/07/14 06:55:23 UTC 1500015323620 CIP "ip":"76.120.226.19", "remotePort":"49275", "chatNetwork":"Unknown"
2017/07/14 07:13:50 UTC 1500016430532 CIP "ip":"76.120.226.19", "remotePort":"49282", "chatNetwork":"Unknown"
2017/07/14 07:55:07 UTC 1500018907281 CIP "ip":"76.120.226.19", "remotePort":"49295", "chatNetwork":"Unknown"
2017/07/14 08:21:26 UTC 1500020486119 CIP "ip":"76.120.226.19", "remotePort":"49309", "chatNetwork":"Unknown"

Wellbeloved-Stone-155

| | | |
|---|---|---|
| 2017/07/14 08:54:35 UTC | 1500022475570 CIP | "ip":"76.120.226.19", "remotePort":"49320", "chatNetwork":"Unknown" |
| 2017/07/14 09:20:37 UTC | 1500024037053 CIP | "ip":"76.120.226.19", "remotePort":"49333", "chatNetwork":"Unknown" |
| 2017/07/14 09:45:03 UTC | 1500025503241 CIP | "ip":"76.120.226.19", "remotePort":"49343", "chatNetwork":"Unknown" |
| 2017/07/14 10:24:28 UTC | 1500027868364 CIP | "ip":"76.120.226.19", "remotePort":"49358", "chatNetwork":"Unknown" |
| 2017/07/14 11:00:17 UTC | 1500030017894 CIP | "ip":"76.120.226.19", "remotePort":"49371", "chatNetwork":"Unknown" |
| 2017/07/14 11:10:46 UTC | 1500030646007 CIP | "ip":"76.120.226.19", "remotePort":"49385", "chatNetwork":"Unknown" |
| 2017/07/14 11:30:18 UTC | 1500031818067 CIP | "ip":"76.120.226.19", "remotePort":"49398", "chatNetwork":"Unknown" |
| 2017/07/14 11:39:51 UTC | 1500032391292 CIP | "ip":"76.120.226.19", "remotePort":"49413", "chatNetwork":"Unknown" |
| 2017/07/14 11:58:05 UTC | 1500033485103 CIP | "ip":"76.120.226.19", "remotePort":"49422", "chatNetwork":"Unknown" |
| 2017/07/14 12:18:18 UTC | 1500034698583 CIP | "ip":"76.120.226.19", "remotePort":"49435", "chatNetwork":"Unknown" |
| 2017/07/14 12:55:51 UTC | 1500036951578 CIP | "ip":"66.87.76.245", "remotePort":"16395", "chatNetwork":"Unknown" |
| 2017/07/14 13:09:18 UTC | 1500037758185 CIP | "ip":"76.120.226.19", "remotePort":"49604", "chatNetwork":"Unknown" |
| 2017/07/14 13:25:02 UTC | 1500038702943 CIP | "ip":"76.120.226.19", "remotePort":"49648", "chatNetwork":"Unknown" |
| 2017/07/14 14:01:10 UTC | 1500040870567 CIP | "ip":"76.120.226.19", "remotePort":"49884", "chatNetwork":"Unknown" |
| 2017/07/14 14:04:04 UTC | 1500041044979 CIP | "ip":"76.120.226.19", "remotePort":"49917", "chatNetwork":"Unknown" |
| 2017/07/14 14:19:41 UTC | 1500041981861 CIP | "ip":"76.120.226.19", "remotePort":"49952", "chatNetwork":"Unknown" |
| 2017/07/14 15:19:21 UTC | 1500045561995 CIP | "ip":"76.120.226.19", "remotePort":"50073", "chatNetwork":"Unknown" |
| 2017/07/14 15:46:14 UTC | 1500047174493 CIP | "ip":"76.120.226.19", "remotePort":"50118", "chatNetwork":"Unknown" |
| 2017/07/14 21:28:22 UTC | 1500067702136 CIP | "ip":"66.87.76.245", "remotePort":"12045", "chatNetwork":"Unknown" |
| 2017/07/14 23:21:39 UTC | 1500074499505 CIP | "ip":"66.87.76.245", "remotePort":"18415", "chatNetwork":"Unknown" |
| 2017/07/16 17:03:42 UTC | 1500224622535 CIP | "ip":"66.87.73.25", "remotePort":"19797", "chatNetwork":"Unknown" |
| 2017/07/16 17:41:42 UTC | 1500226902049 CIP | "ip":"76.120.226.19", "remotePort":"56698", "chatNetwork":"Unknown" |

Wellbeloved-Stone-156

| 1. To (Name, Address, City, State, Zip Code) | DEPARTMENT OF HOMELAND SECURITY |
| --- | --- |
| Comcast Cable Communications, LLC<br>Legal Response Center<br>Custodian of Records<br>650 Centerton Road<br>Moorestown, NJ 08057 | **SUMMONS**<br>**to Appear and/or Produce Records**<br>19 U.S.C. § 1509 |

Summons Number ICE-OIA-LN-2017-00205

By the service of this summons upon you, **YOU ARE HEREBY SUMMONED AND REQUIRED TO:**

(A) ☐ **APPEAR** before the U.S. Customs and Border Protection (CBP) Officer or U.S. Immigration and Customs Enforcement (ICE) Special Agent named in Block 2 at the place, date and time indicated to testify and give information.

(B) ☒ **PRODUCE** the records (including statements, declarations, and other documents) indicated in Block 3 before the CBP Officer or ICE Special Agent named in Block 2 at the place, date and time indicated.

Your testimony and/or production of the indicated records is required in connection with an investigation or inquiry to ascertain the correctness of entries, to determine the liability for duties, taxes, fines, penalties, or forfeitures, and/or to ensure compliance with the laws or regulations administered by CBP and ICE.

Failure to comply with this summons will render you liable to proceedings in a U.S. District Court to enforce compliance with this summons as well as other sanctions.

2. (A) CBP Officer or ICE Special Agent before whom you are required to appear

| | |
| --- | --- |
| Name | Mark J. Zivilik |
| Title | Criminal Investigator, FSN |
| Address | HSI International Affairs<br>American Embassy London<br>Unit 8400 Box 52<br>DPO, AE 09498-0052 |
| Telephone Number | [redacted] Fax Number (Not available) |

(B) Date

July 31, 2017

(C) Time

9:00 AM

3. Records required to be produced for inspection

Please see attached continuation page.

*You are requested not to disclose the existence of this summons for an indefinite period of time. Any such disclosure will impede this investigation and thereby interfere with the enforcement of federal law.*

Issued under authority of section 509, Tariff Act of 1930, as amended by Pub. L. No. 95-410 (19 U.S.C. § 1509); 44 F.R. 2217; Homeland Security Act of 2002

4. Name of person authorized to serve this summons or any other CBP Officer or ICE Special Agent

Mark J. Zivilik

5. Date of issue

By ______ (Signature) 7/17/2017

6. Name, title, address and telephone number of person issuing this summons

| | |
| --- | --- |
| Name | Michael S. Crabb |
| Title | Deputy Attaché |
| Address | HSI International Affairs<br>American Embassy London<br>Unit 8400 Box 52<br>DPO, AE 09498-0052 |
| Telephone Number | [redacted] |

If you have any questions regarding this summons, contact the CBP Officer or ICE Special Agent identified in Block 2.

DHS Form 3115 (6/09)

| 1. To (Name, Address, City, State, Zip Code)<br>Comcast Cable Communications, LLC<br>Legal Response Center<br>Custodian of Records<br>650 Centerton Road<br>Moorestown, NJ 08057 | DEPARTMENT OF HOMELAND SECURITY<br>**SUMMONS** (Continuation)<br>**to Appear and/or Produce Records**<br>19 U.S.C. § 1509 |
|---|---|

Summons Number ICE-OIA-LN-2017-00205

3. Records required to be produced for inspection (continued)

Records required to be produced for inspection Pursuant to an investigation being conducted by the Department of Homeland Security, your office is requested to provide the name, address, local and/or long distance telephone number, connection records or records of session times, duration, length of service (including start date) and types of service utilized; telephone or instrument number or other subscriber number or identity, including any temporary assigned network address; means of source of payment for such service (including any credit card and/or bank account number), as per HR.3162 effective 10/26/2001.

Specifically – Registered user information, IP login information for past 60 days or last 20 logins available, email addresses associated with account for the following account:

IP address 76.120.226.19 7/16/2017 17:41:42 UTC

You are requested not to disclose the existence of this summons for an indefinite period of time. Any such disclosure will impede this investigation and thereby interfere with the enforcement of federal law. Issued under authority of section 509, Tariff Act of 1930, as amended by Public law 95-410 (19 U.S.C. § 1509); 44 F.R. 2217; Homeland Security Act of 2002

**Method of Response:**

**Preferred:**

Return the requested records in an accessible data file format such as ".XLS", ".CSV", ".TXT", or ".PDF". The data file(s) should be delivered via e-mail to Criminal Investigator, FSN Mark J. Zivilik at Mark.Zivilik@associates.ice.dhs.gov

NOTE: The ICE e-mail system limits incoming messages containing file attachments to 10 MB. For larger files send the summons response in multiple e-mail messages.

**Alternates:**

The records should be delivered to Criminal Investigator, FSN Mark J. Zivilik at U.S. Immigration and Customs Enforcement, HSI International Affairs, American Embassy London, Unit 8400 Box 52, DPO, AE 09498-0052.

If you have questions, please contact Criminal Investigator, FSN Mark J. Zivilik at [redacted]

*You are requested not to disclose the existence of this summons for an indefinite period of time. Any such disclosure will impede this investigation and thereby interfere with the enforcement of federal law.*

End of Document

| 1. To (Name, Address, City, State, Zip Code)<br>Extended Stay America<br>923 228th Street Southeast<br>Bothell, WA 98021 | DEPARTMENT OF HOMELAND SECURITY<br><br>**SUMMONS**<br><br>to Appear and/or Produce Records<br>19 U.S.C. § 1509 |
|---|---|
| Summons Number ICE-HSI-SE-2017-00088 | |

By the service of this summons upon you, **YOU ARE HEREBY SUMMONED AND REQUIRED TO:**

(A) ☐ **APPEAR** before the U.S. Customs and Border Protection (CBP) Officer or U.S. Immigration and Customs Enforcement (ICE) Special Agent named in Block 2 at the place, date and time indicated to testify and give information.

(B) ☒ **PRODUCE** the records (including statements, declarations, and other documents) indicated in Block 3 before the CBP Officer or ICE Special Agent named in Block 2 at the place, date and time indicated.

Your testimony and/or production of the indicated records is required in connection with an investigation or inquiry to ascertain the correctness of entries, to determine the liability for duties, taxes, fines, penalties, or forfeitures, and/or to ensure compliance with the laws or regulations administered by CBP and ICE.

Failure to comply with this summons will render you liable to proceedings in a U.S. District Court to enforce compliance with this summons as well as other sanctions..

| 2. (A) CBP Officer or ICE Special Agent before whom you are required to appear | (B) Date |
|---|---|
| Name: Dan Huynh<br>Title: Special Agent<br>Address: Homeland Security Investigations<br>1000 2nd Avenue<br>Suite 2300<br>Seattle, WA 98104<br>Telephone Number 206-442-2200 Fax Number 206-442-2201 | Forthwith<br><br>(C) Time |

| 3. Records required to be produced for inspection |
|---|
| Please see attached continuation page. |

*You are requested not to disclose the existence of this summons for an indefinite period of time. Any such disclosure will impede this investigation and thereby interfere with the enforcement of federal law.*

Issued under authority of section 509, Tariff Act of 1930, as amended by Pub. L. No. 95-410 (19 U.S.C. § 1509); 44 F.R. 2217; Homeland Security Act of 2002

| 4. Name of person authorized to serve this summons or any other CBP Officer or ICE Special Agent | 5. Date of Issue 3/29/2017 |
|---|---|
| Dan Huynh | By [signature] (Signature) |

6. Name, title, address and telephone number of person issuing this summons

Name: Bradford A. Bench
Title: Special Agent in Charge
Address: Homeland Security Investigations
1000 2nd Avenue
Suite 2300
Seattle, WA 98104
Telephone Number 206-442-2200

If you have any questions regarding this summons, contact the CBP Officer or ICE Special Agent identified in Block 2.

DHS Form 3115 (6/09)

USCA4 Appeal: 18-4573 Doc: 28 Filed: 10/15/2018 Pg: 149 of 199

| 1. To (Name, Address, City, State, Zip Code)<br>Extended Stay America<br>923 228th Street Southeast<br>Bothell, WA 98021 | DEPARTMENT OF HOMELAND SECURITY<br>**SUMMONS** (Continuation)<br>to Appear and/or Produce Records<br>19 U.S.C. § 1509 |
|---|---|

Summons Number ICE-HSI-SE-2017-00088

3. Records required to be produced for inspection (continued)

Copies of all business records for the time of November 1, 2016 through the present including but not limited to records identifying:

(a) all hotel charges for rooms and other services,
(b) all payments made for hotel charges,
(c) the payer of all hotel charges,
(d) any credit cards used to pay all hotel charges, and
(e) vehicles stored on the hotel premises for the following hotel guest and vehicle:

[redacted], possibly providing a mailing address of [redacted].

Any or all person(s) possibly providing a mailing address of [redacted]

[redacted] with Washington State license number [redacted].

**Method of Response:**

**Preferred:**

Return the requested records in an accessible data file format such as ".XLS", ".CSV", ".TXT", or ".PDF". The data file(s) should be delivered via e-mail to Special Agent Dan Huynh at Dan.Huynh@ice.dhs.gov.

NOTE: The ICE e-mail system limits incoming messages containing file attachments to 10 MB. For larger files send the summons response in multiple e-mail messages.

**Alternates:**

The records should be delivered to Special Agent Dan Huynh at U.S. Immigration and Customs Enforcement, Homeland Security Investigations, 1000 2nd Avenue, Suite 2300, Seattle, WA 98104.

If you have questions, please contact Special Agent Dan Huynh at 206-442-2200.

*You are requested not to disclose the existence of this summons for an indefinite period of time. Any such disclosure will impede this investigation and thereby interfere with the enforcement of federal law.*

End of Document

## CERTIFICATE OF SERVICE AND ACKNOWLEDGMENT OF RECEIPT

### A. CERTIFICATE OF SERVICE OF SUMMONS

I certify that I served the summons on the front of this form as follows:

☐ I delivered a copy of the summons to the person to whom it was directed, as follows:

Address or Location:

Date:

Time: ☐ a.m. ☐ p.m.

☒ (For corporations, partnerships, and unincorporated associations which may be sued under a common name)
I delivered a copy of the summons to an officer, managing or general agent, or agent authorized to accept service of process as follows:

Address or Location: EXTENDED STAY AMERICA 923 228th ST SE BOTHELL, WA 98021

Date: 3/21/2017 3:39

Time: 3:39 pm ☐ a.m. ☒ p.m.

Name of person to whom the summons was delivered: [redacted]

Signature: [signature]

Title: SPECIAL AGENT

Date: 3/21/2017

### B. ACKNOWLEDGMENT OF RECEIPT

I acknowledge receipt of a copy of the summons on the front of this form.

Signature: [signature]

Title: Guest Services Representative

Date: 3/20/17

Time: 3:41 ☐ a.m. ☒ p.m.

DHS Form 3115 (6/09)

CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILE, VA
FILED
04/24/2018
JULIA C. DUDLEY, CLERK
BY: J. Jones
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>RICHARD ALAN WELLBELOVED-STONE,<br><br>*Defendant.* | CASE NO. 3:17-CR-00014<br><br>ORDER<br><br>JUDGE NORMAN K. MOON |

This case is before the Court on Defendant Richard Wellbeloved-Stone's ("Defendant") motion to dismiss and two motions to suppress. For reasons that will be stated in a memorandum opinion to follow:

Defendant's motion to dismiss, (dkt. 32), is **DENIED.**

Defendant's motion to suppress the § 1509 summonses, (dkts. 31, 36, 49), is **DENIED**.

Defendant's motion to suppress the search warrant, (dkt. 35), is **DENIED**.

It is so **ORDERED**.

The Clerk of the Court is hereby directed to send a certified copy of this Order to all counsel of record.

Entered this 24th day of April, 2018.

Norman K. Moon
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE

FILED IN OPEN COURT
DATE: 4/26/18
[signature]
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 3:17CR00014** |
| | : | |
| **RICHARD ALAN WELLBELOVED-STONE** | : | |

## PLEA AGREEMENT

I have agreed to enter into a plea agreement with the United States of America, pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The terms and conditions of this agreement are as follows:

### A. CHARGE(S) TO WHICH I AM PLEADING GUILTY AND WAIVER OF RIGHTS

#### 1. The Charges and Potential Punishment

My attorney has informed me of the nature of the charge(s) and the elements of the charge(s) that must be proved by the United States beyond a reasonable doubt before I could be found guilty as charged.

I will enter a plea of guilty to Count 3 of the Indictment.

Count 3 charges me with using a prepubescent minor to engage in sexually explicit for the purpose of producing one or more visual depictions of that conduct, which visual depictions were produced using materials that had been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, in violation of 18 U.S.C. §§ 2251(a) and 2251(e). The maximum statutory penalty is a fine of $250,000 and/or imprisonment for a term of thirty years, plus a term of supervised release. There is a mandatory minimum term of supervised release of 5 years and a maximum term of life, pursuant to 18 U.S.C. § 3583(k). There is a mandatory minimum sentence of imprisonment for a term of fifteen years.

*Defendant's Initials:* RWS

I understand restitution may be ordered, my assets may be subject to forfeiture, and fees may be imposed to pay for incarceration, supervised release, and costs of prosecution. In addition, a $100 special assessment, pursuant to 18 U.S.C. § 3013, will be imposed per felony count of conviction. I further understand my supervised release may be revoked if I violate its terms and conditions. I understand a violation of supervised release increases the possible period of incarceration.

I am pleading guilty as described above because I am in fact guilty and because I believe it is in my best interest to do so and not because of any threats or promises. There has been no promise made whatsoever by anyone as to what the final disposition of this matter will be.

**2. Waiver of Constitutional Rights Upon a Plea of Guilty**

I acknowledge I have had all of my rights explained to me and I expressly recognize I have the following constitutional rights and, by voluntarily pleading guilty, I knowingly waive and give up these valuable constitutional rights:

a. The right to plead not guilty and persist in that plea;
b. The right to a speedy and public jury trial;
c. The right to assistance of counsel at that trial and in any subsequent appeal;
d. The right to remain silent at trial;
e. The right to testify at trial;
f. The right to confront and cross-examine witnesses called by the government;
g. The right to present evidence and witnesses in my own behalf;
h. The right to compulsory process of the court;
i. The right to compel the attendance of witnesses at trial;
j. The right to be presumed innocent;
k. The right to a unanimous guilty verdict; and
l. The right to appeal a guilty verdict.

**3. Dismissal of Counts**

If I comply with my obligations under the plea agreement, the United States will move, at sentencing, that I be dismissed as a defendant in any remaining count(s). I stipulate and agree the United States had probable cause to bring all the counts in the Indictment which are being dismissed under this agreement, these charges were not frivolous, vexatious or in bad faith, and I am not a "prevailing party" with regard to these

***Defendant's Initials:*** TW

charges. I further waive any claim for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

Additionally, as set forth further below, I will be held responsible for restitution for any victims of any of the dismissed charges. I further admit that I committed the offenses set forth in the dismissed counts and will acknowledge facts underlying all of the charges in the statement of facts.

## B. SENTENCING PROVISIONS

### 1. General Matters

I understand the determination of what sentence should be imposed, within the confines of any applicable statutory minimums and maximums, is in the sole discretion of the Court subject to its consideration of the United States Sentencing Guidelines ("guidelines" or "U.S.S.G") and the factors set forth at 18 U.S.C. § 3553(a). I understand I will have an opportunity to review a copy of my presentence report in advance of my sentencing hearing and may file objections, as appropriate. I will have an opportunity at my sentencing hearing to present evidence, bring witnesses, cross-examine any witnesses the government calls to testify, and argue to the Court what an appropriate sentence should be within the confines of the terms of this agreement.

I understand I will not be eligible for parole during any term of imprisonment imposed. I understand the Court is not bound by any recommendation or stipulation contained in this agreement and may sentence me up to the statutory maximum. I understand I will not be allowed to withdraw my plea of guilty if the Court disregards the stipulations and/or recommendations set forth in the plea agreement.

I understand if the sentence is more severe than I expected, I will have no right to withdraw my plea. I have discussed sentencing issues with my attorney and realize there is a substantial likelihood I will be incarcerated.

### 2. Sentencing Guidelines

I stipulate and agree that all matters pertaining to any of the counts of the charging document(s), including any dismissed counts, are relevant conduct for purposes of sentencing.

I understand guideline sections may be applicable to my case and the United States and I will be free to argue whether these sections should or should not apply, to the extent

***Defendant's Initials:*** [initials]

the arguments are not inconsistent with the stipulations, recommendations and terms set forth in this plea agreement.

I agree to accept responsibility for my conduct. If I comply with my obligations under this plea agreement and accept responsibility for my conduct, the United States will recommend the Court grant me a two-level reduction in my offense level, pursuant to U.S.S.G. § 3E1.1(a) and, if applicable, at sentencing, will move that I receive a one-level reduction in my offense level, pursuant to U.S.S.G. § 3E1.1(b), for purposes of any guidelines calculation. However, I stipulate that if I fail to accept responsibility for my conduct or fail to comply with any provision of this plea agreement, I should not receive credit for acceptance of responsibility. In addition, I understand and agree the United States will have a continuing objection to me receiving credit for acceptance of responsibility until I have testified truthfully at my sentencing hearing, if called upon to testify. I agree the United States will not be required to make any other notice of its objection on this basis.

**3. Substantial Assistance**

I understand the United States retains all of its rights pursuant to Fed. R. Crim. P. 35(b), U.S.S.G. §5K1.1 and 18 U.S.C. § 3553(e). I understand even if I fully cooperate with law enforcement, the United States is under no obligation to make a motion for the reduction of my sentence. I understand if the United States makes a motion for a reduction in my sentence, the Court, after hearing the evidence, will determine how much of a departure, if any, I should be given.

**4. Monetary Obligations**

**a. Special Assessments, Fines and Restitution**

I understand persons convicted of crimes are required to pay a mandatory assessment of $100.00 per felony count of conviction. I agree I will submit to the U.S. Clerk's Office, a certified check, money order, or attorney's trust check, made payable to the "Clerk, U.S. District Court" for the total amount due for mandatory assessments prior to entering my plea of guilty.

I agree to pay restitution for the entire scope of my criminal conduct, including, but not limited to, all matters included as relevant conduct; this includes payment of restitution to victims in the dismissed counts. In addition, I agree to pay any restitution required by law, including, but not limited to, amounts due pursuant to 18 USC §§ 2259, 3663, and/or

*Defendant's Initials:*

3663A. I understand and agree a requirement I pay restitution for all of the above-stated matters will be imposed upon me as part of any final judgment in this matter.

I further agree to make good faith efforts toward payment of all mandatory assessments, restitution and fines, with whatever means I have at my disposal. I agree failure to do so will constitute a violation of this agreement. I will execute any documents necessary to release the funds I have in any repository, bank, investment, other financial institution, or any other location in order to make partial or total payment toward the mandatory assessments, restitution and fines imposed in my case.

I fully understand restitution and forfeiture are separate financial obligations which may be imposed upon a criminal defendant. I further understand there is a process within the Department of Justice whereby, in certain circumstances, forfeited funds may be applied to restitution obligations. I understand no one has made any promises to me that such a process will result in a decrease in my restitution obligations in this case.

I understand and agree, pursuant to 18 U.S.C. §§ 3613 and 3664(m), whatever monetary penalties are imposed by the Court will be due immediately and subject to immediate enforcement by the United States as provided for by statute. I understand if the Court imposes a schedule of payments, that schedule is only a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment.

I agree to grant the United States a wage assignment, liquidate assets, or complete any other tasks which will result in immediate payment in full, or payment in the shortest time in which full payment can be reasonably made as required under 18 U.S.C. § 3572(d).

I agree the following provisions, or words of similar effect, should be included as conditions of probation and/or supervised release: (1) "The defendant shall notify the Financial Litigation Unit, United States Attorney's Office, in writing, of any interest in property obtained, directly or indirectly, including any interest obtained under any other name, or entity, including a trust, partnership or corporation after the execution of this agreement until all fines, restitution, money judgments and monetary assessments are paid in full" and (2) "The Defendant shall notify the Financial Litigation Unit, United States Attorney's Office, in writing, at least 30 days prior to transferring any interest in property owned directly or indirectly by Defendant, including any interest held or owned under any other name or entity, including trusts, partnership and/or corporations until all fines, restitution, money judgments and monetary assessments are paid in full."

***Defendant's Initials:*** [initials]

The parties will also jointly recommend that as a condition of probation or supervised release, Defendant will notify the Financial Litigation Unit, United States Attorney's Office, before Defendant transfers any interest in property owned directly or indirectly by Defendant, including any interest held or owned under any other name or entity, including trusts, partnership and/or corporations. See 18 U.S.C. § 3664(k), (n).

Regardless of whether or not the Court specifically directs participation or imposes a schedule of payments, I agree to fully participate in inmate employment under any available or recommended programs operated by the Bureau of Prisons.

I agree any payments made by me shall be applied fully to the non-joint and several portion of my outstanding restitution balance until the non-joint and several portion of restitution is paid in full, unless the Court determines that to do so would cause a hardship to a victim of the offense(s).

**b. <u>Duty to Make Financial Disclosures</u>**

I understand in this case there is a possibility substantial fines and/or restitution may be imposed. In order to assist the United States as to any recommendation and in any necessary collection of those sums, I agree, if requested by the United States, to provide a complete and truthful financial statement to the United States Attorney's Office, within 30 days of the request or 3 days prior to sentencing, whichever is earlier, detailing all income, expenditures, assets, liabilities, gifts and conveyances by myself, my spouse and my dependent children and any corporation, partnership or other entity in which I hold or have held an interest, for the period starting on January 1st of the year prior to the year my offense began and continuing through the date of the statement. This financial statement shall be submitted in a form acceptable to the United States Attorney's office.

From the time of the signing of this agreement or the date I sign the financial statement, whichever is earlier, I agree not to convey anything of value to any person without the authorization of the United States Attorney's Office.

**c. <u>Understanding of Collection Matters</u>**

I understand:

1. as part of the judgment in this case I will be ordered to pay one or more monetary obligations;
2. payment should be made as ordered by the Court;
3. I must mail payments, by cashier's check or money order, payable to the "Clerk,

***Defendant's Initials:*** [initials]

U.S. District Court" to: 210 Franklin Road, S.W., Suite 540, Roanoke, Virginia 24011; and include my name and court number on the check or money order;

4. interest (unless waived by the Court) and penalties must be imposed for late or missed payments;
5. the United States may file liens on my real and personal property that will remain in place until monetary obligations are paid in full, or until liens expire (the later of 20 years from date of sentencing or release from incarceration);
6. if I retain counsel to represent me regarding the United States' efforts to collect any of my monetary obligations, I will immediately notify the United States Attorney's Office, ATTN: Financial Litigation Unit, P.O. Box 1709, Roanoke, Virginia 24008-1709, in writing, of the fact of my legal representation; and
7. I, or my attorney if an attorney will represent me regarding collection of monetary obligations, can contact the U.S. Attorney's Office's Financial Litigation Unit at 540/857-2259.

## C. FORFEITURE

I agree to the forfeiture of the assets set forth in this section on the grounds set forth in the Order of Forfeiture. I agree this Order of Forfeiture shall be entered by the Court and shall be final at the time I enter my plea. To the extent necessary, I waive notice of forfeiture as to any asset I have agreed to forfeit and waive oral pronouncement at sentencing.

The assets to be forfeited are the items set forth in the Indictment.

I agree to cooperate fully in the forfeiture of the property to be forfeited. If applicable, I agree to withdraw any existing claims and/or agree not to file any claims in any administrative or civil forfeiture proceeding relating to assets seized as part of this investigation and not otherwise named herein. I agree to execute all documents, stipulations, consent judgments, court orders, bills of sale, deeds, affidavits of title, and the like, which are reasonably necessary to pass clear title to the United States or otherwise effectuate forfeiture of the property. I further agree to fully cooperate and testify truthfully on behalf of the United States in any legal action necessary to perfect the United States' interest, including but not limited to any ancillary hearing in this criminal action or in any civil litigation.

I further agree to assist in identifying, locating, returning, and forfeiting all forfeitable assets, including the known assets of other persons.

***Defendant's Initials:*** [handwritten initials]

I further agree that the forfeiture provisions of this plea agreement are intended to, and will, survive me, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if I had survived, and that determination shall be binding upon my heirs, successors and assigns until the agreed forfeiture, including any agreed money judgment amount, is collected in full. To the extent that forfeiture pursuant to this agreement requires me to disgorge wrongfully obtained criminal proceeds, I agree that the forfeiture is primarily remedial in nature.

I understand and agree that forfeiture of this property is proportionate to the degree and nature of the offense committed by me. I freely and knowingly waive all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. I further understand and agree this forfeiture is separate and distinct from, and is not in the nature of, or in lieu of, any penalty that may be imposed by the Court.

I understand and agree that any monetary sum(s) the United States has agreed to release will be less any debt owed to the United States, any agency of the United States, or any other debt in which the United States is authorized to collect.

I hereby release and forever discharge the United States, its officers, agents, servants and employees, its heirs, successors, or assigns, from any and all actions, causes of action, suits, proceedings, debts, dues, contracts, judgments, damages, claims, and/or demands whatsoever in law or equity which I ever had, now have, or may have in the future in connection with the seizure, detention and forfeiture of the described assets.

## D. ADDITIONAL MATTERS

### 1. Waiver of Right to Appeal

Knowing that I have a right of direct appeal of my sentence under 18 U.S.C. § 3742(a) and the grounds listed therein, I expressly waive the right to appeal my sentence on those grounds or on any ground. In addition, I hereby waive my right of appeal as to any and all other issues in this matter and agree I will not file a notice of appeal, except for the sole issues set forth below relating to two suppression motions and one motion to dismiss filed in December 2017. I am knowingly and voluntarily waiving any right to appeal any other issues. By signing this agreement, I am explicitly and irrevocably directing my attorney not to file a notice of appeal relating to any other issues.

***Defendant's Initials:*** ______

***Notwithstanding any other language to the contrary, I am not waiving my right to appeal or to have my attorney file a notice of appeal, as to any issue which cannot be waived, by law.*** I understand the United States expressly reserves all of its rights to appeal. **I agree and understand if I file any court document (except for an appeal based on an issue that cannot be waived, by law, or a collateral attack based on ineffective assistance of counsel) seeking to disturb, in any way, any order imposed in my case such action shall constitute a failure to comply with a provision of this agreement.**

**a. Right to Appeal the District Court's Denial of Suppression and Dismissal Motions**

Pursuant to Rule 11(a)(2) of the Federal Rules of Criminal Procedure, I understand that I will retain the right to appeal any adverse determination of my suppression and dismissal motions.

**2. <u>Waiver of Right to Collaterally Attack</u>**

I waive any right I may have to collaterally attack, in any future proceeding, any order issued in this matter, unless such attack is based on ineffective assistance of counsel, and agree I will not file any document which seeks to disturb any such order, unless such filing is based on ineffective assistance of counsel. **I agree and understand that if I file any court document (except for an appeal based on an issue not otherwise waived in this agreement; an appeal based on an issue that cannot be waived, by law; or a collateral attack based on ineffective assistance of counsel) seeking to disturb, in any way, any order imposed in my case, such action shall constitute a failure to comply with a provision of this agreement.**

**3. <u>Information Access Waiver</u>**

I knowingly and voluntarily agree to waive all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. §552, or the Privacy Act of 1974, 5 U.S.C. §552a.

**4. <u>Waiver of Witness Fee</u>**

I agree to waive all rights, claims or interest in any witness fee I may be eligible to receive pursuant to 28 U.S.C. § 1821, for my appearance at any Grand Jury, witness

***Defendant's Initials:*** 

conference or court proceeding.

**5. Abandonment of Seized Items**

By signing this plea agreement, I hereby abandon my interest in, and consent to the official use, destruction or other disposition of each item obtained by any law enforcement agency during the course of the investigation, unless such item is specifically provided for in another provision of this plea agreement. I further waive any and all notice of any proceeding to implement the official use, destruction, abandonment, or other disposition of such items.

**6. Special Conditions of Supervised Release**

I understand and agree the Court will impose various special conditions of supervised release, in addition to the standard conditions, due to the nature of my sex offenses as well as my status as a sex offender.

**7. Megan's Law/Adam Walsh Act Notice**

I have been advised and understand that under the Sex Offender Registration and Notification Act, a federal law, I must register and keep the registration current in each of the following jurisdictions: the location of my residence; the location of my employment; and, if I am a student, the location of my school. Registration will require that I provide information that includes name, residence address, and the names and addresses of any places at which I will be an employee or a student. I understand that I must update my registration not later than three business days after any change of name, residence, employment, or student status. I understand that failure to comply with these obligations may subject me to prosecution for failure to register under federal law, 18 U.S.C. § 2250, which is punishable by a fine and/or imprisonment.

**8. Deportation**

I understand if I am not a citizen of the United States, I may be subject to deportation from the United States, denied United States citizenship, and denied admission to the United States in the future, as a result of my conviction for the offense(s) to which I am pleading guilty.

**9. Denial of Federal Benefits**

At the discretion of the court, I understand I may also be denied any or all federal

***Defendant's Initials:*** [signature]

benefits, as that term is defined in 21 U.S.C. § 862, (a) for up to five years if this is my first conviction of a federal or state offense consisting of the distribution of controlled substances, or up to one year if this is my first conviction of a federal or state offense involving the possession of a controlled substance; or (b) for up to ten years if this is my second conviction of a federal or state offense consisting of the distribution of controlled substances, or up to five years if this is my second or more conviction of a federal or state offense involving the possession of a controlled substance. If this is my third or more conviction of a federal or state offense consisting of the distribution of controlled substances, I understand I could be permanently ineligible for all federal benefits, as that term is defined in 21 U.S.C. § 862(d).

**10. Admissibility of Statements**

I understand if I fail to plead guilty in accordance with this agreement or withdraw my plea(s) of guilty any statements I make (including this plea agreement, and my admission of guilt) during or in preparation for any guilty plea hearing, sentencing hearing, or other hearing and any statements I make or have made to law enforcement agents, in any setting (including during a proffer), may be used against me in this or any other proceeding. I knowingly waive any right I may have under the Constitution, any statute, rule or other source of law to have such statements, or evidence derived from such statements, suppressed or excluded from being admitted into evidence and stipulate that such statements can be admitted into evidence.

**11. Additional Obligations**

I agree not to commit any of the following acts:

- attempt to withdraw my guilty plea;
- deny I committed any crime to which I have pled guilty;
- make or adopt any arguments or objections to the presentence report that are inconsistent with this plea agreement;
- obstruct justice;
- fail to comply with any provision of this plea agreement;
- commit any other crime;
- make a false statement;
- fail to enter my plea of guilty when scheduled to do so, unless a continuance is agreed to by the United States Attorney's Office and granted by the Court; or
- fail to testify truthfully, as to any matter, if called upon to do so (at my

***Defendant's Initials:***

sentencing hearing or any other proceeding).

**E. REMEDIES AVAILABLE TO THE UNITED STATES**

I hereby stipulate and agree that the United States Attorney's office may, at its election, pursue any or all of the following remedies if I fail to comply with any provision of this agreement: (a) declare this plea agreement void; (b) refuse to dismiss any charges; (c) reinstate any dismissed charges; (d) file new charges; (e) withdraw any substantial assistance motion made, regardless of whether substantial assistance has been performed; (f) refuse to abide by any provision, stipulations, and/or recommendations contained in this plea agreement; or (g) take any other action provided for under this agreement or by statute, regulation or court rule.

In addition, I agree if, for any reason, my conviction is set aside, or I fail to comply with any obligation under the plea agreement, the United States may file, by indictment or information, any charges against me which were filed and/or could have been filed concerning the matters involved in the instant investigation. I hereby waive my right under Federal Rule of Criminal Procedure 7 to be proceeded against by indictment and consent to the filing of an information against me concerning any such charges. I also hereby waive any statute of limitations defense as to any such charges.

The remedies set forth above are cumulative and not mutually exclusive. The United States' election of any of these remedies, other than declaring this plea agreement void, does not, in any way, terminate my obligation to comply with the terms of the plea agreement. The use of "if" in this section does not mean "if, and only if."

**F. GENERAL PROVISIONS**

**1. Limitation of Agreement**

This agreement only binds the United States Attorney's Office for the Western District of Virginia. It does not bind any state or local prosecutor, other United States Attorney's Office or other office or agency of the United States Government, including, but not limited to, the Tax Division of the United States Department of Justice, or the Internal Revenue Service of the United States Department of the Treasury. These individuals and agencies remain free to prosecute me for any offense(s) committed within their respective jurisdictions.

**2. Effect of My Signature**

***Defendant's Initials:*** ______

I understand my signature on this agreement constitutes a binding offer by me to enter into this agreement. I understand the United States has not accepted my offer until it signs the agreement.

3. **Effective Representation**

I have discussed the terms of the foregoing plea agreement and all matters pertaining to the charges against me with my attorney and am fully satisfied with my attorney and my attorney's advice. At this time, I have no dissatisfaction or complaint with my attorney's representation. I agree to make known to the Court no later than at the time of sentencing any dissatisfaction or complaint I may have with my attorney's representation.

4. **Misconduct**

If I have any information concerning any conduct of any government attorney, agent, employee, or contractor which could be construed as misconduct or an ethical, civil, or criminal violation, I agree to make such conduct known to the United States Attorney's Office and the Court, in writing, as soon as possible, but no later than my sentencing hearing.

5. **Final Matters**

I understand a thorough presentence investigation will be conducted and sentencing recommendations independent of the United States Attorney's Office will be made by the presentence preparer, which the Court may adopt or take into consideration. I understand any calculation regarding the guidelines by the United States Attorney's Office or by my attorney is speculative and is not binding upon the Court, the Probation Office or the United States Attorney's Office. No guarantee has been made by anyone regarding the effect of the guidelines on my case.

I understand the prosecution will be free to allocute or describe the nature of this offense and the evidence in this case and make any recommendations not prohibited by this agreement.

I understand the United States retains the right, notwithstanding any provision in this plea agreement, to inform the Probation Office and the Court of all relevant facts, to address the Court with respect to the nature and seriousness of the offense(s), to respond to any questions raised by the Court, to correct any inaccuracies or inadequacies in the

***Defendant's Initials:*** ______

presentence report and to respond to any statements made to the Court by or on behalf of the defendant.

I willingly stipulate there is a sufficient factual basis to support each and every material factual allegation contained within the charging document(s) to which I am pleading guilty.

I understand this agreement does not apply to any crimes or charges not addressed in this agreement. I understand if I should testify falsely in this or in a related proceeding I may be prosecuted for perjury and statements I may have given authorities pursuant to this agreement may be used against me in such a proceeding.

I understand my attorney will be free to argue any mitigating factors on my behalf; to the extent they are not inconsistent with the terms of this agreement. I understand I will have an opportunity to personally address the Court prior to sentence being imposed.

This writing sets forth the entire understanding between the parties and constitutes the complete plea agreement between the United States Attorney for the Western District of Virginia and me, and no other additional terms or agreements shall be entered except and unless those other terms or agreements are in writing and signed by the parties. This plea agreement supersedes all prior understandings, promises, agreements, or conditions, if any, between the United States and me.

I have consulted with my attorney and fully understand all my rights. I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand this agreement and I voluntarily agree to it. I have not been coerced, threatened, or promised anything other than the terms of this plea agreement, described above, in exchange for my plea of guilty. Being aware of all of the possible consequences of my plea, I have independently decided to enter this plea of my own free will, and am affirming that agreement on this date and by my signature below.

**Date:** 2/5/18 [signature]

**Richard Alan Wellbeloved-Stone, Defendant**

I have fully explained all rights available to my client with respect to the offenses listed in the pending charging document(s). I have carefully reviewed every part of this plea agreement with my client. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

***Defendant's Initials:*** [initials]

If I will continue to represent my client regarding the United States' efforts to collect any monetary obligations, I will notify the United States Attorney's Office, ATTN: Financial Litigation Unit, P.O. Box 1709, Roanoke, Virginia 24008-1709, in writing, of the fact of my continued legal representation within 10 days of the entry of judgment in this case.

**Date:** 4-25-18

**Andrea S. Harris, Esq.**
**Counsel for Defendant**

**Date:** 4-25-18

**Lisa Lorish, Esq.**
**Counsel for Defendant**

**Date:** 4/26/18

**Nancy S. Healey**
**Assistant United States Attorney**
**Virginia State Bar No. 39447**

**Date:** 4/26/18

**Leslie Williams Fisher, Trial Attorney**
**U.S. Dept. of Justice**
**Child Exploitation and Obscenity Section**

***Defendant's Initials:***

FILED IN OPEN COURT
DATE: 4/26/18
A. Wheeler
DEPUTY CLERK

IN THE
UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **v.** | : | **Criminal No. 3:176CR00014** |
| | : | |
| **RICHARD ALAN WELLBELOVED-STONE** | : | |

**STATEMENT OF FACTS**

At all times relevant to the Indictment, the defendant, RICHARD ALAN WELLBELOVED-STONE, lived in Charlottesville, Virginia. In June and July 2017, the defendant communicated online, via KIK instant messenger and via email, with an undercover law enforcement officer (U/C) located in England. The U/C was posing as a father who had been engaging in sexual contact with his purported daughters. During his communications with the U/C, the defendant asked multiple questions about the U/C's alleged relationships with the fictional daughters and claimed that he (the defendant) was sexually interested in a particular young girl, indicated that he was "slowly cultivating [her] curiosity," and indicated that he had already "had a little taste" of her. He told the U/C that he expected to spend some significant time with the same girl that month. The defendant further solicited images from the U/C after the U/C claimed that he had been molesting his alleged daughters and asked if the U/C had "any links to pics?" He also told the U/C during another online conversation that he was fantasizing about the above-referenced girl. He further asked how the U/C got his daughters to understand the need for

secrecy and later told the U/C that he had watched live video of young teens, an 11year old boy, and a brother with an approximately nine-year old sister.

Further investigation in July 2017, including information gleaned from the returns on summonses issued by Homeland Security Investigations, ultimately linked the IP address used by the defendant during communications with the U/C to the defendant. Open source information indicated that the defendant was a school teacher in Charlottesville.

On July 25, 2017, investigators with Charlottesville Police Department, Homeland Security Investigations and other agencies executed a state search warrant at the defendant's Charlottesville home. During the search, multiple devices were seized. Previews of two cellphones (a Samsung Nexus S and iPhone 7 Plus) revealed several images depicting the lascivious exhibition of the genital or pubic areas of the two minors referenced in Counts One through Three of the Indictment. A federal search warrant was obtained to search the seized digital devices further.

The image(s) of Minor 1 charged in Count One were produced in September 2013. The images of Minor 2 charged in Counts Two and Three were produced on two days in May 2017, and depict the minor the defendant is believed to have been discussing with the U/C. Each of the images depict the lascivious exhibition of the genital or pubic area of the two minors. Some of the images depicting Minor 2 show the defendant touching the girl's external labia. It appears that each of the minors was likely sleeping during the production of the images, and neither child's face is visible in any of the child pornography images. Information from each of the minors' parents confirmed their identities. The parents corroborated certain details about the defendant's knowledge of and access to the children, including that the defendant had contact with the minors

while they were not present. Minor 2's parents specifically confirmed that the defendant had access to Minor 2 on the dates in May 2017 when the pornographic images were produced.

Additionally, a parent of Minor 1 identified the pajamas worn by the child depicted in the images as belonging to Minor 1. A folder on the defendant's Apple laptop computer "Macintosh HD\Users\rickw\My Pictures\2013\" contained an image of Minor 1 wearing the same pajamas that she was wearing when the defendant produced the pornographic images of her. The folder name also contained Minor 1's first name and information describing the context of the defendant's contact with her at the time. Three other similar non-pornographic images were found on one of the defendant's Lacie hard drives in a folder "LA-PUBLIC\Pictures\My Pictures\pics from Liz's Phone\." Other pictures with the same date depict Minor 1 naked in a bathtub with the defendant just outside the bathtub. Additional investigation revealed that Minor 1 had spent significant time with the defendant previously.

The defendant also collected other non-self-produced child pornography, including depictions of prepubescent minors and including file names with descriptive titles consistent with child pornography. For example, one of the images had the file name "...!!Pthc Lsm Magazine 9Yo Kidzilla Pre-Teen young Little Girls Harry Potter Jenny – Lsm-004-0691 (5)U.jpg." A movie file depicting a minor girl performing oral sex was entitled "...pthc 12 yo holy cross middle school cougar girl sucks young boyfriend – homemade webcam.mpg." Forensic examination of an Apple laptop indicated that the defendant had installed the eMule peer-to-peer program. Search terms included "pre-teen," "young girl," and "lolita."

Minors 1 and 2 were each young, prepubescent, girls when the defendant produced the child pornography at issue in Counts One through Three. The digital items used to produce and

possess the child pornography in Counts One through Four were manufactured outside Virginia. The two phones used to produce the images were owned and used exclusively by the defendant.

2/5/18
Date

RICHARD ALAN WELLBELOVED-STONE
Defendant

4-25-18
Date

Lisa M. Lorish
Assistant Federal Public Defender
Attorney for Defendant

4-25-18
Date

Andrea Harris
Assistant Federal Public Defender
Attorney for Defendant

4/26/18
Date

Nancy S. Healey
Assistant United States Attorney
Virginia State Bar No. 39447

4/26/18
Date

Leslie Williams Fisher
Trial Attorney
Child Exploitation & Obscenity Section
U.S. Department of Justice

CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
04/26/2018
JULIA C. DUDLEY, CLERK
BY: J. Jones
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>RICHARD ALAN WELLBELOVED-STONE,<br><br>*Defendant.* | CASE NO. 3:17-CR-00014<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

This case is before the Court on Defendant's motion to dismiss and two motions to suppress. (Dkts. 31, 32, 35, 36). Defendant was indicted on three counts of violating 18 U.S.C. §§ 2251(a), (e) (possession of child pornography), and one count of violating 18 U.S.C. §§ 2252(a)(4)(B), (b)(2) (production of child pornography). Defendant moves to dismiss the counts as running afoul of the Commerce Clause, U.S. CONST. Art. I, § 8, cl. 3, arguing *Nat'l Fed'n of Indep. Bus. v. Sebelius* (*NFIB*), 567 U.S. 519 (2012), changed the Supreme Court's Commerce Clause jurisprudence and reopened the question of whether these statutes are constitutional. Defendant also moves to suppress evidence obtained pursuant to two 19 U.S.C. § 1509 summonses and a Virginia state search warrant. The motions to suppress are currently under seal, and so the Court will use general language where appropriate to maintain confidentiality. Because I find the motions to be without merit, I will deny them.

## I. Motion to Dismiss

In his motion to dismiss, Defendant lodges an as-applied challenge to 18 U.S.C. §§ 2251(a), (e) and 2252(a)(4)(B), (b)(2). (Dkt. 32). He contends that both statutes, § 2251 and § 2252, violate the Commerce Clause because they subject "individuals to federal police powers based exclusively on a lack of economic or commercial interest activity." *Id.* at ECF 3. He claims his conduct lacks a nexus to interstate commerce. *Id.* at ECF 4. The Fourth Circuit

rejected identical arguments before *NFIB*. *See United States v. Buculei*, 262 F.3d 322, 329 (4th Cir. 2001) (upholding § 2251 under the Commerce Clause); *United States v. Malloy*, 568 F.3d 166, 169, 179–80 (4th Cir. 2009) (same); *United States v. White*, 2 F. App'x 295, 297 (4th Cir. 2001) (upholding § 2252 under the Commerce Clause). *NFIB* did not reopen questions about the validity of these challenges and so these arguments still fail.

In *NFIB*, Chief Justice Roberts stated that the individual mandate in the Affordable Care Act "could not be sustained under a clause authorizing Congress to 'regulate Commerce.'" *Id.* at 558.[1] He reasoned that the individual mandate did not regulate existing commercial activity, but rather compelled individuals to engage in commercial activity under the guise that doing so affected interstate commerce. *Id.* at 552. Defendant incorrectly equates the statutes' proscription of his alleged conduct (production and possession of child pornography) with the Affordable Care Act's regulation of the inactivity at issue in *NFIB*. 567 U.S. at 558. While five members of the Supreme Court concluded the latter exceeded Congress's power under the Commerce Clause, the former does not. This result is mandated by the Fourth Circuit's pre-*NFIB* cases addressing Congress's authority to regulate this conduct.

Those cases asked whether the regulated conduct underlying the as-applied challenged had "substantially affect[ed] interstate commerce." *Buculei*, 262 F.3d at 328 (quoting *United States v. Lopez*, 514 U.S. 549, 558–59 (1995)). Analysis of this question must begin with a presumption of constitutionality. "Due respect for the decisions of a coordinate branch of Government demands that [courts] invalidate a congressional enactment only upon a plain

[1] The main discussion of the Commerce Clause in *NFIB* comes solely from Chief Justice Robert's opinion. "Five members of the Court, however, concluded that the individual mandate exceeds Congress's power under the Commerce Clause. *NFIB*, 567 U.S. at 2593 (Roberts, C.J.); *id.* at 2644–50 (Scalia, Kennedy, Thomas, and Alito, JJ., dissenting) ("joint dissent")." *Liberty Univ., Inc. v. Lew*, 733 F.3d 72, 87 (4th Cir. 2013) (analyzing a Commerce Clause issue under Chief Justice Robert's opinion taken together with the "joint dissenters").

showing that Congress has exceeded its constitutional bounds." *United States v. Morrison*, 529 U.S. 598, 607 (2000) (citing *United States v. Lopez,* 514 U.S. 549, 568, 577–578 (Kennedy, J., concurring)). A court conducting this inquiry need only find a "rational basis for concluding that an activity substantially affects interstate commerce." *United States v. Gibert*, 677 F.3d 613, 624 (4th Cir. 2012) (citing *United States v. Buculei*, 262 F.3d 322, 329 (4th Cir. 2001)); *see also Montgomery Cty., Md. v. Fed. Nat. Mortg. Ass'n*, 740 F.3d 914, 921 (4th Cir. 2014). The Supreme Court has enumerated four factors for lower courts to consider in analyzing whether an activity substantially affects interstate commerce:

> (1) whether the statute relates to an activity that has something to do with "'commerce' or any sort of economic enterprise, however broadly one might define those terms";
>
> (2) whether the statute contains an "express jurisdictional element which might limit its reach" to activities having "an explicit connection with or effect on interstate commerce";
>
> (3) whether congressional findings in the statute or its legislative history support the judgment that the activity in question has a "substantial effect on interstate commerce"; and
>
> (4) whether the link between the activity and a substantial effect on interstate commerce is attenuated.

*Gibert*, 677 F.3d at 624 (summarizing factors laid out in *United States v. Morrison*, 529 U.S. 598, 610–13 (2000)): *see also United States v. Umana*, 750 F.3d 320, 337 (4th Cir. 2014). Like the Fourth Circuit's pre-*NFIB* cases addressing the constitutionality of these statutes, I will address each of these factors in turn.

**A. The Statutes Relate to "Commerce"**

First, as to whether the statute relates to "commerce" or any sort of economic enterprise, the Fourth Circuit has held "visual depictions of minors engaging in sexually explicit conduct, *i.e.*, child pornography, is economic in nature." *Buculei*, 262 F.3d at 329 (citing *United States v.*

*Kallestad,* 236 F.3d 225, 228 (5th Cir. 2000)). The production of an item for personal consumption (in this case child pornography) that is frequently traded in interstate commerce is economic in nature. *Id.* (citing *Wickard v. Filburn*, 317 U.S. 111 (1942)). Further, the Fourth Circuit recently noted courts have "uniformly stated that the intrastate receipt, production, and possession of child pornography have a substantial effect on the interstate movement of child pornography." *United States v. Miltier*, 882 F.3d 81, at *12 (4th Cir. 2018) (citing *United States v. Paige*, 604 F.3d 1268, 1270–71 (11th Cir. 2010); *United States v. Malloy*, 568 F.3d 166, 169, 179–80 (4th Cir. 2009); *United States v. Forrest*, 429 F.3d 73, 79 (4th Cir. 2005)).

Overall, Defendant's alleged self-produced child pornography, together with his subsequent possession of it, is enough to substantially affect interstate market for such illicit depictions. *Wickard v. Filburn*, 317 U.S. 111 (1942); *see also New York v. Ferber*, 458 U.S. 747, 761 (1982) ("The advertising and selling of child pornography provide an economic motive for and are thus an integral part of the production of such materials, an activity illegal throughout the Nation."). This type of conduct is not mere inactivity, and Congress did not enact the statutes at issue to criminalize a lack of action or compel action, distinguishing this case from *NFIB*. Rather, Congress successfully undertook to punish affirmative acts (production and possession) related to child pornography that possess a nexus to interstate commerce.

Therefore, the first factor supports the constitutionality of both statutes.

**B. The Statutes Contain Jurisdictional Elements**

Second, as to whether the statute contains a jurisdictional element to limit its reach to activities with an explicit connection to interstate commerce, I find such an express jurisdictional element is present in the plain language of both statutes.

Title 18, U.S.C. § 2251(a) states:

> Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct . . . , shall be punished as provided under subsection (e), if such person knows or has reason to know that such visual depiction *will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or . . . transported in or affecting interstate or foreign commerce by any means, including by computer. . . .*

18 U.S.C. § 2251(a) (emphasis added). Likewise, under 18 U.S.C. §§ 2252(a)(4)(B):

> Any person who--knowingly possesses, or knowingly accesses with intent to view, 1 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction *that has been mailed, or has been shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer*, if--(i) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and (ii) such visual depiction is of such conduct; shall be punished as provided in subsection (b) of this section.

18 U.S.C. § 2252(a)(4)(B) (emphasis added).

In each of the statutes, the jurisdictional element modifies discrete sets of proscribed activities (in § 2251, the production of child pornography to be transported in interstate commerce, and in § 2252 knowing possession of child pornography which was produced using materials shipped in interstate commerce). This is not, as Defendant suggests, a mere "pretextual incantation evoking the phantasm of commerce." (Dkt. 32 at ECF 8 (citing *United States v. Maxwell*, 446 F.3d 1210, 1218 (11th Cir. 2006)). The *Maxwell* case on which Defendant relies in fact stated: "Our understanding of *Raich,* however, leads us to the conclusion that it is within Congress's authority to regulate *all* intrastate possession of child pornography, not just that which has traveled in interstate commerce or has been produced using materials that have traveled in interstate commerce." *Maxwell*, 446 F.3d at 1218 (emphasis in original). Here, the statute has a jurisdictional limitation restricting its application to conduct with some nexus to interstate commerce.

**C. Congressional Findings Reinforce that the Statutes Have a Substantial Effect on Interstate Commerce**

Third, as to whether congressional findings support that the statutes have a substantial effect on interstate commerce, the Fourth Circuit recently recognized that "Congress has made specific findings that the intrastate regulation of child pornography sufficiently affects the interstate child pornography market." *United States v. Miltier*, 882 F.3d 81, 89 (citing Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, § 501(1)(F), 120 Stat. 587, 624 (codified as amended at 18 U.S.C. § 2251); Child Pornography Prevention Act of 1996, Pub. L. 104-208, § 121(12), 110 Stat. 3009-26, 3009-27 (codified as amended at 18 U.S.C. § 2251)). The third factor hence supports the constitutionality of both statutes.

**D. The Link Between the Activity and Interstate Commerce is not Attenuated**

Fourth and lastly, as to whether the link between the proscribed activity and the substantial effect on interstate commerce is attenuated, the Fourth Circuit has recognized that "there is no question that the link between the activity in question [proscribed under § 2251] and interstate commerce is not in any way attenuated." *Buculei*, 262 F.3d at 329–30.

Defendant's contention that *NFIB* changes this previously recognized link is unpersuasive. First, Defendant's argument fails to recognize that his offenses originated from devices that were purchased in interstate commerce (*i.e.,* a phone and a computer). Second, the statutes themselves are limited to conduct possessing some nexus with interstate commerce. Third, the Court has already noted above that the possession and production of child pornography itself has a substantial effect on interstate commerce. These three facts taken together demonstrate a strong link between the alleged criminal conduct at issue and its substantial effect on interstate commerce.

* * *

Overall, each factor weighs in favor of finding the statutes constitutional as applied to Defendant. Ultimately, Defendant's arguments rely too heavily on *NFIB*, a case that does not address the constitutionality of Congress's regulation of the type of conduct at issue here. The Court's discussion in *NFIB* does not threaten the foundation of precedent finding the statutes at issue constitutional. *See Buculei*, 262 F.3d at 329; *White*, 2 F. App'x at 297. Every other circuit to consider the question agrees. *See, e.g., United States v. Rose,* 714 F.3d 362, 371 (6th Cir. 2013) (rejecting *NFIB* challenge to circuit precedent on interstate commerce element of 18 U.S.C. § 2251), *cert. denied,* 134 S.Ct. 272 (2013); *United States v. Sullivan*, 797 F.3d 623, 632 (9th Cir. 2015) (holding circuit precedent on the interstate commerce requirements of 18 U.S.C. §§ 2251 and 2252 remains binding after *NFIB*); *United States v. Parton,* 749 F.3d 1329, 1331 (11th Cir. 2014) (rejecting *NFIB* challenge to 18 U.S.C. § 2251(a)); *United States v. Humphrey*, 845 F.3d 1320 (10th Cir. 2017) (deciding § 2251 applied to purely intrastate production of child pornography does not violate Commerce Clause). I find 18 U.S.C. § 2251 and 18 U.S.C. § 2252, as applied to Defendant, do not violate the Commerce Clause.

## II. Motions to Suppress

### A. Motion to Suppress the 19 U.S.C. § 1509 Summonses

Defendant first moves to suppress evidence obtained under two summonses issued pursuant to 19 U.S.C. § 1509. The Government, through an overseas operative for Homeland Security Investigations (HSI), utilized § 1509 summonses to obtain Defendant's personal information (*e.g.*, IP addresses, meta-data, *etc*.) from an internet service provider and an online instant messaging platform, which in turn was used to identify him in connection with alleged child exploitation offenses. Defendant argues HSI is not endowed with the power to serve

summons related to non-customs related offenses under 19 U.S.C. § 1509. He reasons the Court should then suppress all evidence deriving from the statutorily and constitutionally deficient summonses. Defendant also contends no good-faith exception exists for such a violation.

"A statutory violation by itself, without an underlying constitutional violation, is insufficient to justify the exclusion of evidence obtained in violation of the statute in question, unless the defendant shows that Congress provided such a remedy for a violation of the statute." *United States v. Cray*, 450 F. App'x 923, 929 (11th Cir. 2012); *see also United States v. Clenney*, 631 F.3d 658, 667 (4th Cir. 2011). Assuming there was a statutory violation present in the instant case, there still was no violation of Defendant's constitutional rights, and there is no exclusionary remedy found in the statute. As a result, the motion to suppress the § 1509 summonses fails.

**1. The Search Pursuant to the § 1509 Summonses did not Violate the Fourth Amendment**

Summonses under 19 U.S.C. § 1509 can be, and have been, properly used to investigate child pornography offenses. *Cray*, 450 F. App'x at 926 (stating that the Government's case, using a § 1509 summons, was "put together by agents of [DHS], [ICE], the FBI, and the Georgia Bureau of Investigation" in charging the defendant with child pornography offenses); *United States v. Merrell*, 88 F. Supp. 3d 1017, 1033 (D. Minn. 2015), *aff'd,* 842 F.3d 577 (8th Cir. 2016) (finding that there was "nothing improper" about an agent from DHS, tasked with investigating child exploitation violations, issuing a § 1509 summons); *United States v. McLean*, No. SA-09-CR-270, 2010 WL 376381, at *3 (W.D. Tex. Jan. 25, 2010), *aff'd,* 419 F. App'x 473 (5th Cir. 2011) ("The United States Customs Service is charged with insuring compliance with child exploitation laws," including child pornography offenses); *see also United States v. Fletcher*, 763 F.3d 711, 713 (7th Cir. 2014) ("Immigration and Customs Enforcement ('ICE') Special Agents [] are experts in investigating child exploitation offenses."). Defendant's argument that

the instant offenses are somehow outside the purview of 19 U.S.C. § 1509 and the role of HSI is without merit.[2]

In order to challenge an administrative summons under the Fourth Amendment, the defendant must have a subjective expectation of privacy in the information sought, and that subjective expectation must be reasonable. *United States v. Bynum*, 604 F.3d 161, 164 (4th Cir. 2010); *see also United States v. Kitchens*, 114 F.3d 29, 31 (4th Cir. 1997) (citing *Katz,* 389 U.S. 347 (1967)). Courts have consistently found there is no expectation of privacy in a subscriber's personal information provided to his internet service provider, phone company, or voluntarily to a third party. In fact, "[e]very federal court to address this issue has held that subscriber information provided to an internet provider is not protected by the Fourth Amendment's privacy expectation." *United States v. Perrine*, 518 F.3d 1196, 1204 (10th Cir. 2008) (collecting cases) (holding that there was no expectation of privacy for defendant's Yahoo! and Cox subscriber information seized in the course of investigating child pornography offenses); *see also United States v. Ulbricht*, 858 F.3d 71 (2d Cir. 2017); *Guest v. Leis*, 255 F.3d 325, 336 (6th Cir. 2001) ("We conclude that plaintiffs in these cases lack a Fourth Amendment privacy interest in their subscriber information because they communicated it to the systems operators."). Moreover, the Fourth Circuit has held that a defendant does not have an objectively reasonable expectation of privacy in his internet and phone subscriber information, when such information was voluntarily conveyed to the internet and phone companies. *Bynum*, 604 F.3d at 164. The Fourth Circuit recognized that such "administrative subpoenas [do] not invade any legitimate privacy interest possessed by [the defendant] . . ." and therefore do not violate the Fourth Amendment. *Id.* at 164.

[2] Defendant's reference to an internal policy memorandum for the Customs and Border Protection (CBP) division of DHS does not control our analysis here. (Dkt. 36 at ECF 15). As the Government points out, CBP and HSI are distinct departments under the larger umbrella of DHS. (Dkt. 39 at ECF 11; Dkt. 36 at ECF 2 (noting in Defendant's brief in support that CBP is "another division of DHS"). Accordingly, this manual does not bind HSI.

Defendant's argument that the legal landscape *could* change in light of the Supreme Court's looming decision in *Carpenter v. United States*, No. 16-402, is rather beside the point, and I refuse to speculate on how that case will be decided or its hypothetical application here. While the digital age has and will continue to prompt changes in the law, Defendant cites no binding precedent that compels finding that the summons violated current Fourth Amendment doctrine.[3]

**2. An Exclusionary Remedy is Unavailable under § 1509**

Although the Government's search did not violate the Fourth Amendment, the evidence may nonetheless be excluded if there is a violation of the statute, and the statute itself provides an exclusionary remedy. "In the statutory context, suppression is a creature of the statute, and its availability depends on the statutory text." *Clenney*, 631 F.3d at 667 (citing *States v. Donovan,* 429 U.S. 413, 432 n. 22 (1977)). What is more, "there is no exclusionary rule generally applicable to statutory violations." *Id.* Exclusion of evidence for a statutory violation is only appropriate "where [1] the statute specifically provides for suppression as a remedy or [2] the statutory violation implicates underlying constitutional rights such as the right to be free from unreasonable search and seizure." *United States v. Abdi*, 463 F.3d 547, 556 (6th Cir. 2006) (citing *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 349 (2006). Because I find the statute at issue here, 19 U.S.C. § 1509, does not contain an exclusionary remedy, nor does it implicate Defendant's Fourth Amendment rights, Defendant's motion to suppress the summonses will be denied.

---

[3] Defendant's attempt to extend the Supreme Court's decision in *United States v. Jones*, 565 U.S. 400 (2012) is unconvincing. In *Jones*, the Court found that attaching a GPS device to a car was a search under the Fourth Amendment. *Id.* at 404. In its simplest terms, *Jones* was about: "The Government physically occup[ying] private property for the purpose of obtaining information." *Id.* Here, no such physical occupation transpired. Indeed, the summonses sought to obtain only digital information that was voluntarily provided by Defendant to third parties—nothing more, nothing less.

First, assuming that there was a violation of the statute, 19 U.S.C. § 1509 does not provide for an exclusionary remedy. *United States v. Reed*, No. CR. 08-40010, 2008 WL 11350272, at *3 (D.S.D. Nov. 17, 2008), *report and recommendation adopted,* No. CR 08-40010, 2009 WL 10678958 (D.S.D. May 7, 2009) (analogizing from the ECPA to find that there was no exclusionary remedy in 19 U.S.C. § 1509). An exclusionary remedy is simply nowhere to be found in the statutory text. Further, the alleged violation of the statute cannot be remedied by the judicially fashioned exclusionary rule. *United States v. Donovan,* 429 U.S. 413, 432 n. 22 (1977) ("[T]he suppression remedy for . . . statutory, as opposed to constitutional, violations . . . turns on the provisions of [the statute] rather than the judicially fashioned exclusionary rule aimed at deterring violations of Fourth Amendment rights."); *Clenney*, 631 F.3d at 667 (holding there is no generally applicable exclusionary rule to statutory violations). The Supreme Court and the Fourth Circuit have left it to the legislature to articulate remedies for statutory violations, so this Court will not create a remedy Congress has declined to provide.

Second, the alleged statutory violation does not implicate any constitutional rights, specifically Defendant's Fourth Amendment rights. As demonstrated above, Defendant has no expectation of privacy in the personal information obtained by the Government via the 19 U.S.C. § 1509 summonses. *See* Part II.A.1. *Perrine*, 518 F.3d at 1204 (collecting cases) ("Every federal court to address this issue has held that subscriber information provided to an internet provider is not protected by the Fourth Amendment's privacy expectation.").

In sum, there is no statutory exclusionary remedy for 19 U.S.C. § 1509, and Defendant's Fourth Amendment rights are not implicated.

**B. Motion to Suppress the State Search Warrant**

Defendant also moves to suppress evidence of his child pornography offenses obtained under a search warrant issued pursuant to Virginia Code § 19.2-54. The Charlottesville Police Department (CPD) executed a search warrant based upon online discussions Defendant had with an undercover operative working with HSI. Defendant exchanged messages with the undercover operative regarding his alleged interest and previous physical interactions with minor children. Defendant also made reference to an upcoming opportunity to be with a minor he was grooming. Using the personal information obtained by the § 1509 summonses, the CPD was able to locate Defendant and surveilled his home. A CPD detective located Defendant's wife's Facebook page, which showed Defendant and his wife with two children, one of which matched the description of a minor discussed by Defendant with the undercover operative. Based on these facts, a CPD detective applied for, and obtained, a search warrant to investigate two sex offenses under Virginia law. The state then turned the evidence uncovered by this search over to the federal government.

Defendant alleges that the warrant was defective for three reasons: (1) the application supporting the warrant was uncorroborated and lacked sufficient probable cause; (2) the application lacked any reasonable belief that evidence of the alleged sex offenses under Virginia law would be found at Defendant's residence or on his electronic devices; and (3) the application lacked a sufficient factual basis for the state court judge to determine the existence of probable cause. Lastly, Defendant requests a *Franks* hearing, claiming that factual information was omitted from the affidavit supporting the search warrant. Assuming without deciding that probable cause was absent, I find the good-faith exception applies to the search warrant, so

Defendant's motion to suppress will be denied. Further, because Defendant has failed to make the required substantial preliminary showing, I will deny his request for a *Franks* hearing.

**1. The *Leon* "Good-Faith" Exception to the Warrant Requirement Applies**

When a Defendant challenges both probable cause for the warrant and the application of the good-faith exception, the Court may proceed directly to the good-faith issue. *United States v. Legg*, 18 F.3d 240, 243–44 (4th Cir. 1994). The "good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization. In making this determination, all of the circumstances . . . may be considered." *United States v. Leon*, 468 U.S. 897, 923 n.23 (1984). There are four categories of conduct in which an officer cannot be said to have acted with "objective reasonableness," precluding use of the good-faith exception under *Leon*:

> (1) When "the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth."
>
> (2) When the issuing magistrate wholly abandoned his judicial role as a neutral and detached judicial officer.
>
> (3) When the affidavit supporting the warrant is "so lacking in indicia of probable cause as to render an official's belief in its existence entirely unreasonable."
>
> (4) When a warrant may be so facially deficient—*i.e.*, in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid.

*United States v. Leon*, 468 U.S. 897, 923 (1984). "Reasonable minds frequently may differ on the question whether a particular affidavit establishes probable cause, and we have thus concluded that the preference for warrants is most appropriately effectuated by according 'great deference' to a magistrate's determination," although that deference is not blind or limitless. *Leon*, 468 U.S. at 914. The good-faith exception under *Leon* is inapplicable, and exclusion of

evidence is proper, when a warrant application was so devoid of necessary information that it is objectively unreasonable. *United States v. Doyle*, 650 F.3d 460, 476 (4th Cir. 2011).

Here, Defendant specifically argues the third exclusion under *Leon*, that the Court is precluded from using the good-faith exception because "the affidavit for the warrant was so 'bare bones' and 'based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable'" (Dkt. 35 at ECF 22) (citing *Leon*, 468 U.S. at 923 (citations omitted)). Defendant argues this case is analogous to the Fourth Circuit's decision in *Doyle*, and that this Court should find the good-faith exception inapplicable.

In *Doyle*, the Government executed a search warrant on a defendant and found child pornography on his hard drive. 650 F.3d at 464. He moved to suppress the evidence, claiming that "any information support a finding of probable cause was too 'stale' to justify reliance thereon." *Id.* The search warrant was for evidence connected to a state offense for possession of child pornography. *Id.* The affidavit stated that several minor children had claimed the defendant sexually assaulted them at his house. *Id.* One child also mentioned that the defendant had shown the victim child pornography. *Id.* In addition, the warrant was issued, in part, based on an officer's "unsworn 'summary' of his investigation to the issuing magistrate . . . ." *Id.*

The Fourth Circuit found the good-faith exception did not apply because the affidavit in support of the warrant "lacked the necessary information from which the issuing magistrate, or executing police officer, could glean probable cause to support a search for child pornography," rendering the warrant objectively unreasonable. *Id.* at 470. Although there was a nexus between the alleged child pornography offenses and the defendant's house, there was "scant evidence in the affidavit (or [the officer's] investigation summary) to support a belief that [the defendant] in fact possessed child pornography." *Id.* at 472. Further, the Court relied upon the fact that "where

the totality of the information provided to the magistrate included no indication as to when the events supposedly creating probable cause to search took place." *Id.* at 475.

None of the ills that plagued the warrant in *Doyle* are present here. Unlike the affidavit in *Doyle*, the instant affidavit provided specific dates and specific statements from Defendant himself regarding the grooming and molesting of a minor child. Indeed, the affidavit setting forth the "material facts constituting probable cause that a search be made" was 15 pages long. The affidavit included correspondence from the Defendant admitting to the offenses listed on the warrant, identifying the Defendant, and providing the information used to locate Defendant. Further, and particularly relevant here, the affidavit contains a section specifically addressing the use of computers and the internet for child exploitation offenses. This sufficiently justifies the seizure of Defendant's devices and computer. Additionally, the instant warrant sought evidence of "hands-on sexual abuse," not merely child pornography, as was the case in *Doyle*. (Dkt. 41 at ECF 13). This was not a search for child pornography based on loose or vague allegations of possession; this was a search for evidence pertaining to direct sexual abuse that Defendant himself had admitted to. These facts weigh heavily in favor of finding the good-faith exception applicable. This warrant was nowhere near the standard of "so lacking in indicia of probable cause" that no reasonable officer could rely on it.

Nonetheless, Defendant attacks the affidavit underpinning the warrant. First, he argues that the warrant lacked a "sufficient, substantial factual basis from which the issuing Judge could determine any nexus to the defendant's residence." However, the Fourth Circuit has held "that the nexus between the place to be searched and the items to be seized may be established by the nature of the item and the normal inferences of *where one would likely keep such evidence*." *United States v. Anderson*, 851 F.2d 727, 729 (4th Cir. 1988) (emphasis added).

Here, Defendant used his computer and electronic devices to discuss with others his prohibited sexual conduct. Evidence of this fact was provided in support of the search warrant. It is entirely reasonable and normal to infer that his computer and his devices would be located at his home—the place searched. *United States v. Peterson*, 294 F. Supp. 2d 797, 806 (D.S.C. 2003), *aff'd,* 145 F. App'x 820 (4th Cir. 2005) (noting the "common sense argument that computers are usually stored in the home, provid[ing] a sufficient nexus between defendant's residence and the evidence observed on the computer."); *see also United States v. Kapordelis*, 569 F.3d 1291, 1312 (11th Cir. 2009) ("Using common sense in evaluating the facts, the necessary 'nexus' existed between the facts surrounding Defendant's travel to Russia, the facts which suggested that he met and engaged in sexual activity with young boys and the assertion that evidence of sex tourism and child pornography would be found in Defendant's home.").

Second, Defendant quotes *Doyle* and argues probable cause is lacking because "evidence of child molestation alone does not support probable cause to search for child pornography." *Doyle*, 650 F.3d at 472. As discussed above, the instant search warrant was not issued to find child pornography—it was issued to seize evidence of Defendant's alleged sex crimes with minor children. Since the initial investigation was for state child sex offenses, Defendant cannot redirect the probable cause inquiry to a crime not implicated on the face of the warrant.

Third, Defendant at several points contends there was no corroboration of the affidavit, further undermining probable cause and making any reliance on the warrant unreasonable. In support, Defendant's posits (without citation) that "a statement made online between two individuals using fake names should be likened to an anonymous tip." (Dkt. 35 at ECF 10). Defendant argues that "information from an unnamed informant, [that] provided no indication of

that informant's truthfulness or reliability," does "not adequately support [a] magistrate's finding of probable cause." *United States v. Wilhelm*, 80 F.3d 116, 120 (4th Cir. 1996).

The tipster corroboration cases carry no weight when the "tip" comes from the defendant himself. Defendant was specifically identified by his IP address, and other relevant information, pursuant to validly executed administrative summonses. *See* Part II.A. These summons traced the relevant comments not to an anonymous third party tipster, but back to Defendant himself. This personal identification information obtained through the summonses, which identifies Defendant based off of the online conversations, corroborates that he was the one making these statements. Accordingly, this is nothing like a statement made by an anonymous tipster. Rather, the summonses provided the Government with confirmation of precise details regarding who Defendant was, where he lived, and what information he shared online and when. Defendant's identity was further corroborated by the CPD, who investigated Defendant's home from the outside, researched the cars in Defendant's driveway to confirm he lived there, and even observed his access to minor children via his wife's Facebook page. The information provided in support of the search warrant falls well short of the uncorroborated affidavit the Fourth Circuit found to be insufficient in *Wilhelm*. When seeking to establish probable cause to support a warrant, the Government is not required to disbelieve an investigative target's own statements about his own previous criminal acts and his ongoing efforts groom additional victims.[4]

---

[4] Relatedly, Defendant argues that there was not sufficient evidence to distinguish whether what he said was "anything more than fantasy." On this point, Defendant produces studies regarding self-misrepresentation online and cites to First Amendment law regarding the prohibition on "thought crime." (Dkt. 35 at ECF 11 (quoting *See Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 253 (2002) ("[T]he Court's First Amendment cases draw vital distinctions between words and deeds, between ideas and conduct."))). However, Defendant's arguments collapse under the weight of his own online admission, wherein he describes with particularity acts of molestation that he has already committed, and insinuates his intention to commit further prohibited acts. Defendant discussed deeds and conduct—not words or ideas. Moreover, Defendant's argument goes to the merits of his charges and not the sufficiency of probable cause.

For all of these reasons, I find that the good-faith exception applies, and Defendant's motion to suppress the search warrant will be denied.

**2. Defendant has Failed to Make the "Substantial Preliminary Showing" to Justify a *Franks* Hearing**

Lastly, Defendant requests a *Franks* hearing due to what he believes was intentionally omitted relevant information in the affidavit supporting the search warrant. Under *Franks v. Delaware*, 438 U.S. 154 (1978), "where the defendant makes a *substantial preliminary showing* that [1] a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and [2] if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." *Id.* at 155–56 (emphasis added). Under the "intentionality" prong, the defendant must show by a preponderance of the evidence that the Government "omitted information with the intent to mislead the magistrate or that he omitted the information with reckless disregard of whether it would make the affidavit misleading." *United States v. Lull*, 824 F.3d 109, 115 (4th Cir. 2016). "Understandably, the defendant's burden in showing intent is greater in the case of an omission because '[a]n affiant cannot be expected to include in an affidavit every piece of information gathered in the course of an investigation.'" *Id.* (quoting *United States v. Colkley*, 899 F.2d 297, 300 (4th Cir. 1990)).

Defendant argues that had the Government not omitted one line from Defendant's instant messaging conversation contained in the affidavit, it would have "led to a finding of no probable cause to search [Defendant's] electronic devices for 'communications relating to the exploitation of children.'" (Dkt. 35 at ECF 24). Specifically, the affiant stated that it was reasonable to search

---

*Piazza v. Mayne*, 23 F. Supp. 2d 658, 662 (E.D. La. 1998), *aff'd*, 217 F.3d 239 (5th Cir. 2000) (collecting cases) ("[A]ffirmative defenses do not bear on the probable cause analysis."). Accordingly, Defendant's argument on this point fails.

Defendant's electronic devices for evidence of child exploitation offenses based on Defendant's statement that he had never "really" chatted about molesting a minor child before—except on another online platform. In contrast, Defendant vaguely stated elsewhere in his communications with the undercover informant that he had not shared this information with anyone else. Defendant argues that had this statement not been omitted, there would have been no probable cause to search Defendant's electronic devices.

This argument, however, misses the forest for the trees. First, as to intent, the Government did not represent to the magistrate that it was including *all* communications—but only *some* of the communications—between Defendant and the undercover informant. As noted above, there is no requirement that the Government provide every piece of information gathered. Second, even if this omission was done with the intent to mislead (a conclusion for which there is no basis), its inclusion in the affidavit would not have defeated probable cause. Notably, Defendant stated elsewhere in his online conversation with the undercover informant that he had used other online platforms to discuss criminal conduct, in addition to his general statements regarding how he obtained child pornography in the past online. This simple fact is sufficient to support probable cause that his electronic devices would contain evidence of the alleged crimes. In sum, Defendant has failed to make out any showing, much less a "substantial" one, that the statement was intentionally omitted to mislead and that it was necessary to find probable cause. *Franks*, 438 U.S. at 155.

## III. Conclusion

The motion to dismiss will be denied because the Supreme Court's decision in *NFIB* does not so alter the legal landscape as to render 18 U.S.C. §§ 2251, 2252 unconstitutional as applied to Defendant. Both motions to suppress will be denied. Because there was no constitutional

violation, and no exclusionary remedy is contained in the statute, the § 1509 summonses and their respective fruit will not be excluded. Additionally, the state search warrant is protected by the good-faith exception and did not violate Defendant's Fourth Amendment rights. Lastly, one stray statement that was omitted from the affidavit supporting the search warrant does not require a *Franks* hearing.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion to all counsel of record.

Entered this 26th day of April, 2018.

Norman K Moon

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE

CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
AUG 0 8 2018
JULIA C. DUDLEY, CLERK
BY: [signature]
DEPUTY CLERK

AO 245B (Rev. 2/18 - VAW Additions 05/17) Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT
## Western District of Virginia

UNITED STATES OF AMERICA
V.
RICHARD WELLBELOVED-STONE

**JUDGMENT IN A CRIMINAL CASE**

Case Number: DVAW317CR000014-001

Case Number:

USM Number: 21961-084

Andrea S. Lantz Harris and Lisa M. Lorish
Defendant's Attorney

THE DEFENDANT:

☒ pleaded guilty to count(s) Three

☐ pleaded nolo contendere to count(s) ______
which was accepted by the court.

☐ was found guilty on count(s) ______
after a plea of not guilty,

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 2251(a) and 18 U.S.C. § 2251 (e) | Sexual Exploitation of Children | 5/20/2017 | 3 |

The defendant is sentenced as provided in pages 2 through 7 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) ______

☒ Count(s) 1,2,4 ☐ is ☒ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

7/30/2018
Date of Imposition of Judgment

[signature]
Signature of Judge

Norman K. Moon, Senior United States District Judge
Name and Title of Judge

August 6, 2018
Date

DEFENDANT: RICHARD WELLBELOVED-STONE
CASE NUMBER: DVAW317CR000014-001

## IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:

Two Hundred Seventy-six ( 276 ) months

☒ The court makes the following recommendations to the Bureau of Prisons:

Defendant shall receive appropriate sex offender treatment while imprisoned.
Defendant shall be incarcerated at Butner, NC.

☒ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

☐ at ____________ ☐ a.m. ☐ p.m. on ____________

☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

☐ before ______ on ____________

☐ as notified by the United States Marshal.

☐ as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on ____________ to ____________

a ____________ , *with a certified copy of this judgment.*

____________
UNITED STATES MARSHAL

By ____________
DEPUTY UNITED STATES MARSHAL

DEFENDANT: RICHARD WELLBELOVED-STONE
CASE NUMBER: DVAW317CR000014-001

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of:

Life

## MANDATORY CONDITIONS

1. You must not commit another federal, state or local crime.
2. ☐ You must make restitution in accordance with sections 3663 and 3663A, or any other statute authorizing a sentence of restitution. *(check if applicable)*
3. You must not unlawfully possess a controlled substance.
4. You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
   ☒ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*
5. ☒ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6. ☒ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in which you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7. ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

DEFENDANT: RICHARD WELLBELOVED-STONE
CASE NUMBER: DVAW317CR000014-001

## STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4. You must answer truthfully the questions asked by your probation officer.
5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, *available at:* www.uscourts.gov.

Defendant's Signature ______________________________ Date ______________

DEFENDANT: RICHARD WELLBELOVED-STONE
CASE NUMBER: DVAW317CR000014-001

## SPECIAL CONDITIONS OF SUPERVISION

The defendant shall pay any special assessment and/or restitution that is imposed by this judgment.
The defendant shall provide the probation officer with access to any requested financial information.
The defendant shall reside in a residence free of firearms, ammunition, destructive devices, and dangerous weapons.
The defendant shall submit to warrantless search and seizure of person and property as directed by the probation officer, to determine whether the defendant is in possession of firearms.

1. The defendant shall register with all local and state sex offender registration agencies in any jurisdiction where the defendant resides, is employed, carries a vocation, is a student, or is otherwise required to register by SORNA.
2. The defendant shall have no direct or indirect contact at any time, for any reason, with any victim identified in the presentence report or any victim's immediate family.
3. The defendant shall not possess, view, or otherwise use any materials depicting or describing "child pornography" as defined in 18 U.S.C. § 2256, nor shall the defendant knowingly enter, or knowingly remain in, any location where such materials can be accessed, obtained, or viewed, including pictures, photographs, books, writings, drawings, videos, or video games.
4. The defendant's residence and employment shall be approved by the probation officer. Any proposed change in residence or employment must be provided to the probation officer at least 10 days prior to the change and must be approved before the change may take place.
5. The defendant shall submit to an evaluation by a qualified mental health professional, approved by the probation officer, who is experienced in the treatment of sexual offenders. The defendant shall take all medications reasonably related to his or her condition, complete all treatment recommendations, and abide by all rules, requirements, and conditions imposed by the treatment provider until discharged from treatment by the provider.
6. The defendant shall submit to risk assessments and other specific tests to monitor defendant's compliance. In conjunction with sex offender treatment, defendant shall submit to other testing useful for treatment of sex offenders.
7. The defendant shall submit to a search of his or her person, property, residence, vehicle, papers, computer, electronic communication devices, or data storage devices or media at any time by the probation officer with reasonable suspicion concerning unlawful conduct or a violation of a condition of release. The defendant should warn any other residents or occupants that their premises or vehicles in which the defendant may be located could be subject to search pursuant to this condition.
8. The defendant shall not linger within 100 feet of any parks, school property, playgrounds, arcades, amusement parks, daycare centers, swimming pools, community recreation fields, zoos, youth centers, carnivals, circuses, or other places that are primarily used or can reasonably be expected to be used by minors, without prior permission of the probation officer.
9. The defendant shall not associate or have verbal, written, telephonic, electronic communications or knowingly socialize through the Internet with any minor, except: 1) in the presence of the parent or legal guardian of said minor; 2) on the condition that the defendant notifies the parent or legal guardian of the defendant's sex offender condition(s); and 3) with prior approval from the probation officer. This provision does not encompass minors working as waiters, cashiers, ticket vendors, and similar service positions with whom the defendant must deal in order to obtain ordinary and usual commercial services.
10. The defendant shall not purchase, possess, or use any camera or video recording devices without approval of the probation officer.
11. The defendant shall notify employers, family members, and others with whom the defendant has regular contact of the defendant's sex offender conditions and that the defendant is under the supervision of the probation officer.
12. The defendant shall not be employed in any position or participate as a volunteer in any activity that involves contact with minors without prior approval of the probation officer. The defendant may not engage in an activity that involves being in a position of trust or authority over any minor.
13. The defendant shall contact the probation officer within 72 hours of establishing an ongoing romantic relationship with another individual and provide the probation officer with information about the other party. The defendant shall also inform the other party of his or her prior criminal history concerning sex offenses.
14. The defendant shall not have any contact, other than incidental contact in a public forum such as ordering in a restaurant or grocery shopping, with any minor that is under the age of 18 without prior permission of the probation officer. Any approved contact shall be supervised by an adult at all times. The contact addressed in this condition includes but is not limited to direct or indirect, personal, telephonic, written, and through a third party. If the defendant has any contact with any such minor not otherwise addressed in this condition, the defendant is required to immediately leave the situation and notify the probation officer.
15. The defendant shall not possess any sexually oriented material that, according to a qualified sex offender treatment provider, may interfere with an ongoing treatment regimen.

AO 245B (Rev. 2/18 - VAW Additions 05/17) Judgment in a Criminal Case
Sheet 5 - Criminal Monetary Penalties

Judgment-Page 6 of 7

DEFENDANT: RICHARD WELLBELOVED-STONE
CASE NUMBER: DVAW317CR000014-001

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | JVTA Assessment* | Fine | Restitution |
|---|---|---|---|---|
| TOTALS | $ 100.00 | $ 5,000.00 | $ 2,500.00 | $ |

☒ The determination of restitution is deferred until 90 days . An *Amended Judgment in a Criminal Case* (AO 245C) will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| TOTALS | | | |

☐ Restitution amount ordered pursuant to plea agreement $ ____________

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐ the interest requirement is waived for the ☐ fine ☐ restitution.

☐ the interest requirement for the ☐ fine ☐ restitution is modified as follows:

* Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
**Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

DEFENDANT: RICHARD WELLBELOVED-STONE
CASE NUMBER: DVAW317CR000014-001



# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, the total criminal monetary penalties are due immediately and payable as follows:

A ☒ Lump sum payment of $ 100.00 immediately, balance payable

☐ not later than ______________, or

☒ in accordance ☐ C, ☐ D, ☐ E, ☐ F or, ☐ G below); or

B ☐ Payment to begin immediately (may be combined with ☐ C, ☐ D, ☐ F, or ☐ G below); or

C ☐ Payment in equal ______________ (e.g., weekly, monthly, quarterly) installments of $ ____________ over a period of ____________ (e.g., months or years), to commence ____________ (e.g., 30 or 60 days) after the date of this judgment; or

D ☐ Payment in equal ______________ (e.g., weekly, monthly, quarterly) installments of $ ____________ over a period of ____________ (e.g., months or years), to commence ____________ (e.g., 30 or 60 days) after release from imprisonment to a term of supervision; or

E ☐ Payment during the term of supervised release will commence within ____________ (e.g., 30 or 60 days) after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F ☒ During the term of imprisonment, payment in equal monthly (e.g., weekly, monthly, quarterly) installments of $ 50.00 , or 50 % of the defendant's income, whichever is less , to commence 60 (e.g., 30 or 60 days) after the date of this judgment; AND payment in equal montly (e.g., weekly, monthly, quarterly) installments of $ 50.00 during the term of supervised release, to commence 60 (e.g., 30 or 60 days) after release from imprisonment.

G ☐ Special instructions regarding the payment of criminal monetary penalties:

Any installment schedule shall not preclude enforcement of the restitution or fine order by the United States under 18 U.S.C §§ 3613 and 3664(m).

Any installment schedule is subject to adjustment by the court at any time during the period of imprisonment or supervision, and the defendant shall notify the probation officer and the U.S. Attorney of any change in the defendant's economic circumstances that may affect the defendant's ability to pay.

All criminal monetary penalties shall be made payable to the Clerk, U.S. District Court, 210 Franklin Rd., Suite 540, Roanoke, Virginia 24011, for disbursement.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

Any obligation to pay restitution is joint and several with other defendants, if any, against whom an order of restitution has been or will be entered.

☐ Joint and Several

Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☒ The defendant shall forfeit the defendant's interest in the following property to the United States:

See Forfeiture order filed in this case on July 30, 2018 and attached hereto

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**
**CHARLOTTESVILLE DIVISION**

**UNITED STATES OF AMERICA**

**v.** **Case No. 3:17-cr-14**

**RICHARD WELLBELOVED-STONE**

**NOTICE OF APPEAL**

The Defendant, Richard Wellbeloved-Stone hereby gives notice that he appeals the order of this Court against him (ECF # 80), which was issued on August 6, 2018, to the United States Court of Appeals for the Fourth Circuit. Defendant respectfully moves the Court to waive any fees and costs required to give notice of his appeal because of his indecency.

Respectfully submitted,

RICHARD WELLBELOVED-STONE

By Counsel

Counsel:

/s Lisa M. Lorish
Lisa M. Lorish (VSB No. 81465)
Assistant Federal Public Defender
Office of the Federal Public Defender
401 E. Market St, Ste 106
Charlottesville, VA 22902
Tel (434) 220-3380

**CERTIFICATE OF SERVICE**

I hereby certify that on August 10, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: counsel of record; and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants: none.

s/ Lisa M. Lorish
Asst. Federal Public Defender